## SCHEDULE A
## California Money Transmission Act of 2010 Statutory Text

**California Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 1. General Provisions [2000. - 2003.]**
*(Chapter 1 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2000.** This division shall be known and may be cited as the Money Transmission Act.

*(Amended by Stats. 2012, Ch. 356, Sec. 2. Effective January 1, 2013.)*

**2001.** The Legislature finds and declares all of the following:
**(a)** Money transmission businesses conduct a significant amount of business in this state and technological advances are occurring in the provision of money transmission services.
**(b)** Persons who use money transmission businesses in this state use those businesses for, among other purposes, paying for the necessities of life and transmitting money to family members.
**(c)** The failure of money transmission businesses to fulfill their obligations would cause loss to consumers, disrupt the payments mechanism in this state, undermine public confidence in financial institutions doing business in this state, and adversely affect the health, safety, and general welfare of persons in this state.
**(d)** To protect the interests of consumers of money transmission businesses in this state, to maintain public confidence in financial institutions doing business in this state, and to preserve the health, safety, and general welfare of the people of this state, it is necessary to regulate money transmission businesses in this state.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2002.** It is the intent of the Legislature that the provisions of this act accomplish all of the following:
**(a)** Protect the interests of persons in this state who use money transmission services.
**(b)** Provide for the safe and sound conduct of the business of licensees.
**(c)** Maintain public confidence in licensees.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2003.** For purposes of this division, the following definitions shall apply:
**(a)** "Affiliate," when used with respect to a specified person, means any person controlling, controlled by, or under common control with, that specified person, directly or indirectly through one or more intermediaries. For purposes of subdivisions (q) and (v), a specified person is affiliated with another person if that person controls, is controlled by, or under common control through the ownership directly or indirectly of shares or equity securities possessing more than 50 percent of the voting power of that specified person.
**(b)** "Agent" means a person that provides money transmission in California on behalf of the licensee, provided that the licensee becomes liable for the money transmission from the time money or monetary value is received by that person. However, "agent" does not include any officer or employee of the licensee when acting as such at an office of a licensee.
**(c)** "Applicant" means a person that files an application for a license or for acquisition of control of a licensee under this division.
**(d)** "Average daily outstanding" means the amount of outstanding money transmission obligations in California at the end of each day in a given period of time, added together, and divided by the total number of days in that period of time.

**(e)** "Branch office" means any office in this state of a licensee or agent at which the licensee receives money or monetary value to provide money transmission, either directly or through an agent.
**(f)** "Business day" means one of the following:
    **(1)** When used with respect to any act to be performed in this state, any day other than Saturday, Sunday, or any other day that is provided for as a holiday in the Government Code.
    **(2)** When used with respect to any act to be performed in any jurisdiction other than this state, any day other than a day that is a legal holiday under the laws of that jurisdiction.
**(g)** "Commissioner" means the Commissioner of Financial Institutions.
**(h)** "Control" has the meaning set forth in Section 1250.
**(i)** "Day" means calendar day.

(j) "In California" or "in this state" means physically located in California, or with, to, or from persons located in California.

(k) "Issue" and "issuer" mean, with regard to a payment instrument, the entity that is the maker or drawer of the instrument in accordance with the California Commercial Code and is liable for payment. With regard to stored value, "issue" and "issuer" mean the entity that is liable to the holder of stored value and has undertaken or is obligated to pay the stored value. Only a licensee may issue stored value or payment instruments.

(l) "Licensee" means a corporation or limited liability company licensed under this division.

(m) "Monetary value" means a medium of exchange, whether or not redeemable in money.

(n) "Money" means a medium of exchange that is authorized or adopted by the United States or a foreign government. The term includes a monetary unit of account established by an intergovernmental organization or by agreement between two or more governments.

(o) "Money transmission" means any of the following:
  (1) Selling or issuing payment instruments.
  (2) Selling or issuing stored value.
  (3) Receiving money for transmission.

(p) "Outstanding," with respect to payment instruments and stored value, means issued or sold by the licensee in the United States and not yet paid or refunded by the licensee, or issued or sold on behalf of the licensee in the United States by its agent and reported as sold, but not yet paid or refunded by the licensee. "Outstanding," with respect to receiving money for transmission means all money or monetary value received in the United States for transmission by the licensee or its agents but not yet paid to the beneficiaries or refunded to the person from whom the money or monetary value was received. All outstanding money transmission of a licensee is and shall remain a liability of the licensee until it is no longer outstanding.

(q) "Payment instrument" means a check, draft, money order, traveler's check, or other instrument for the transmission or payment of money or monetary value, whether or not negotiable. The term does not include a credit card voucher, letter of credit, or any instrument that is redeemable by the issuer for goods or services provided by the issuer or its affiliate.

(r) "Person" means an individual, corporation, business trust, estate, trust, partnership, proprietorship, syndicate, limited liability company, association, joint venture, government, governmental subdivision, agency or instrumentality, public corporation or joint stock company, or any other organization or legal or commercial entity, provided, however, that "person," when used with respect to acquiring control of or controlling a specified person, includes any combination of two or more persons acting in concert.

(s) "Receiving money for transmission" or "money received for transmission" means receiving money or monetary value in the United States for transmission within or outside the United States by electronic or other means. The term does not include sale or issuance of payment instruments and stored value.

(t) "Record" means information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form.

(u) "State" means a state of the United States, the District of Columbia, Puerto Rico, the United States Virgin Islands, or any territory or insular possession subject to the jurisdiction of the United States.

(v) "Stored value" means monetary value representing a claim against the issuer that is stored on an electronic or digital medium and evidenced by an electronic or digital record, and that is intended and accepted for use as a means of redemption for money or monetary value or payment for goods or services. The term does not include a credit card voucher, letter of credit, or any stored value that is only redeemable by the issuer for goods or services provided by the issuer or its affiliate, except to the extent required by applicable law to be redeemable in cash for its cash value.

(w) "Traveler's check" means an instrument that meets all of the following:
  (1) Is designated on its face by the term "traveler's check" or by any substantially similar term or is commonly known and marketed as a traveler's check.
  (2) Contains a provision for a specimen signature of the purchaser to be completed at the time of purchase.
  (3) Contains a provision for a countersignature of the purchaser to be completed at the time of negotiation.

*(Amended by Stats. 2012, Ch. 356, Sec. 3. Effective January 1, 2013.)*

**California Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 2. Exemptions [2010. - 2011.]**
*(Chapter 2 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2010.** This division does not apply to the following:
(a) The United States or a department, agency, or instrumentality thereof, including any federal reserve bank and any federal home loan bank.

**(b)** Money transmission by the United States Postal Service or by a contractor on behalf of the United States Postal Service.

**(c)** A state, county, city, or any other governmental agency or governmental subdivision of a state.

**(d)** A commercial bank or industrial bank, the deposits of which are insured by the Federal Deposit Insurance Corporation or its successor, or any foreign (other nation) bank that is licensed under Article 3 (commencing with Section 1800) of Chapter 20 or that is authorized under federal law to maintain a federal agency or federal branch office in this state; a trust company licensed pursuant to Section 1042 or a national association authorized under federal law to engage in a trust banking business; an association or federal association, as defined in Section 5102 the deposits of which are insured by the Federal Deposit Insurance Corporation or its successor; and any federally or state chartered credit union the member accounts of which are insured or guaranteed as provided in Section 14858.

**(e)** Electronic funds transfer of governmental benefits for a federal, state, county, or local governmental agency by a contractor on behalf of the United States or a department, agency, or instrumentality thereof, or a state or governmental subdivision, agency, or instrumentality thereof.

**(f)** A board of trade designated as a contract market under the federal Commodity Exchange Act (7 U.S.C. Secs. 1-25, incl.) or a person that, in the ordinary course of business, provides clearance and settlement services for a board of trade to the extent of its operation as or for such a board.

**(g)** A person that provides clearance or settlement services pursuant to a registration as a clearing agency or an exemption from registration granted under the federal securities laws to the extent of its operation as such a provider.

**(h)** An operator of a payment system to the extent that it provides processing, clearing, or settlement services, between or among persons excluded by this section, in connection with wire transfers, credit card transactions, debit card transactions, stored value transactions, automated clearing house transfers, or similar funds transfers, to the extent of its operation as such a provider.

**(i)** A person registered as a securities broker-dealer under federal or state securities laws to the extent of its operation as such a broker-dealer.

**(j)** A person listed under subdivision (d) is exempted from all the provisions of this division, except Sections 2062 and 2063.

*(Amended by Stats. 2012, Ch. 356, Sec. 4. Effective January 1, 2013.)*

**2011.** The commissioner may, by regulation or order, either unconditionally or upon specified terms and conditions or for specified periods, exempt from this division any person or transaction or class of persons or transactions, if the commissioner finds such action to be in the public interest and that the regulation of such persons or transactions is not necessary for the purposes of this division.

*(Amended by Stats. 2012, Ch. 356, Sec. 5. Effective January 1, 2013.)*

**California Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 3. Licenses [2030. - 2043.]**
*(Chapter 3 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2030.**
**(a)** A person shall not engage in the business of money transmission in this state, or advertise, solicit, or hold itself out as providing money transmission in this state, unless the person is licensed or exempt from licensure under this division or is an agent of a person licensed or exempt from licensure under this division.

**(b)** A license under this division is not transferable or assignable.

*(Amended by Stats. 2012, Ch. 356, Sec. 6. Effective January 1, 2013.)*

**2031.**
**(a)** No person other than a corporation or limited liability company may apply for or be issued a license.

**(b)** No person other than the following may be issued a license:
  **(1)** A corporation or limited liability company organized under the laws of this state.
  **(2)** A corporation, other than a corporation organized under the laws of this state, that is qualified to transact intrastate business in this state under Chapter 21 (commencing with Section 2100) of Division 1 of Title 1 of the Corporations Code.
  **(3)** A limited liability company, other than a limited liability company organized under the laws of this state, that is qualified to transact intrastate business in this state under Chapter 10 (commencing with Section

17450) of Title 2.5 of the Corporations Code, except that a limited liability company that is organized outside the United States shall not be issued a license.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2032.**

(a) In this section, "material litigation" means litigation that according to United States generally accepted accounting principles is significant to an applicant's or a licensee's financial health and would be required to be disclosed in the applicant's or licensee's annual audited financial statements, report to shareholders, or similar records.

(b) An applicant for licensure under this division shall pay to the commissioner a nonrefundable fee of five thousand dollars ($5,000).

(c) An applicant for a license under this division shall do so in a form and in a medium prescribed by the commissioner by order or regulation. The application shall state or contain all of the following:

    (1) The legal name and residential business address of the applicant and any fictitious or trade name used by the applicant in conducting its business.

    (2) A list of any criminal convictions of the applicant and any material litigation in which the applicant has been involved in the 10-year period next preceding the submission of the application.

    (3) A description of any money transmission services previously provided by the applicant and the money transmission services that the applicant seeks to provide in this state.

    (4) A list of the applicant's proposed agents and the locations in this state where the applicant and its agents propose to engage in money transmission.

    (5) A list of other states in which the applicant is licensed to engage in money transmission and any license revocations, suspensions, or other disciplinary action taken against the applicant in another state.

    (6) Information concerning any bankruptcy or receivership proceedings affecting the licensee.

    (7) A sample form of payment instrument or instrument upon which stored value is recorded, if applicable.

    (8) A sample form of receipt for transactions that involve money received for transmission.

    (9) The name and address of any bank through which the applicant's payment instruments and stored value will be paid.

    (10) A description of the source of money and credit to be used by the applicant to provide money transmission services.

    (11) The date of the applicant's incorporation or formation and the state or country of incorporation or formation.

    (12) A certificate of good standing from the state or country in which the applicant is incorporated or formed.

    (13) A description of the structure or organization of the applicant, including any parent or subsidiary of the applicant, and whether any parent or subsidiary is publicly traded.

    (14) The legal name, any fictitious or trade name, all business and residential addresses, and the employment, in the 10-year period next preceding the submission of the application, of each executive officer, manager, director, or person that has control, of the applicant, and the education background for each such person.

    (15) A list of any criminal convictions and material litigation in which any executive officer, manager, director, or person in control, of the applicant has been involved in the 10-year period next preceding the submission of the application.

    (16) A copy of the applicant's audited financial statements for the most recent fiscal year and, if available, for the two-year period next preceding the submission of the application.

    (17) A copy of the applicant's unconsolidated financial statements for the current fiscal year, whether audited or not, and, if available, for the two-year period next preceding the submission of the application.

    (18) If the applicant is publicly traded, a copy of the most recent report filed with the United States Securities and Exchange Commission under Section 13 of the federal Securities Exchange Act of 1934 (15 U.S.C. Sec. 78m).

    (19) If the applicant is a wholly owned subsidiary of:

        (A) A corporation publicly traded in the United States, a copy of audited financial statements for the parent corporation for the most recent fiscal year or a copy of the parent corporation's most recent report filed under Section 13 of the federal Securities Exchange Act of 1934 (15 U.S.C. Sec. 78m) and, if available, for the two-year period next preceding the submission of the application.

        (B) A corporation publicly traded outside the United States, a copy of similar documentation filed with the regulator of the parent corporation's domicile outside the United States.

    (20) The name and address of the applicant's registered agent in this state.

    (21) The applicant's plan for engaging in money transmission business, including without limitation three years of pro forma financial statements.

A-4

**(22)** Any other information the commissioner requires with respect to the applicant.

**(d)** The commissioner may waive any of the information required under subdivision (c) or permit an applicant to submit other information instead of the required information.

*(Amended by Stats. 2012, Ch. 356, Sec. 7. Effective January 1, 2013.)*

**2033.**

**(a)** The commissioner may conduct an examination of the applicant and the applicant shall pay the reasonable cost of the examination.

**(b)** If the commissioner finds all of the following with respect to an application for a license, the commissioner shall approve the application:

> **(1)** The applicant has adequate tangible shareholders' equity, as specified in Section 2040 to engage in the business of money transmission and the financial condition of the applicant is otherwise such that it will be safe and sound for the applicant to engage in the business of money transmission.
>
> **(2)** The applicant, the directors and officers of the applicant, any person that controls the applicant, and the directors and officers of any person that controls the applicant are of good character and sound financial standing.
>
> **(3)** The applicant is competent to engage in the business of money transmission.
>
> **(4)** The applicant's plan for engaging in the business of money transmission affords reasonable promise of successful operation.
>
> **(5)** It is reasonable to believe that the applicant, if licensed, will engage in the business of money transmission and will comply with all applicable provisions of this division and of any regulation or order issued under this division.

**(c)** The commissioner shall deny an application for a license if he or she finds, after notice and a hearing, that the requirements of subdivision (b) have not been satisfied.

*(Amended by Stats. 2012, Ch. 356, Sec. 8. Effective January 1, 2013.)*

**2034.**

**(a)** Before any corporation or limited liability company is issued a license, the corporation or limited liability company shall file with the commissioner, in such form as the commissioner may by regulation or order require, an appointment irrevocably appointing the commissioner to be the corporation's or limited liability company's attorney to receive service of any lawful process in any noncriminal judicial or administrative proceeding against the corporation or limited liability company, or any of its successors, that arises under this division or under any regulation or order issued under this division after such appointment has been filed, with the same force and validity as if served personally on the corporation or limited liability company or its successor, as the case may be.

**(b)** Service may be made by leaving a copy of the process at any office of the commissioner, but that service is not effective unless (1) the party making that service, who may be the commissioner, sends notice of service and a copy of the process by registered or certified mail to the party served at its last address on file with the commissioner, and (2) an affidavit of compliance with this section by the party making service is filed in the case on or before the return date, if any, or within such further time as the court, in the case of a judicial proceeding, or the administrative agency, in the case of an administrative proceeding, allows.

**(c)** The provisions of this section are in addition to, and not in limitation of, other provisions of law relating to service of process.

*(Amended by Stats. 2012, Ch. 356, Sec. 9. Effective January 1, 2013.)*

**2035.**

**(a)** No person shall, directly or indirectly, acquire control of a licensee unless the commissioner has first approved, in writing, the acquisition of control. An application to acquire control of a licensee shall be in writing, under oath, and in a form prescribed by the commissioner. The application shall contain that information which the commissioner may require.

**(b)** The commissioner shall not approve the application unless the commissioner finds all of the following:

> **(1)** The applicant and all of the officers and directors of the applicant are of good character and sound financial standing.
>
> **(2)** The applicant is competent to engage in the business of money transmission.
>
> **(3)** It is reasonable to believe that, if the applicant acquires control of the licensee, the applicant and the licensee will comply with all applicable provisions of this division and any regulation or order issued under this division.

    **(4)** The applicant's plans, if any, to make any major change in the business, corporate structure, or management of the licensee are not detrimental to the safety and soundness of the licensee.

**(c)** For the purposes of subdivision (b), the commissioner may find an applicant's plan to make major changes in the management of a licensee is detrimental to the licensee if the plan provides for a person who is not of good character to become a director or officer of the licensee. The grounds specified in this subdivision shall not be deemed to be the only grounds upon which the commissioner may find, for the purposes of subdivision (b), that an applicant's plan to make a major change in the management of a licensee is detrimental to the licensee.

**(d)** If it appears to the commissioner that any person is violating or failing to comply with this section, the commissioner may direct the person to comply with this section by an order issued over the commissioner's official seal.

**(e)** Whenever it appears to the commissioner that any person has committed or is about to commit a violation of any provision of this section or of any regulation or order of the commissioner issued pursuant to this section, the commissioner may apply to the superior court for an order enjoining the person from violating or continuing to violate this section or that regulation or order, and for other equitable relief as the nature of the case or interests of the licensee, the controlling person, the creditors or shareholders of the licensee or controlling person or the public may require.

**(f)** The commissioner may, for good cause, amend, alter, suspend, or revoke any approval of a proposal to acquire control of a licensee issued pursuant to this section.

**(g)** There shall be exempted from the provisions of this section any transaction which the commissioner by regulation or order exempts as not being comprehended within the purposes of this section and the regulation of which he or she finds is not necessary or appropriate in the public interest or for the protection of a licensee or the customers of a licensee.

**(h)** The commissioner may conduct an examination of the applicant and the applicant shall pay the reasonable cost of the examination.

*(Amended by Stats. 2012, Ch. 356, Sec. 10. Effective January 1, 2013.)*

**2036.** The commissioner may impose on any authorization, approval, license, or order issued pursuant to this division any conditions that he or she deems reasonable or necessary to the public interest.

*(Amended by Stats. 2012, Ch. 356, Sec. 11. Effective January 1, 2013.)*

**2037.**

**(a)** As security, each licensee shall deposit and thereafter maintain on deposit with the Treasurer cash in an amount not less than, or securities having a market value not less than, such amount as the commissioner may find and order from time to time as necessary to secure the faithful performance of the obligations of the licensee with respect to money transmission in California. These securities shall be subject to the approval of the commissioner and shall consist of interest-bearing bonds, notes, or other obligations of the United States or any agency or instrumentality thereof, or of the State of California, or of any city, county, or city and county, political subdivision or district of the State of California, or that are guaranteed by the United States or the State of California.

**(b)** So long as a licensee that maintains securities on deposit with the Treasurer pursuant to this section is solvent, that licensee shall be entitled to receive any interest paid on the securities.

**(c)** In lieu of the deposit of cash or securities pursuant to subdivision (a), a licensee may deliver to the commissioner the bond of a surety company, in form and written by a company satisfactory to the commissioner, in an amount not less than the amount of the deposit of cash or securities required of the licensee, conditioned upon the faithful performance of the obligations of the licensee with respect to money transmission in California. The commissioner shall deposit such bond with the Treasurer.

**(d)** A licensee that sells or issues payment instruments or stored value shall maintain securities on deposit or a bond of a surety company in an amount of no less than five hundred thousand dollars ($500,000) or 50 percent of the average daily outstanding payment instrument and stored value obligations in California, whichever is greater; provided that such amount shall not be more than two million dollars ($2,000,000).

**(e)** A licensee that engages in receiving money for transmission shall maintain securities on deposit or a bond of a surety company in an amount greater than the average daily outstanding obligations for money received for transmission in California, provided that such amount shall not be less than two hundred fifty thousand dollars ($250,000) nor more than seven million dollars ($7,000,000).

**(f)** The amount of securities on deposit or a bond of a surety company required to be maintained by subdivisions (d) and (e) are cumulative.

**(g)** The money and securities deposited with the Treasurer pursuant to this section and the proceeds of any bond held by the Treasurer pursuant to this section shall constitute a trust fund for the benefit of persons in California who purchased payment instruments or stored value from the licensee or its agent, or persons in California who

delivered to any licensee or its agent money or monetary value for money transmission. Suit to recover on any bond may be brought by any party aggrieved in a court of competent jurisdiction of any county in which the licensee has an agent.

**(h)** Securities on deposit or a bond shall cover claims for so long as the commissioner specifies, but for at least four years after the licensee ceases to provide services under this division in this state. However, the commissioner may permit the amount of the security to be reduced or eliminated before the expiration of that time to the extent the amount of the licensee's payment instruments or stored value obligations outstanding, or outstanding money or monetary value received for money transmission, is less than the deposit or bond. The commissioner may permit a licensee to substitute another form of security acceptable to the commissioner for the security effective at the time the licensee ceases to provide money transmissions in this state.

*(Amended by Stats. 2012, Ch. 356, Sec. 12. Effective January 1, 2013.)*

**2038.** Fees shall be paid to, and collected by, the commissioner, as follows:

**(a)** The fee for filing an application for a license is five thousand dollars ($5,000), as provided in subdivision (b) of Section 2032.

**(b)** The fee for filing an application for approval to acquire control of a licensee is three thousand five hundred dollars ($3,500).

**(c)** A licensee shall pay annually on or before July 1, a licensee fee of two thousand five hundred dollars ($2,500).

**(d)** A licensee shall pay annually on or before July 1, one hundred twenty-five dollars ($125) for each licensee branch office in this state.

**(e)** A licensee shall pay annually on or before July 1, twenty-five dollars ($25) for each agent branch office in this state.

**(f)** Whenever the commissioner examines a licensee or any agent of a licensee, the licensee shall pay, within 10 days after receipt of a statement from the commissioner, a fee of seventy-five dollars ($75) per hour for each examiner engaged in the examination plus, if it is necessary for any examiner engaged in the examination to travel outside this state, the travel expenses of the examiner.

**(g)** Whenever the commissioner examines an applicant, the applicant shall pay, within 10 days after receipt of a statement from the commissioner, a fee of seventy-five dollars ($75) per hour for each examiner engaged in the examination plus, if it is necessary for any examiner engaged in the examination to travel outside this state, the travel expenses of the examiner.

**(h)** Each fee for filing an application shall be paid at the time the application is filed with the commissioner. No fee for filing an application shall be refundable, regardless of whether the application is approved, denied, or withdrawn.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2039.**

**(a)** The commissioner may by order or regulation grant exemptions from this section in cases where the commissioner finds that the requirements of this section are not necessary or may be duplicative.

**(b)** In addition to such other reports as may be required pursuant to Sections 453, 454, and 455, each licensee shall, within 90 days after the end of each fiscal year, or within such extended time as the commissioner may prescribe, file with the commissioner an audit report for the fiscal year that shall comply with all of the following provisions:

    **(1)** The audit report shall contain audited financial statements of the licensee for or as of the end of the fiscal year prepared in accordance with United States generally accepted accounting principles and such other information as the commissioner may require.

    **(2)** The audit report shall be based upon an audit of the licensee conducted in accordance with United States generally accepted auditing standards and such other requirements as the commissioner may prescribe.

    **(3)** The audit report shall be prepared by an independent certified public accountant or independent public accountant who is not unsatisfactory to the commissioner.

    **(4)** The audit report shall include or be accompanied by a certificate of opinion of the independent certified public accountant or independent public accountant that is satisfactory in form and content to the commissioner. If the certificate or opinion is qualified, the commissioner may order the licensee to take such action as the commissioner may find necessary to enable the independent or certified public accountant or independent public accountant to remove the qualification.

**(c)** Each licensee shall, not more than 45 days after the end of each calendar year quarter, or within a longer period as the commissioner may by regulation or order specify, file with the commissioner a report containing all of the following:

    **(1)** Financial statements, including balance sheet, income statement, statement of changes in shareholders' equity, and statement of cashflows, for, or as of the end of, that calendar year quarter,

verified by two of the licensee's principal officers. The verification shall state that each of the officers making the verification has a personal knowledge of the matters in the report and that each of them believes that each statement on the report is true.

    **(2)** For issuers and sellers of payment instruments and stored value, a schedule of eligible securities owned by the licensee pursuant to Section 2081.

    **(3)** Other information as the commissioner may by regulation or order require.

**(d)** Each licensee, not more than 45 days after the end of each calendar year quarter, shall file with the commissioner a report containing all of the following:

    **(1)** The current address of each branch office of the licensee in this state. If a branch office was opened or closed during the calendar year quarter, the date it was opened or closed. If a branch office was relocated during the calendar year quarter, the addresses of the old and new locations and the date of relocation.

    **(2)** The name of each person who acted as an agent in this state of the licensee during the calendar year quarter and the address for each agent branch office. If a person was appointed or terminated as an agent during the calendar year quarter, the date of appointment or termination. If an agent branch office relocated, the addresses for the old and new locations and the date of relocation.

    **(3)** The total volume of activities, number of transactions conducted, and outstanding money transmission obligations in California under this division and in the United States in the calendar year quarter categorized by type of money transmission. For money received for transmission, a report of the average daily outstanding transmission liabilities in California, and, if applicable, a schedule of each foreign country to which money was sent, along with the total amount of money sent to that foreign country in that calendar year quarter. For payment instruments and stored value, a report of the average daily outstanding payment instruments and stored value liabilities in California in that calendar year quarter.

    **(4)** Other information as the commissioner may by regulation or order require.

**(e)** Each licensee shall file with the commissioner other reports as and when the commissioner may by regulation or order require.

*(Amended by Stats. 2012, Ch. 356, Sec. 13. Effective January 1, 2013.)*

**2040.**

**(a)** A licensee under this division shall maintain tangible shareholders' equity in an amount determined to be adequate by the commissioner from time to time, but in no event shall tangible shareholders' equity be less than five hundred thousand dollars ($500,000). "Tangible shareholders' equity" means shareholders' or members' equity minus intangible assets as determined in accordance with United States generally accepted accounting principles.

**(b)** The commissioner at any time may require a licensee to write down any asset held by it to a valuation that will represent its then fair market value. Any receivable or debt due to a licensee that is past due and unpaid for the period of one year shall be charged off, unless it is well secured or is in process of collection.

**(c)** The aggregate value of a licensee's accounts receivable, excluding money transmission receivables, loans or extensions of credit to any one person, or that person's affiliates, cannot exceed 50 percent of the licensee's tangible shareholders' equity without the advanced written approval of the commissioner. Whenever such amount equals or exceeds 20 percent of the licensee's tangible shareholders' equity, the licensee shall maintain records evidencing such amount and any security or other source of payment for the amount owed, and such other records as the commissioner may require by order or regulation.

*(Amended by Stats. 2012, Ch. 356, Sec. 14. Effective January 1, 2013.)*

**2041.**

**(a)** A licensee shall conduct money transmission in California under its true name unless it has complied with Chapter 5 (commencing with Section 17900) of Part 3 of Division 7 of the Business and Professions Code.

**(b)** A licensee may only conduct money transmission in California under its true name unless it has provided 30-day advance written notice to the commissioner. A licensee may also use a trade name or logo, so long as there is reasonable disclosure of its true name.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2042.**

**(a)** In addition to the fees provided in Section 2038, the commissioner shall levy an assessment each fiscal year, on a pro rata basis, on those licensees that at any time during the preceding calendar year engaged in the business of money transmission in California in an amount that is, in his or her judgment, sufficient to meet the

commissioner's expenses in administering the provisions of this division and to provide a reasonable reserve for contingencies.

(b) For licensees that sell or issue payment instruments or stored value, the amount of the annual assessment on any licensee shall not exceed the sum of the products determined by multiplying (1) increments of the aggregate face amount of payment instruments and stored value issued or sold in California by the licensee, directly or indirectly through agents, in the calendar year next preceding the date of such assessment, by (2) percentages of the base assessment rate, according to the following table:

| Aggregate face amount of payment instruments and stored value sold (in millions) | | Percentage of base assessment rate |
|---|---|---|
| First $1 | ......................... | 100.0 |
| Next $9 | ......................... | 25.0 |
| Next $40 | ......................... | 12.5 |
| Next $50 | ......................... | 6.0 |
| Next $400 | ......................... | 3 |
| Next $500 | ......................... | 2 |
| Excess over $1,000 | ......................... | 1 |

The base assessment rate shall be fixed from time to time by the commissioner but shall not exceed one dollar ($1) per one thousand dollars ($1,000) face amount of payment instruments and stored value sold.

(c) For licensees receiving money for transmission, the basis of the apportionment of the assessment among the licensees assessed shall be the proportion that the total amount of money received for transmission by the licensee in California bears in relation to the total amount of money received for transmission by all licensees in California, as shown by the reports of licensees to the commissioner for the preceding calendar year. The assessment rate shall be fixed from time to time by the commissioner but shall not exceed one dollar ($1) per one thousand dollars ($1,000) of money received for transmission in California by the licensee.

(d) The commissioner shall notify each licensee by mail of the amount levied against it. The licensee shall pay the amount levied within 20 days. If payment is not made to the commissioner within that time, the commissioner shall assess and collect, in addition to the annual assessment, a penalty of 5 percent of the assessment for each month or part thereof that the payment is delinquent.

*(Amended by Stats. 2012, Ch. 356, Sec. 15. Effective January 1, 2013.)*

**2043.**

(a) On or before April 1, 2013, and annually thereafter, each licensee shall provide its agents under contract with training materials on recognizing elder or dependent adult financial abuse, and how to appropriately respond if the agent suspects that he or she is being asked to engage in money transmission for a fraudulent transaction involving an elder or dependent adult.

(b) To ensure that agents that are newly appointed by licensees pursuant to Section 2060 receive the training materials described in subdivision (a) in a timely manner, each licensee shall provide those materials to any newly appointed agent no later than one month following the appointment of that agent.

(c) This section shall not apply to licensees that are engaged solely in selling or issuing stored value pursuant to paragraph (2) of subdivision (o) of Section 2003. Licensees that engage in money transmission activities pursuant to paragraph (1) or (3) of that subdivision, shall be subject to this section only with respect to their agents under contract for activities described in those paragraphs. Additionally, this section shall not apply to licensees who exclusively offer their services via an Internet Web site.

*(Added by Stats. 2012, Ch. 632, Sec. 1. Effective January 1, 2013.)*

**Financial Code - FIN,DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 4. Agents [2060. - 2063.]**
*(Chapter 4 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2060.**

(a) In this section, "remit" means to make direct payments of money to a licensee or its representative authorized to receive money or to deposit money in a bank in an account specified by the licensee.

(b) No licensee shall appoint or continue any person as agent, unless the licensee and the person have made a written contract. A written contract between a licensee and an agent shall require the agent to operate in full compliance with this division.

(c) The written contract shall contain each of the following provisions:

    (1) That the licensee appoints the person as its agent with authority to conduct money transmission on behalf of the licensee.

    (2) That the agent shall make and keep accounts, correspondence, memoranda, papers, books, and other records as the commissioner by regulation or order requires and preserve the records for the time specified by the regulation or order.

    (3) That all money or monetary value, less fees due agents provided for and expressly set forth in the written agreement, received by the agent for money transmission on behalf of the licensee shall be trust funds owned by and belonging to the licensee until the time when the money or an equivalent amount are remitted by the agent to the licensee in accordance with this section.

    (4) That the money must be remitted in accordance with the provisions of this division.

    (5) Any other provisions that the commissioner may by regulation or order find to be necessary to carry out the provisions and purposes of this division.

(d) An agent shall remit all money owing to the licensee in accordance with the terms of the contract between the licensee and the agent.

(e) An agent of a licensee shall remit any money, less fees, received on behalf of the licensee for money transmission as follows:

    (1) Within three business days of receipt.

    (2) In case the aggregate face amount of the money, less fees, does not in any calendar week exceed ten thousand dollars ($10,000), within 10 business days of receipt.

    (3) Within a period longer than three business days of receipt, if the agent has previously deposited with, and during such period maintains on deposit with, an office of an insured bank or of an insured savings and loan association located in the United States in an account that is in the sole and exclusive name of the licensee an amount that, for each day by which such period exceeds three business days, is not less than the aggregate face amount of money received on behalf of the licensee for money transmission that the agent usually sells per day.

    (4) Within such shorter period as the licensee may provide.

(f) An agent may not provide money transmission outside the scope of activity permissible under the contract between the agent and the licensee. All money or monetary value, less fees, received by an agent of a licensee shall, from the time when the money is received by the agent until the time when the money or an equivalent amount is remitted by the agent to the licensee, constitute trust funds owned by and belonging to the licensee.

(g) An agent may not use a subagent to conduct money transmissions on behalf of a licensee.

(h) Each licensee shall exercise reasonable supervision over its agents to ensure compliance with applicable laws, rules, and regulations with respect to money transmission.

(i) No agent of a licensee shall, nor shall any licensee cause or knowingly permit any of its agents to, conduct money transmission on behalf of the licensee without concurrently receiving money, monetary value or its equivalent, credit card, or payment instrument, or a combination of same believed to be valid in an amount not less than the amount of the money transmission being provided. In the case of a sale of payment instruments or stored value to an insured bank, an insured savings and loan association, or an insured credit union, the licensee or agents of the licensee may receive such amounts the next business day after the sale.

(j) If any agent of a licensee shall commingle any money or monetary value, less fees, received on behalf of the licensee for money transmission with any other property owned or controlled by the agent, all such property shall be impressed with a trust in favor of the licensee in an amount equal to the aggregate amount of such money so commingled. No money or monetary value, less fees, received by any agent on behalf of the licensee for money transmission, while held by such agent, nor any property impressed with a trust pursuant to this subdivision, shall be subject to attachment, levy of execution, or sequestration by order of any court, except for the benefit of the licensee.

(k) Each licensee shall be liable as a principal for the money or monetary value from the time when the money or monetary value is received by the agent. Each licensee shall be liable as the maker or drawer on each payment instrument issued or sold by such licensee.

*(Amended by Stats. 2012, Ch. 356, Sec. 16. Effective January 1, 2013.)*

**2061.**

(a) No licensee shall appoint any person as an agent unless it has conducted a review of the proposed agent's fitness to act as an agent and has determined that the proposed agent and any persons who control the proposed agent are of good character and sound financial standing.

(b) A licensee shall maintain records of this review for each agent while the agent is providing money transmission on behalf of the licensee, and for three years after the relationship with the agent has terminated.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2062.** A person may not provide money transmissions on behalf of a person not licensed or not exempt from licensure under this division. A person that engages in that activity provides money transmissions services to the same extent as if the person was a licensee, and shall be jointly and severally liable with the unlicensed or nonexempt person.

*(Amended by Stats. 2012, Ch. 356, Sec. 17. Effective January 1, 2013.)*

**2063.**
**(a)** No agent of a licensee who has actual notice that the commissioner has suspended or revoked the license of the licensee or that the commissioner has issued an order taking possession of the property and business of the licensee shall conduct money transmission on behalf of the licensee.
**(b)** If any agent of a licensee, after first having actual notice that the commissioner has suspended or revoked the license of the licensee or that the commissioner has issued an order taking possession of the property and business of the licensee, conducts money transmission on behalf of the licensee, the agent shall be jointly and severally liable with the licensee for payment of the money transmission.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 5. Eligible Securities [2081. - 2089.]**
*(Chapter 5 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2081.**
**(a)** A licensee shall at all times own eligible securities having an aggregate market value computed in accordance with United States generally accepted accounting principles of not less than the aggregate amount of all of its outstanding payment instruments and stored value obligations issued or sold in the United States and all outstanding money received for transmission in the United States.
**(b)** If the commissioner finds that the financial condition of a licensee is impaired, or that the financial condition of a licensee is such that its business is being conducted in an unsafe and unsound manner, the commissioner, to protect the public interest, may issue an order, subject to the procedures set forth in Section 2148, doing one or both of the following:
    **(1)** Increasing the amount of eligible securities that the licensee must maintain.
    **(2)** Requiring the licensee to obtain, as security for the payment of outstanding money transmission obligations, additional security in the form of financial guarantees.
**(c)** Eligible securities, even if commingled with other assets of the licensee, are deemed to be held in trust for the benefit of the purchasers and holders of the licensee's outstanding payment instrument and stored value obligations, and all senders of outstanding money received for transmission, in the event of bankruptcy or receivership of the licensee, or in the event of an action by a creditor against the licensee who is not a beneficiary of this statutory trust. No eligible securities impressed with a trust pursuant to this subdivision shall be subject to attachment, levy of execution, or sequestration by order of any court, except for a beneficiary of this statutory trust.
**(d)** All outstanding payment instruments and stored value issued or sold by a licensee or its agent, and all outstanding money received for transmission by a licensee or its agent, shall remain a liability of the licensee from the time money or monetary value is received by the licensee or its agent until the licensee receives confirmation that such money or monetary value was received by the beneficiary, or until the outstanding payment instrument or stored value obligation has been paid, or until the money is refunded to the customer.
**(e)** A licensee shall maintain a record in the United States of proof of receipt by the beneficiary or refund to the customer of money received for transmission.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2082.**
**(a)** "Eligible security" means any United States currency eligible security or foreign currency eligible security.
**(b)** For the purposes of this division, the following are United States currency eligible securities:
    **(1)** Cash.
    **(2)** Any deposit in an insured bank or an insured savings and loan association or insured credit union.
    **(3)** Any bond, note, or other obligation that is issued or is guaranteed by the United States or any agency of the United States.

(4) Any bond, note, or other obligation that is issued or guaranteed by any state of the United States or by any governmental agency of or within any state of the United States and that is assigned an eligible rating by an eligible securities rating service.

(5) Any bankers acceptance that is eligible for discount by a federal reserve bank.

(6) Any commercial paper that is assigned an eligible rating by an eligible rating securities service.

(7) Any bond, note, or other obligation that is assigned an eligible rating by an eligible securities rating service.

(8) Any share of an investment company that is an open-end management company, that is registered under the Investment Company Act of 1940 (15 U.S.C. Sec. 80a-1 et seq.), that holds itself out to investors as a money market fund, and that operates in accordance with all provisions of the Investment Company Act of 1940, and the regulations of the Securities and Exchange Commission applicable to money market funds, including Section 270.2a-7 of the regulations of the Securities and Exchange Commission (17 C.F.R. 270.2a-7).
For purposes of this paragraph and paragraph (9), "investment company," "management company," and "open-end" have the meanings set forth in Sections 3, 4, and 5, respectively, of the Investment Company Act of 1940 (15 U.S.C. Secs. 80a-4 and 80a-5, respectively).

(9) Any share of an investment company that is an open-end management company, that is registered under the Investment Company Act of 1940 (15 U.S.C. Sec. 80a-1 et seq.), and that invests exclusively in securities that constitute eligible securities that comply with valuation requirements of this division.

(10) Any account due to any licensee from any agent in the United States on account of the receipt of money on behalf of the licensee for money transmission by the agent, if the account is current and not past due or otherwise doubtful of collection.

(11) Any other security or class of securities that the commissioner has by regulation or order declared to be eligible securities.

(c) "Foreign currency eligible security" means any of the following that is denominated in a foreign currency:

(1) Cash.

(2) Any deposit in an office of a bank acceptable to the commissioner that is located in a foreign country.

(3) Any other security or class of securities that the commissioner has by regulation or order declared to be eligible securities pursuant to Section 2086.

(d) For the purposes of this division, "value" means the following:

(1) When used with respect to an eligible security owned by a licensee of the type described in paragraph (10) of subdivision (b), net carrying value as determined in conformity with United States generally accepted accounting principles. However, in computing the value of the account, any amount that consists of money that has not been remitted to the licensee or refunded within 45 business days of receipt by the agent shall be excluded from the value of the account and shall be excluded from the calculation of eligible securities.

(2) Market value when used with respect to any other eligible security owned by a licensee.

*(Amended by Stats. 2012, Ch. 356, Sec. 18. Effective January 1, 2013.)*

**2083.**

(a) In computing for purposes of Section 2082 the aggregate value of eligible securities owned by a licensee, all of the following shall be excluded:

(1) The value of any eligible security if and to the extent that the value of the eligible security, when combined with the aggregate value of all other eligible securities owned by the licensee that are issued or guaranteed by the same person or by any affiliate of the same person by whom the eligible security is issued or guaranteed, exceeds 10 percent of the aggregate value of all eligible securities owned by the licensee.

(2) The portion of the aggregate value of all eligible securities of the type described in paragraph (10) of subdivision (b) of Section 2082 that exceeds 25 percent of the aggregate value of all eligible securities owned by the licensee; and that portion of the aggregate value of agent receivables from any one person that exceeds 10 percent of the aggregate value of all eligible securities owned by the licensee, or any higher percentage that the commissioner may approve for the licensee, up to a maximum of 20 percent.

(3) The portion of the aggregate value of all eligible securities of the type described in paragraph (6) of subdivision (b) of Section 2082 that exceeds 20 percent of the aggregate value of all eligible securities owned by the licensee.

(4) The portion of the aggregate value of all eligible securities of the type described in paragraph (7) of subdivision (b) of Section 2082 that exceeds 20 percent of the aggregate value of all eligible securities owned by the licensee.

    **(5)** The portion of the aggregate value of all eligible securities of the type described in paragraph (8) of subdivision (b) of Section 2082, except for a money market fund that invests exclusively in obligations issued or guaranteed by the United States or any agency of the United States, that exceeds 20 percent of the aggregate value of all eligible securities owned by the licensee.

    **(6)** The portion of the aggregate value of all eligible securities of the type described in paragraphs (6), (7), and (8) of subdivision (b) of Section 2082 that exceeds 50 percent of the aggregate value of all eligible securities owned by the licensee.

**(b)** Subdivision (a) shall not be deemed to require the exclusion of the value of any of the following eligible securities, and each of the following eligible securities shall be exempted from the limitations of subdivision (a):

    **(1)** The following eligible securities:

        **(A)** Cash.

        **(B)** Any deposit in an insured bank, insured savings and loan association, or insured credit union.

        **(C)** Any bond, note, or other obligation for the payment of which the full faith and credit of the United States are pledged.

    **(2)** Any eligible security that the commissioner, in view of the financial condition of the obligor or issuer and such other factors as may in the opinion of the commissioner be relevant, finds to be of such quality that exclusion of the value of such eligible security pursuant to subdivision (a) is not necessary for the purposes of this division and which the commissioner by regulation or order exempts, in whole or in part, from the limitations of subdivision (a).

*(Amended by Stats. 2012, Ch. 356, Sec. 19. Effective January 1, 2013.)*

**2084.**

**(a)** A licensee shall be deemed to own an eligible security only if the following apply:

    **(1)** The licensee owns the eligible security solely and exclusively in its own right, both of record and beneficially.

    **(2)** The eligible security is not subject to any pledge, lien, or security interest.

    **(3)** The licensee can freely negotiate, assign, or otherwise transfer the eligible security.

**(b)** Notwithstanding subdivision (a), no licensee shall be deemed not to own an eligible security solely on account of any of the following facts, provided that, but for that fact, the licensee would be deemed to own the eligible security under the provisions of subdivision (a):

    **(1)** The fact that the eligible security is owned of record by a documented nominee of the licensee or by a securities depository.

    **(2)** The fact that the licensee has pledged the eligible security with the United States or any state of the United States to secure payment by the licensee of transmission money.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2085.** If the commissioner finds that any eligible security or class of eligible securities is not of sufficient liquidity or quality to be eligible securities, the commissioner may by regulation or order declare the security or class of securities to be ineligible.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2086.** If the commissioner finds that any security or class of securities that is not an eligible security is of sufficient liquidity and quality to be an eligible security, the commissioner may by regulation or order declare the security or class of securities to be eligible securities.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2087.**

**(a)** If the commissioner finds that a rating assigned to a class of securities by an eligible securities rating service indicates that the class of securities is of sufficient quality to be eligible securities, the commissioner may by regulation or order declare the rating to be an eligible rating.

**(b)** With respect to this division "eligible rating" means any rating assigned to such security or class of securities by such eligible securities rating service which the commissioner has by regulation or order declared to be an eligible rating.

*(Amended by Stats. 2012, Ch. 356, Sec. 20. Effective January 1, 2013.)*

**2088.**

(a) The commissioner may by regulation or order declare a securities rating service to be an eligible securities rating service if the commissioner finds the following with respect to the securities rating service:

(1) It has been continuously engaged in the business of rating securities for a period of not less than three years.

(2) It is competent to rate securities and is nationally recognized for rating securities in a competent manner.

(3) It publishes its ratings of securities on a nationwide basis.

(b) With respect to this division "eligible securities rating service" means any securities rating service that the commissioner by regulation or order declared to be an eligible securities ratings service.

*(Amended by Stats. 2012, Ch. 356, Sec. 21. Effective January 1, 2013.)*

**2089.** A licensee shall maintain eligible securities that are adequately diversified, predominantly of a duration commensurate with the licensee's outstanding money transmission obligations, and of sufficient liquidity and quality to promptly pay the outstanding money transmission obligations of the licensee.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 6. Consumer Disclosures [2100. - 2106.]**
*(Chapter 6 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2100.**

(a)

(1) Each licensee shall file with the commissioner a certified copy of every receipt form used by it or by its agent for receiving money for transmission prior to its first use. No licensee or its agent shall use any receipt, a certified copy of which has not been filed with the commissioner, or use a receipt that the commissioner has deemed not to be in compliance pursuant to paragraph (2).

(2) If the commissioner determines, within 30 business days of the filing date of a receipt, that the receipt does not comply with the requirements of this section or Sections 2102 and 2103, the commissioner shall notify the licensee in writing that the receipt is not in compliance with those requirements.

(b) Notwithstanding subdivision (a), before a new licensee issues its first receipt to a customer, it shall file with the commissioner a certified copy of the receipt forms to be used by it or its agents for receiving money for transmission. The new licensee shall not use the receipt forms until approved by the commissioner. For purposes of this subdivision, a new licensee is a licensee that has not been previously licensed by the commissioner as a money transmitter or has not previously received money for transmission in California.

(c) If a receipt is required by this division to be in English and another language, the English version of the receipt shall govern any dispute concerning the terms of the receipt. However, any discrepancies between the English version and any other version due to the translation of the receipt from English to another language including errors or ambiguities shall be construed against the licensee or its agent and the licensee or its agent shall be liable for any damages caused by these discrepancies.

(d) Any licensee violating the requirements of this section shall be subject to a fine of fifty dollars ($50) for each violation. This provision is in addition to any other enforcement provisions that may apply to such a violation.

(e) If any licensee or its agent uses a receipt form, a certified copy of which has not been filed with the commissioner, the licensee shall be liable for the acts of its agent whether or not the licensee authorized the agent to use that form.

(f) The receipt form shall comply with the requirements of Sections 2102 and 2103.

*(Amended by Stats. 2012, Ch. 356, Sec. 22. Effective January 1, 2013.)*

**2101.** Every licensee or its agent shall forward all money received for transmission or give instructions committing equivalent money to the person designated by the customer within 10 days after receiving that money, unless otherwise ordered by his or her customer.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2102.**

(a) Every licensee or its agent shall refund to the customer within 10 days of receipt of the customer's written request for a refund any and all money received for transmission unless any of the following occurs:

      **(1)** The money has been forwarded within 10 days of the date of receipt.
      **(2)** Instructions have been given committing an equivalent amount of money to the person designated by the customer within 10 days of the date of the receipt of the money from the customer.
      **(3)** The customer instructs the licensee to transmit the money at a time beyond 10 days. If the customer gives instructions as to when the money shall be forwarded or transmitted and the moneys have not yet been forwarded or transmitted, the licensee or its agent shall refund the customer's money within 10 days of receipt of the customer's written request for a refund.
      **(4)** Refund would violate law.

**(b)** In the case of money received for transmission, a receipt shall be provided by a licensee or its agent to all customers which shall be made available to the customer in English and in the language principally used by that licensee or that agent to advertise, solicit, or negotiate, either orally or in writing, at that branch office if other than English. The receipt shall either include or have attached a conspicuous statement in English and in the language principally used by the licensee or that agent to advertise, solicit, or negotiate, either orally or in writing at that branch office if other than English in a size equal to at least 10 point bold type, as follows:
RIGHT TO REFUND

"You, the customer, are entitled to a refund of the money to be transmitted as the result of this agreement if _____ (name of licensee) does not forward the money received from you within 10 days of the date of its receipt, or does not give instructions committing an equivalent amount of money to the person designated by you within 10 days of the date of the receipt of the funds from you unless otherwise instructed by you.

If your instructions as to when the moneys shall be forwarded or transmitted are not complied with and the money has not yet been forwarded or transmitted, you have a right to a refund of your money.

If you want a refund, you must mail or deliver your written request to _____ (name of licensee) at _____ (mailing address of licensee). If you do not receive your refund, you may be entitled to your money back plus a penalty of up to $1,000 and attorney's fees pursuant to Section 2102 of the California Financial Code."

**(c)** A cause of action under this section may be brought in small claims court if it does not exceed the jurisdiction of that court, or in any other appropriate court. The customer shall be entitled to recover each of the following:
      **(1)** Any and all money received for transmission, plus any fees and charges paid by the customer.
      **(2)** A penalty in an amount not to exceed one thousand dollars ($1,000). The court shall award the prevailing party costs and attorney's fees.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2103.**
**(a)** The receipt presented to each customer for money received for transmission pursuant to subdivision (b) of Section 2102 shall clearly state the rate of exchange for the particular transaction, if any, the amount of commission or fees, and the net exchange after all fees and commissions have been deducted. The receipt shall also state the total amount of money presented by the customer and the total amount to be delivered to the beneficiary designated by the customer. These disclosures shall be in English and in the same language as that principally used by the licensee or any agent of the licensee to advertise, solicit, or negotiate, either orally or in writing, at that branch office if other than English.
**(b)** If window and exterior signs concerning the rates of exchange for money received for transmission are used, they shall clearly state in English and in the same language principally used by the licensee or any agent of the licensee to advertise, solicit, or negotiate, either orally or in writing, at that branch office if other than English, the rate of exchange for exchanging the currency of the United States for foreign currency. If an interior sign or any advertising is used that quotes exchange rates, it shall, in addition to clearly stating the rates of exchange for exchanging the currency of the United States for foreign currency, also state all commissions and fees charged on all such transactions.
**(c)** At each branch office, there shall be disclosed the exchange rates, fees, and commissions charged in English and in the same language principally used by the licensee or any agent of the licensee to advertise, solicit, or negotiate, either orally or in writing, with respect to money received for transmission at that branch office. At each branch office, there shall be signage clearly identifying the name of the licensee as well as any trade names used by the licensee at that branch office.
**(d)** If the customer does not specify at the time the money is presented to the licensee or its agent the country to which the money is to be transmitted, the rate of exchange for the transaction is not required to be set forth on the receipt. If the customer does specify at the time the money is presented to the licensee or its agent the country to which the money is to be transmitted but the specified country's laws require the rate of exchange for the transaction to be determined at the time the transaction is paid out to the intended recipient, the rate of exchange for the transaction is not required to be set forth on the receipt.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2104.** Each licensee or agent shall prominently post on the premises of each branch office that issues or sells payment instruments, and at machines located in this state and operated by the licensee or agent that issues or sells payment instruments, a notice clearly stating that payment instruments are not insured by the federal government, the state government, or any other public or private entity. This notice shall be printed in English and in the same language principally used by the licensee or any agent of the licensee to advertise, solicit, or negotiate, either orally or in writing, with respect to the purchase of payment instruments. The information required in this notice shall be clear, legible, and in letters not less than one-half inch in height. The notice shall be posted in a conspicuous location in the unobstructed view of the public within the premises. The licensee shall provide to each of its agents the notice required by this section. In those locations operated by an agent, the agent, not the licensee, shall be responsible for the failure to properly post the required notice.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2105.**
**(a)** Each licensee or agent shall prominently post on the premises of each branch office that conducts money transmission a notice stating that:
"If you have complaints with respect to any aspect of the money transmission activities conducted at this location, you may contact the California Department of Financial Institutions at its toll-free telephone number, 1-800-622-0620, by e-mail at consumer.complaint@dfi.ca.gov, or by mail at Department of Financial Institutions, Consumer Services, 1810 13th Street, Sacramento, CA 95811."
**(b)** The commissioner may by order or regulation modify the content of the notice required by this section. This notice shall be printed in English and in the same language principally used by the licensee or any agent of the licensee to advertise, solicit, or negotiate either orally or in writing, with respect to money transmission at that branch office. The information required in this notice shall be clear, legible, and in letters not less than one-half inch in height. The notice shall be posted in a conspicuous location in the unobstructed view of the public within the premises. The licensee shall provide to each of its agents the notice required by this section. In those locations operated by an agent, the agent, and not the licensee, shall be responsible for the failure to properly post the required notice.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2106.**
**(a)** No licensee shall sell or issue any form of payment instrument in California unless a certified copy of the payment instrument has first been filed with the commissioner. The payment instrument shall clearly identify the licensee as the issuer.
**(b)** The commissioner may by order or regulation declare that a form of payment instrument is prohibited if it is misleading in any material respect or otherwise does not comply with applicable law.
**(c)** A payment instrument that identifies the agent through which the licensee sells the payment instrument shall identify the agent as such and shall identify the licensee at least as conspicuously as it does the agent.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 7. Examinations, Special Reports, and Records [2120. - 2124.]**
*(Chapter 7 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2120.**
**(a)** The commissioner may at any time and from time to time examine the business and any office, within or outside this state, of any licensee or any agent of a licensee in order to ascertain whether that business is being conducted in a lawful manner and whether all money transmission is properly accounted for.
**(b)** The directors, officers, and employees of any licensee or agent of a licensee being examined by the commissioner shall exhibit to the commissioner, on request, any or all of the licensee's accounts, books, correspondence, memoranda, papers, and other records and shall otherwise facilitate the examination so far as it may be in their power to do so.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2121.** The commissioner may consult and cooperate with other state or federal money transmission regulators in enforcing and administering this division. They may jointly pursue examinations and take other official action that they are otherwise empowered to take.

*(Amended by Stats. 2012, Ch. 356, Sec. 23. Effective January 1, 2013.)*

**2122.** A licensee shall file a report with the commissioner within five business days after the licensee has reason to know of the occurrence any of the following events:
**(a)** The filing of a petition by or against the licensee under the United States Bankruptcy Code (11 U.S.C. Secs. 101-110, incl.) for bankruptcy or reorganization.
**(b)** The filing of a petition by or against the licensee for receivership, the commencement of any other judicial or administrative proceeding for its dissolution or reorganization, or the making of a general assignment for the benefit of its creditors.
**(c)** The commencement of a proceeding to revoke or suspend its license in a state or country in which the licensee engages in business or is licensed.
**(d)** The cancellation or other impairment of the licensee's bond or other security.
**(e)** A charge or conviction of the licensee or of an executive officer, manager, director, or person in control of the licensee for a felony.
**(f)** A charge or conviction of an agent for a felony.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2123.** A licensee that is a money services business under the regulations adopted pursuant to the United States Bank Secrecy Act (31 C.F.R. Part 103) and the agents of the licensee that are money services businesses shall comply with those regulations.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2124.**
**(a)** A licensee shall maintain the following records for determining its compliance with this division for at least three years:
    **(1)** A record of each payment instrument or stored value obligation sold.
    **(2)** A general ledger posted at least monthly containing all asset, liability, capital, income, and expense accounts.
    **(3)** Bank statements and bank reconciliation records.
    **(4)** Records of outstanding payment instruments and stored value obligations.
    **(5)** Records of each payment instrument and stored-value obligation paid within the three-year period.
    **(6)** A list of the last known names and addresses of all of the licensee's agents and their branch offices.
    **(7)** Any other records the commissioner reasonably requires by order or regulation.
**(b)** A licensee or its agent shall maintain records of any receipts provided pursuant to Section 2102 for six months or a longer period of time specified in the contract between the licensee and its agent.
**(c)** The items specified in subdivisions (a) and (b) may be maintained in any form of record.
**(d)** Records may be maintained outside this state if they are made available to the commissioner on seven days' notice that is sent in a record.
**(e)** If records not required to be maintained in English pursuant to Section 456 are in a language other than English, the licensee shall provide records translated into English within seven days' notice that is sent in a record.

*(Amended by Stats. 2012, Ch. 356, Sec. 24. Effective January 1, 2013.)*

**Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 8. Additional Enforcement Provisions [2148. - 2153.]**
*(Chapter 8 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2148.**
**(a)** If it appears to the commissioner that a licensee is violating or failing to comply with any law of this state, the commissioner may direct the licensee to comply with the law by an order issued under the commissioner's official seal, or if it appears to the commissioner that any licensee is conducting its business in an unsafe or injurious manner, the commissioner may in like manner direct it to discontinue the unsafe or injurious practices. The order shall require the licensee to show cause before the commissioner, at a time and place to be fixed by the commissioner, as to why the order should not be observed.

**(b)** If, upon any hearing held pursuant to subdivision (a), the commissioner finds that the licensee is violating or failing to comply with any law of this state or is conducting its business in an unsafe or injurious manner, the commissioner may make a final order directing it to comply with the law or to discontinue the unsafe or injurious practices. A licensee shall comply with the final order unless, within 10 days after the issuance of the order, its enforcement is restrained in a proceeding brought by the licensee.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2149.**
**(a)** The commissioner may issue an order suspending or revoking a license, or taking possession of and placing a licensee in receivership, if after notice and an opportunity for hearing, the commissioner finds that:
    **(1)** The licensee is violating this division or a regulation adopted or an order issued under this division, or a condition of approval issued under this division.
    **(2)** The licensee does not cooperate with an examination or investigation by the commissioner.
    **(3)** The licensee engages in fraud, intentional misrepresentation, or gross negligence.
    **(4)** The competence, experience, character, or general fitness of the licensee, or any director, officer, employee, or person in control of a licensee, indicates that it is not in the public interest to permit the person to provide money transmission services.
    **(5)** The licensee engages in an unsafe or unsound practice.
    **(6)** The licensee is insolvent, suspends payment of its obligations, or makes a general assignment for the benefit of its creditors.
    **(7)** The licensee does not remove an agent after the commissioner issues and serves upon the licensee a final order including a finding that the agent has violated this division.
    **(8)** The licensee has applied for an adjudication of bankruptcy, reorganization, arrangement, or other relief under any bankruptcy, reorganization, insolvency, or moratorium law, or any person has applied for any such relief under that law against the licensee and the licensee has by any affirmative act approved of or consented to the action or the relief has been granted.
    **(9)** Any fact or condition exists that, if it had existed at the time when the licensee applied for its license, would have been grounds for denying the application.
**(b)** In determining whether a licensee is engaging in an unsafe or unsound practice, the commissioner may consider the size and condition of the licensee's provision of money transmission services, the magnitude of the loss, the gravity of the violation of this division, and the previous conduct of the person involved.

*(Amended by Stats. 2012, Ch. 356, Sec. 25. Effective January 1, 2013.)*

**2150.**
**(a)** The commissioner may issue an order suspending or revoking the designation of an agent if, after notice and an opportunity for hearing, the commissioner finds that:
    **(1)** The agent violated this division or a regulation adopted or an order issued under this division.
    **(2)** The agent did not cooperate with an examination or investigation by the commissioner.
    **(3)** The agent engaged in fraud, intentional misrepresentation, or gross negligence.
    **(4)** The agent is convicted of a violation of a state or federal anti-money laundering statute.
    **(5)** The competence, experience, character, or general fitness of the agent, or any director, officer, employee, or person in control of the agent, indicates that it is not in the public interest to permit the agent to provide money transmissions.
    **(6)** The agent is engaging in an unsafe or unsound practice.
    **(7)** The agent has made or caused to be made in any application or report filed with the commissioner or in any proceeding before the commissioner, any statement that was at the time and in the light of the circumstances under which it was made, false or misleading with respect to any material fact, or has omitted to state in any of those applications, reports, or proceedings any material fact which is required to be stated therein.
    **(8)** The agent is an agent of a licensee who, because of its operations and financial condition, is not competent to supervise and monitor the agent.
    **(9)** The agent will not comply with all applicable provisions of this division and of any regulation or order issued under this division.
**(b)** In determining whether an agent is engaging in an unsafe or unsound practice, the commissioner may consider the size and condition of the agent's provision of money transmission services, the magnitude of the loss, the gravity of the violation of this division or a rule adopted or order issued under this division, and the previous conduct of the agent.
**(c)** No licensee shall appoint as an agent any person with respect to whom an order issued under this section is in effect.

**(d)** No person with respect to whom an order issued under this section is in effect shall become or continue to be an agent of any licensee.

**(e)** If applicable, the commissioner may disclose to the licensee criminal history information upon which an order is based.

*(Amended by Stats. 2012, Ch. 356, Sec. 26. Effective January 1, 2013.)*

**2150.1.**

**(a)** Every order, decision, or other official act of the commissioner is subject to review in accordance with law.

**(b)** Whenever the commissioner has taken possession of the property and business of any licensee, the licensee, within 10 days after that taking, if it deems itself aggrieved thereby, may apply to the superior court in the county in which the head office of the licensee is located to enjoin further proceedings. The court, after citing the commissioner to show cause why further proceedings should not be enjoined and after a hearing and a determination of the facts upon the merits, may dismiss the application or enjoin the commissioner from further proceedings and direct the commissioner to surrender the property and business to the licensee.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2150.2.**

**(a)** If the commissioner finds that any of the factors set forth in Section 2149 is true with respect to any licensee and that it is necessary for the protection of the public interest, the commissioner may issue an order immediately suspending or revoking the licensee's license.

**(b)** Within 30 days after the license is suspended or revoked pursuant to subdivision (a), the licensee may file with the commissioner an application for a hearing on the suspension or revocation.

**(c)** If the commissioner fails to commence a hearing within 15 business days after the application is filed with the commissioner pursuant to subdivision (b) or within a longer period of time agreed to by the licensee, the suspension or revocation shall be deemed rescinded.

**(d)** Within 30 days after the hearing, the commissioner shall affirm, modify, or rescind the suspension or revocation. Otherwise, the suspension or revocation shall be deemed rescinded.

**(e)** The right of the licensee to petition for judicial review of the suspension or revocation shall not be affected by the failure of the licensee to apply to the commissioner for a hearing on the suspension or revocation pursuant to subdivision (b).

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2151.**

**(a)** If the commissioner finds that any of the factors set forth in Section 2150 is true with respect to any agent and that it is necessary for the protection of the public interest, the commissioner may issue an order immediately suspending or barring that agent from continuing to be or becoming an agent of any licensee during the period for which that order is in effect.

**(b)** Within 30 days after an order is issued pursuant to subdivision (a), the licensee or the agent or former agent with respect to whom the order was issued may file with the commissioner an application for a hearing on the order.

**(c)** If the commissioner fails to commence a hearing within 20 business days after the application is filed with the commissioner pursuant to subdivision (b) or within a longer period of time agreed to by the parties, the suspension or revocation shall be deemed rescinded.

**(d)** Within 30 days after the hearing, the commissioner shall affirm, modify, or rescind the order.

**(e)** The right of the licensee or agent or former agent to petition for judicial review of the order shall not be affected by the failure of that person to apply to the commissioner for a hearing on the order pursuant to subdivision (b).

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2151.1.** The commissioner may assess a civil penalty against a person that violates this division or a regulation adopted or an order issued under this division in an amount not to exceed one thousand dollars ($1,000) for each violation or, in the case of a continuing violation, one thousand dollars ($1,000) for each day or part thereof during which the violation continues, plus this state's costs and expenses for the investigation and prosecution of the matter, including reasonable attorney's fees.

*(Amended by Stats. 2012, Ch. 356, Sec. 27. Effective January 1, 2013.)*

**2152.**

**(a)** A person that intentionally makes a false statement, misrepresentation, or false certification in a record filed or required to be maintained under this division or that intentionally makes a false entry or omits a material entry in such a record is guilty of a felony.

**(b)** A person that knowingly engages in an activity for which a license is required under this division without being licensed or exempt from licensure under this division is guilty of a felony.

**(c)** Nothing in this division limits the power of the state to punish any person for any act that constitutes a crime under any statute.

*(Amended by Stats. 2012, Ch. 356, Sec. 28. Effective January 1, 2013.)*

**2153.** The enforcement provisions of this division are in addition to any other enforcement powers that the commissioner may have under law.

*(Amended by Stats. 2012, Ch. 356, Sec. 29. Effective January 1, 2013.)*

**Financial Code - FIN, DIVISION 1.2. MONEY TRANSMISSION ACT [2000. - 2172.]**
*(Division 1.2 added by Stats. 2011, Ch. 243, Sec. 4.)*
**CHAPTER 9. Miscellaneous Provisions [2170. - 2172.]**
*(Chapter 9 added by Stats. 2011, Ch. 243, Sec. 4.)*

**2170.** Any licensee may surrender its license by filing with the commissioner the license and a report with any information as the commissioner requires. The voluntary surrender of the license shall become effective at the time and upon the conditions as the commissioner specifies by order.

*(Added by Stats. 2011, Ch. 243, Sec. 4. Effective January 1, 2012.)*

**2171.** If any provision of this division or the application thereof to any person or circumstances is held invalid, illegal, or unenforceable, that invalidity, illegality, or unenforceability shall not affect other provisions or applications of this division that can be given effect without the invalid, illegal, or unenforceable provision or application, and to this end, the provisions of this division are declared to be severable.

*(Amended by Stats. 2012, Ch. 356, Sec. 30. Effective January 1, 2013.)*

**2172.**
**(a)** A license issued under the former Chapter 14 (commencing with Section 1800), Chapter 14A (commencing with Section 1851), or the former Division 16 (commencing with Section 33000) that is in effect immediately before January 1, 2011, shall remain in effect as a valid license under this division.

**(b)** Any person that, prior to January 1, 2011, was not required to obtain a license under the former Chapter 14 (commencing with Section 1800), Chapter 14A (commencing with Section 1851), or Division 16 (commencing with Section 33000), but is required to have a license under this division, shall file an application for a license pursuant to this division by July 1, 2011, in order to continue conducting money transmission in this state directly or through agents. If the application is timely filed and pending with the commissioner, that person may continue to conduct money transmission in this state, until the application has been approved, abandoned, or denied.

*(Amended by Stats. 2012, Ch. 356, Sec. 31. Effective January 1, 2013.)*

## SCHEDULE B
## 18 U.S.C. § 1960 Statutory Text

**United States Code, Title 18, Part I, Chapter 95, § 1960**
Prohibition of unlicensed money transmitting businesses

(a) Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

(b) As used in this section—

    (1) the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

        (A) is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

        (B) fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

        (C) otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;

    (2) the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and

    (3) the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States.

## SCHEDULE C
### Bank Secrecy Act Statutory Text (31 U.S.C. §§ 5316, 5318(a) & 5330)

**United States Code, Title 31, Subtitle IV, Chapter 53, Subchapter II, § 5316**
Reports on exporting and importing monetary instruments

(a) Except as provided in subsection (c) of this section, a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly—
    (1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—
        (A) from a place in the United States to or through a place outside the United States; or
        (B) to a place in the United States from or through a place outside the United States; or
    (2) receives monetary instruments of more than $10,000 at one time transported into the United States from or through a place outside the United States.
(b) A report under this section shall be filed at the time and place the Secretary of the Treasury prescribes. The report shall contain the following information to the extent the Secretary prescribes:
    (1) the legal capacity in which the person filing the report is acting.
    (2) the origin, destination, and route of the monetary instruments.
    (3) when the monetary instruments are not legally and beneficially owned by the person transporting the instruments, or if the person transporting the instruments personally is not going to use them, the identity of the person that gave the instruments to the person transporting them, the identity of the person who is to receive them, or both.
    (4) the amount and kind of monetary instruments transported.
    (5) additional information.
(c) This section or a regulation under this section does not apply to a common carrier of passengers when a passenger possesses a monetary instrument, or to a common carrier of goods if the shipper does not declare the instrument.
(d) Cumulation of Closely Related Events.— The Secretary of the Treasury may prescribe regulations under this section defining the term "at one time" for purposes of subsection (a). Such regulations may permit the cumulation of closely related events in order that such events may collectively be considered to occur at one time for the purposes of subsection (a).

**United States Code, Title 31, Subtitle IV, Chapter 53, Subchapter II, § 5318(a)**
Compliance, exemptions, and summons authority

(a) General Powers of Secretary.— The Secretary of the Treasury may (except under section 5315 of this title and regulations prescribed under section 5315)—
    (1) except as provided in subsection (b)(2), delegate duties and powers under this subchapter to an appropriate supervising agency and the United States Postal Service;
    (2) require a class of domestic financial institutions or nonfinancial trades or businesses to maintain appropriate procedures to ensure compliance with this subchapter and regulations prescribed under this subchapter or to guard against money laundering;
    (3) examine any books, papers, records, or other data of domestic financial institutions or nonfinancial trades or businesses relevant to the recordkeeping or reporting requirements of this subchapter;
    (4) summon a financial institution or nonfinancial trade or business, an officer or employee of a financial institution or nonfinancial trade or business (including a former officer or employee), or any person having possession, custody, or care of the reports and records required under this subchapter, to appear before the Secretary of the Treasury or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give testimony, under oath, as may be relevant or material to an investigation described in subsection (b);
    (5) exempt from the requirements of this subchapter any class of transactions within any State if the Secretary determines that—

     **(A)** under the laws of such State, that class of transactions is subject to requirements substantially similar to those imposed under this subchapter; and

     **(B)** there is adequate provision for the enforcement of such requirements; and

  **(6)** prescribe an appropriate exemption from a requirement under this subchapter and regulations prescribed under this subchapter. The Secretary may revoke an exemption under this paragraph or paragraph (5) by actually or constructively notifying the parties affected. A revocation is effective during judicial review.

## United States Code, Title 31, Subtitle IV, Chapter 53, Subchapter II, § 5330
Registration of money transmitting businesses

**(a)** Registration With Secretary of the Treasury Required.—

  **(1)** In general.— Any person who owns or controls a money transmitting business shall register the business (whether or not the business is licensed as a money transmitting business in any State) with the Secretary of the Treasury not later than the end of the 180-day period beginning on the later of—

     **(A)** the date of enactment of the Money Laundering Suppression Act of 1994; or

     **(B)** the date on which the business is established.

  **(2)** Form and manner of registration.— Subject to the requirements of subsection (b), the Secretary of the Treasury shall prescribe, by regulation, the form and manner for registering a money transmitting business pursuant to paragraph (1).

  **(3)** Businesses remain subject to state law.— This section shall not be construed as superseding any requirement of State law relating to money transmitting businesses operating in such State.

  **(4)** False and incomplete information.— The filing of false or materially incomplete information in connection with the registration of a money transmitting business shall be considered as a failure to comply with the requirements of this subchapter.

**(b)** Contents of Registration.— The registration of a money transmitting business under subsection (a) shall include the following information:

  **(1)** The name and location of the business.

  **(2)** The name and address of each person who—

     **(A)** owns or controls the business;

     **(B)** is a director or officer of the business; or

     **(C)** otherwise participates in the conduct of the affairs of the business.

  **(3)** The name and address of any depository institution at which the business maintains a transaction account (as defined in section 19(b)(1)(C) of the Federal Reserve Act).

  **(4)** An estimate of the volume of business in the coming year (which shall be reported annually to the Secretary).

  **(5)** Such other information as the Secretary of the Treasury may require.

**(c)** Agents of Money Transmitting Businesses.—

  **(1)** Maintenance of lists of agents of money transmitting businesses.— Pursuant to regulations which the Secretary of the Treasury shall prescribe, each money transmitting business shall—

     **(A)** maintain a list containing the names and addresses of all persons authorized to act as an agent for such business in connection with activities described in subsection (d)(1)(A) and such other information about such agents as the Secretary may require; and

     **(B)** make the list and other information available on request to any appropriate law enforcement agency.

  **(2)** Treatment of agent as money transmitting business.— The Secretary of the Treasury shall prescribe regulations establishing, on the basis of such criteria as the Secretary determines to be appropriate, a threshold point for treating an agent of a money transmitting business as a money transmitting business for purposes of this section.

**(d)** Definitions.— For purposes of this section, the following definitions shall apply:

**(1)** Money transmitting business.— The term "money transmitting business" means any business other than the United States Postal Service which—

    **(A)** provides check cashing, currency exchange, or money transmitting or remittance services, or issues or redeems money orders, travelers' checks, and other similar instruments or any other person who engages as a business in the transmission of funds, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system;; [1]

    **(B)** is required to file reports under section 5313; and

    **(C)** is not a depository institution (as defined in section 5313 (g)).

**(2)** Money transmitting service.— The term "money transmitting service" includes accepting currency or funds denominated in the currency of any country and transmitting the currency or funds, or the value of the currency or funds, by any means through a financial agency or institution, a Federal reserve bank or other facility of the Board of Governors of the Federal Reserve System, or an electronic funds transfer network.

**(e)** Civil Penalty for Failure To Comply With Registration Requirements.—

**(1)** In general.— Any person who fails to comply with any requirement of this section or any regulation prescribed under this section shall be liable to the United States for a civil penalty of $5,000 for each such violation.

**(2)** Continuing violation.— Each day a violation described in paragraph (1) continues shall constitute a separate violation for purposes of such paragraph.

**(3)** Assessments.— Any penalty imposed under this subsection shall be assessed and collected by the Secretary of the Treasury in the manner provided in section 5321 and any such assessment shall be subject to the provisions of such section.

**SCHEDULE D**
**Relevant Federal and State Agency Opinions and Orders**



**Department of the Treasury**
**Financial Crimes Enforcement Network**

## Guidance

**FIN-2013-G001**

**Issued:**     **March 18, 2013**

**Subject:**     **Application of FinCEN's Regulations to Persons Administering, Exchanging, or Using Virtual Currencies**

The Financial Crimes Enforcement Network ("FinCEN") is issuing this interpretive guidance to clarify the applicability of the regulations implementing the Bank Secrecy Act ("BSA") to persons creating, obtaining, distributing, exchanging, accepting, or transmitting virtual currencies.[1] Such persons are referred to in this guidance as "users," "administrators," and "exchangers," all as defined below.[2] A user of virtual currency is *not* an MSB under FinCEN's regulations and therefore is not subject to MSB registration, reporting, and recordkeeping regulations. However, an administrator or exchanger *is* an MSB under FinCEN's regulations, specifically, a money transmitter, unless a limitation to or exemption from the definition applies to the person. An administrator or exchanger is not a provider or seller of prepaid access, or a dealer in foreign exchange, under FinCEN's regulations.

### Currency vs. Virtual Currency

FinCEN's regulations define currency (also referred to as "real" currency) as "the coin and paper money of the United States or of any other country that [i] is designated as legal tender and that [ii] circulates and [iii] is customarily used and accepted as a medium of exchange in the country of issuance."[3] In contrast to real currency, "virtual" currency is a medium of exchange that operates like a currency in some environments, but does not have all the attributes of real currency. In particular, virtual currency does not have legal tender status in any jurisdiction. This guidance addresses "convertible" virtual currency. This type of virtual currency either has an equivalent value in real currency, or acts as a substitute for real currency.

---

[1] FinCEN is issuing this guidance under its authority to administer the Bank Secrecy Act. *See* Treasury Order 180-01 (March 24, 2003). This guidance explains only how FinCEN characterizes certain activities involving virtual currencies under the Bank Secrecy Act and FinCEN regulations. It should not be interpreted as a statement by FinCEN about the extent to which those activities comport with other federal or state statutes, rules, regulations, or orders.

[2] FinCEN's regulations define "person" as "an individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, an Indian Tribe (as that term is defined in the Indian Gaming Regulatory Act), and all entities cognizable as legal personalities." 31 CFR § 1010.100(mm).

[3] 31 CFR § 1010.100(m).

## Background

On July 21, 2011, FinCEN published a Final Rule amending definitions and other regulations relating to money services businesses ("MSBs").[4]  Among other things, the MSB Rule amends the definitions of dealers in foreign exchange (formerly referred to as "currency dealers and exchangers") and money transmitters.  On July 29, 2011, FinCEN published a Final Rule on Definitions and Other Regulations Relating to Prepaid Access (the "Prepaid Access Rule").[5]  This guidance explains the regulatory treatment under these definitions of persons engaged in virtual currency transactions.

## Definitions of User, Exchanger, and Administrator

This guidance refers to the participants in generic virtual currency arrangements, using the terms "user," "exchanger," and "administrator."[6]  A *user* is a person that obtains virtual currency to purchase goods or services.[7]  An *exchanger* is a person engaged as a business in the exchange of virtual currency for real currency, funds, or other virtual currency.  An *administrator* is a person engaged as a business in issuing (putting into circulation) a virtual currency, and who has the authority to redeem (to withdraw from circulation) such virtual currency.

## Users of Virtual Currency

A user who obtains convertible virtual currency and uses it to purchase real or virtual goods or services is *not* an MSB under FinCEN's regulations.[8]  Such activity, in and of itself, does not fit within the definition of "money transmission services" and therefore is not subject to FinCEN's registration, reporting, and recordkeeping regulations for MSBs.[9]

---

[4] *Bank Secrecy Act Regulations – Definitions and Other Regulations Relating to Money Services Businesses*, 76 FR 43585 (July 21, 2011) (the "MSB Rule").  This defines an MSB as "a person wherever located doing business, whether or not on a regular basis or as an organized or licensed business concern, wholly or in substantial part within the United States, in one or more of the capacities listed in paragraphs (ff)(1) through (ff)(7) of this section. This includes but is not limited to maintenance of any agent, agency, branch, or office within the United States." 31 CFR § 1010.100(ff).

[5] *Final Rule – Definitions and Other Regulations Relating to Prepaid Access*, 76 FR 45403 (July 29, 2011),

[6] These terms are used for the exclusive purpose of this regulatory guidance.  Depending on the type and combination of a person's activities, one person may be acting in more than one of these capacities.

[7] How a person engages in "obtaining" a virtual currency may be described using any number of other terms, such as "earning," "harvesting," "mining," "creating," "auto-generating," "manufacturing," or "purchasing," depending on the details of the specific virtual currency model involved.  For purposes of this guidance, the label applied to a particular process of obtaining a virtual currency is not material to the legal characterization under the BSA of the process or of the person engaging in the process.

[8] As noted above, this should not be interpreted as a statement about the extent to which the user's activities comport with other federal or state statutes, rules, regulations, or orders.  For example, the activity may still be subject to abuse in the form of trade-based money laundering or terrorist financing.  The activity may follow the same patterns of behavior observed in the "real" economy with respect to the purchase of "real" goods and services, such as systematic over- or under-invoicing or inflated transaction fees or commissions.

[9] 31 CFR § 1010.100(ff)(1-7).

**Administrators and Exchangers of Virtual Currency**

An administrator or exchanger that (1) accepts and transmits a convertible virtual currency or (2) buys or sells convertible virtual currency for any reason *is* a money transmitter under FinCEN's regulations, unless a limitation to or exemption from the definition applies to the person.[10] FinCEN's regulations define the term "money transmitter" as a person that provides money transmission services, or any other person engaged in the transfer of funds. The term "money transmission services" means "the acceptance of currency, funds, or other value that substitutes for currency from one person *and* the transmission of currency, funds, or other value that substitutes for currency to another location or person by any means."[11]

The definition of a money transmitter does not differentiate between real currencies and convertible virtual currencies. Accepting and transmitting anything of value that substitutes for currency makes a person a money transmitter under the regulations implementing the BSA.[12] FinCEN has reviewed different activities involving virtual currency and has made determinations regarding the appropriate regulatory treatment of administrators and exchangers under three scenarios: brokers and dealers of e-currencies and e-precious metals; centralized convertible virtual currencies; and de-centralized convertible virtual currencies.

### a.    *E-Currencies and E-Precious Metals*

The first type of activity involves electronic trading in e-currencies or e-precious metals.[13] In 2008, FinCEN issued guidance stating that as long as a broker or dealer in real currency or other commodities accepts and transmits funds solely for the purpose of effecting a *bona fide* purchase or sale of the real currency or other commodities for or with a customer, such person is not acting as a money transmitter under the regulations.[14]

However, if the broker or dealer transfers funds between a customer and a third party that is not part of the currency or commodity transaction, such transmission of funds is no longer a fundamental element of the actual transaction necessary to execute the contract for the purchase or sale of the currency or the other commodity. This scenario is, therefore, money

---

[10] FinCEN's regulations provide that whether a person is a money transmitter is a matter of facts and circumstances. The regulations identify six circumstances under which a person is not a money transmitter, despite accepting and transmitting currency, funds, or value that substitutes for currency. 31 CFR § 1010.100(ff)(5)(ii)(A)–(F).

[11] 31 CFR § 1010.100(ff)(5)(i)(A).

[12] Ibid.

[13] Typically, this involves the broker or dealer electronically distributing digital certificates of ownership of real currencies or precious metals, with the digital certificate being the virtual currency. However, the same conclusions would apply in the case of the broker or dealer issuing paper ownership certificates or manifesting customer ownership or control of real currencies or commodities in an account statement or any other form. These conclusions would also apply in the case of a broker or dealer in commodities other than real currencies or precious metals. A broker or dealer of e-currencies or e-precious metals that engages in money transmission could be either an administrator or exchanger depending on its business model.

[14] *Application of the Definition of Money Transmitter to Brokers and Dealers in Currency and other Commodities*, FIN-2008-G008, Sept. 10, 2008. The guidance also notes that the definition of money transmitter excludes any person, such as a futures commission merchant, that is "registered with, and regulated or examined by...the Commodity Futures Trading Commission."

transmission.[15] Examples include, in part, (1) the transfer of funds between a customer and a third party by permitting a third party to fund a customer's account; (2) the transfer of value from a customer's currency or commodity position to the account of another customer; or (3) the closing out of a customer's currency or commodity position, with a transfer of proceeds to a third party. Since the definition of a money transmitter does not differentiate between real currencies and convertible virtual currencies, the same rules apply to brokers and dealers of e-currency and e-precious metals.

### b. *Centralized Virtual Currencies*

The second type of activity involves a convertible virtual currency that has a centralized repository. The administrator of that repository will be a money transmitter to the extent that it allows transfers of value between persons or from one location to another. This conclusion applies, whether the value is denominated in a real currency or a convertible virtual currency. In addition, any exchanger that uses its access to the convertible virtual currency services provided by the administrator to accept and transmit the convertible virtual currency on behalf of others, including transfers intended to pay a third party for virtual goods and services, is also a money transmitter.

FinCEN understands that the exchanger's activities may take one of two forms. The first form involves an exchanger (acting as a "seller" of the convertible virtual currency) that accepts real currency or its equivalent from a user (the "purchaser") and transmits the value of that real currency to fund the user's convertible virtual currency account with the administrator. Under FinCEN's regulations, sending "value that substitutes for currency" to another person or to another location constitutes money transmission, unless a limitation to or exemption from the definition applies.[16] This circumstance constitutes transmission *to another location*, namely from the user's account at one location (e.g., a user's real currency account at a bank) to the user's convertible virtual currency account with the administrator. It might be argued that the exchanger is entitled to the exemption from the definition of "money transmitter" for persons involved in the sale of goods or the provision of services. Under such an argument, one might assert that the exchanger is merely providing the service of connecting the user to the administrator and that the transmission of value is integral to this service. However, this exemption does not apply when the only services being provided are money transmission services.[17]

The second form involves a *de facto* sale of convertible virtual currency that is not completely transparent. The exchanger accepts currency or its equivalent from a user and privately credits the user with an appropriate portion of the exchanger's own convertible virtual currency held with the administrator of the repository. The exchanger then transmits that

[15] In 2011, FinCEN amended the definition of money transmitter. The 2008 guidance, however, was primarily concerned with the core elements of the definition – accepting and transmitting currency or value – and the exemption for acceptance and transmission integral to another transaction not involving money transmission. The 2011 amendments have not materially changed these aspects of the definition.
[16] See footnote 11 and adjacent text.
[17] 31 CFR § 1010.100(ff)(5)(ii)(F).

internally credited value to third parties at the user's direction. This constitutes transmission *to another person*, namely each third party to which transmissions are made at the user's direction. To the extent that the convertible virtual currency is generally understood as a substitute for real currencies, transmitting the convertible virtual currency at the direction and for the benefit of the user constitutes money transmission on the part of the exchanger.

### c. De-Centralized Virtual Currencies

A final type of convertible virtual currency activity involves a de-centralized convertible virtual currency (1) that has no central repository and no single administrator, and (2) that persons may obtain by their own computing or manufacturing effort.

A person that creates units of this convertible virtual currency and uses it to purchase real or virtual goods and services is a user of the convertible virtual currency and not subject to regulation as a money transmitter. By contrast, a person that creates units of convertible virtual currency and sells those units to another person for real currency or its equivalent is engaged in transmission to another location and is a money transmitter. In addition, a person is an exchanger and a money transmitter if the person accepts such de-centralized convertible virtual currency from one person and transmits it to another person as part of the acceptance and transfer of currency, funds, or other value that substitutes for currency.

## Providers and Sellers of Prepaid Access

A person's acceptance and/or transmission of convertible virtual currency cannot be characterized as providing or selling prepaid access because prepaid access is limited to real currencies.[18]

## Dealers in Foreign Exchange

A person must exchange the currency of two or more countries to be considered a dealer in foreign exchange.[19] Virtual currency does not meet the criteria to be considered "currency" under the BSA, because it is not legal tender. Therefore, a person who accepts real currency in

---

[18] This is true even if the person holds the value accepted for a period of time before transmitting some or all of that value at the direction of the person from whom the value was originally accepted. FinCEN's regulations define "prepaid access" as "access to funds or the value of funds that have been paid in advance and can be retrieved or transferred at some point in the future through an electronic device or vehicle, such as a card, code, electronic serial number, mobile identification number, or personal identification number." 31 CFR § 1010.100(ww). Thus, "prepaid access" under FinCEN's regulations is limited to "access to funds or the value of funds." If FinCEN had intended prepaid access to cover funds denominated in a virtual currency or something else that substitutes for real currency, it would have used language in the definition of prepaid access like that in the definition of money transmission, which expressly includes the acceptance and transmission of "other value that substitutes for currency." 31 CFR § 1010.100(ff)(5)(i) .

[19] FinCEN defines a "dealer in foreign exchange" as a "person that accepts the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more countries in exchange for the currency, or other monetary instruments, funds, or other instruments denominated in the currency, of one or more other countries in an amount greater than $1,000 for any other person on any day in one or more transactions, whether or not for same-day delivery." 31 CFR § 1010.100(ff)(1).

exchange for virtual currency, or *vice versa*, is not a dealer in foreign exchange under FinCEN's regulations.

* * * * *

Financial institutions with questions about this guidance or other matters related to compliance with the implementing regulations of the BSA may contact FinCEN's Regulatory Helpline at (800) 949-2732.

STATE OF CALIFORNIA
BUSINESS, TRANSPORTATION AND HOUSING AGENCY

EDMUND G. BROWN JR., Governor
BRIAN P. KELLY, Acting Secretary

# DEPARTMENT OF FINANCIAL INSTITUTIONS

TEVEIA R. BARNES, Commissioner of Financial Institutions
www.dfi.ca.gov



COMMISSIONER'S OPINION – No. 001

## Companies That Do Not Receive Money For Transmission

This Opinion provides guidance on the definition of "receiving money for transmission" set forth in Financial Code (FC) § 2003(s), Division 1.2 of the FC (commencing with FC § 2000), the Money Transmission Act, in the context of companies or other persons that do not actually or constructively receive, take custody or possession, or otherwise hold any money or monetary value for transmission and do not advertise, solicit or hold themselves out as providing money transmission in this state.

FC § 2003(s) defines "receiving money for transmission" as "receiving money or monetary value in the United States for transmission within or outside the United States by electronic or other means." This means that in order to meet the definition in FC § 2003(s), a person (as defined in FC § 2003(r)) must receive money (as defined in FC § 2003(n)) or monetary value (as defined in FC § 2003(m)). Merely receiving instructions, orders or directions to transmit money or monetary value is not the equivalent of receiving money or monetary value.

Therefore, if a company or other person only receives instructions, orders or directions to transmit funds, but does not actually or constructively receive, take possession or custody, or otherwise hold any money or monetary value for transmission, that company or other person has not received money for transmission for purposes of FC § 2003(s). Examples include, but are not limited to: (1) payroll processing companies, (2) providers of electronic communications services or communication devices and (3) software application providers; provided that the companies and other persons in (1), (2) and (3) only receive instructions, orders or directions to transmit money or monetary value and do not actually or constructively receive, take possession or hold any money or monetary value for transmission, and do not advertise, solicit or hold themselves out as providing money transmission in this state.

March 28, 2013

TEVEIA R. BARNES
Commissioner of Financial Institutions

45 Fremont Street, Suite 1700
San Francisco, CA 94105
(415) 263-8500

1810 13th Street
Sacramento, CA 95811
(916) 322-5966

300 S. Spring Street, Suite 15513
Los Angeles, CA 90013
(213) 897-2085

7575 Metropolitan Drive, Suite 108
San Diego, CA 92108

STATE OF CALIFORNIA
BUSINESS, TRANSPORTATION AND HOUSING AGENCY

EDMUND G. BROWN JR., Governor
BRIAN P. KELLY, Acting Secretary

## DEPARTMENT OF FINANCIAL INSTITUTIONS
TEVEIA R. BARNES, Commissioner of Financial Institutions
www.dfi.ca.gov

COMMISSIONER'S OPINION – No. 002

<u>Disclosure requirements for persons that advertise, solicit or hold themselves out as providing
money transmission in this state and who are not licensees, exempt from licensure, or agents of
licensees or exempt entities</u>

This Opinion provides guidance on disclosure requirements for persons who advertise, solicit,
or hold themselves out as providing money transmission in this state. Financial Code (FC)
§ 2030(a), Division 1.2 of the FC (commencing with FC § 2000), the Money Transmission Act,
provides: "A person shall not engage in the business of money transmission in this state, or
advertise, solicit, or hold itself out as providing money transmission in this state, unless the
person is licensed or exempt from licensure under this division or is an agent of a person
licensed or exempt from licensure under this division." This means that only a licensed or
exempt person (or an agent of such a person) can engage in the business of money
transmission in this state, or advertise, solicit, or hold itself out as providing money
transmission in this state. A person (other than a licensed or exempt person, or an agent of
such a person) shall not advertise that it is providing money transmission in this state or
solicit money transmission for itself in this state. FC 2030(a) also prohibits a person from
advertising for or soliciting money transmission on behalf of a person that is not licensed or not
an exempt person, or an agent of such a person. FC 2030(a), however, does not prohibit a
person from advertising or soliciting money transmission on behalf of licensed or exempt
persons or agents of such persons as long as the advertisement or solicitation is unambiguous
as to the identity of the money transmission provider and the provider is a licensed or exempt
person or agent thereof.

Thus, in order to be in compliance with FC § 2030(a), a person, whether or not the person is
itself a licensed or exempt person or agent thereof, who advertises or solicits money
transmission in this state on behalf of another person, may only do so on behalf of licensed (or
exempt) money transmitters or their agents and must provide a disclosure in the person's
advertising or solicitation materials that identifies: (1) the licensee(s), (2) the exempt person(s),
or (3) the agent(s) and the licensee(s) or exempt person(s) that are their principals, as the
entity(s) providing the money transmission. Examples of advertising materials, solicitations or
other efforts to hold oneself out as providing money transmission that require such a disclosure
include, but not are limited to: printed documents, website, emails, or display on electronic
communication devices.

45 Fremont Street, Suite 1700
San Francisco, CA 94105
(415) 263-8500

1810 13th Street
Sacramento, CA 95811
(916) 322-5966

300 S. Spring Street, Suite 15513
Los Angeles, CA 90013
(213) 897-2085

7575 Metropolitan Drive, Suite 108
San Diego, CA 92108
(619) 682-7227

Commissioner's Opinion No. 002
Page 2

This Opinion also provides guidance on the definition of "agent" set forth in FC § 2003(b). The term "agent" is defined as a person (as defined in FC § 2003(r)) that "provides money transmission in California on behalf of the licensee, provided that the licensee becomes liable for the money transmission from the time money or monetary value is received by that person." This means that in order to meet the definition in FC § 2003(b), a person must receive money or monetary value. Therefore, a person, who merely advertises or solicits money transmission on behalf of a licensee, but who does not receive money or monetary value, does not meet the definition of an "agent."

Dated: April 18, 2013.

TEVEIA R. BARNES
Commissioner of Financial Institutions

**STATE OF ILLINOIS**
**DEPARTMENT OF FINANCIAL & PROFESSIONAL REGULATION**
**DIVISION OF FINANCIAL INSTITUTIONS**

In the Matter of                )
      Square, Inc.             )    No. 13 CC 208
                          )


To:    Square, Inc.
       901 Mission Street
       San Francisco, CA  94103

### CEASE AND DESIST ORDER

The DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, DIVISION OF FINANCIAL INSTITUTIONS (the "Department"), having conducted an examination of facts related to Square, Inc. ("Square") pursuant to the Transmitters of Money Act, 205 ILCS 657/1 *et seq.* (the "Act"), hereby issues this order:

### STATUTORY PROVISIONS

1.    Section 5 of the Act states, in pertinent part:

> "Transmitting money" means the transmission of money <u>by any means</u>, including transmissions to or from locations within the United States or to and from locations outside of the United States by payment instrument, facsimile or electronic transfer, or otherwise, and includes bill payment services. 205 ILCS 657/§5 (emphasis added).

2.    Section 10 of the Act states, in pertinent part:

> No person may engage in this State in the business of selling or issuing payment instruments, transmitting money, or exchanging, for compensation, payment instruments or money of the United States government or a foreign government to or from money of another government without first obtaining a license under this Act. 205 ILCS 657/§10.

3.    Section 90(b) of the Act states, in pertinent part:

> If the Director finds, after an investigation that he considers appropriate, that a licensee or other person is engaged in practices contrary to this Act or to the rules promulgated under this Act, the Director may issue an order directing the licensee or person to cease and desist the violation. The Director may, in addition to or without the issuance of a cease and desist order, assess an administrative penalty up to $1,000 against a licensee for each violation of this Act or the rules promulgated under this Act. 205 ILCS 657/§90(b).

1

4.      Section 90(g) of the Act states:

> Each transaction in violation of this Act or the rules promulgated under this Act and each day that a violation continues shall be a separate offense. 205 ILCS 657/§90(g).

5.      Section 90(i) of the Act states, in pertinent part:

> Any person who, without the required license, engages in conduct requiring a license under this Act shall be liable to the Department in an amount equal to the greater of (i) $5,000 or (ii) an amount of money accepted for transmission plus an amount equal to 3 times the amount accepted for transmission. 205 ILCS 657/§90(i).

6.      Section 90(h) of the Act states, in pertinent part:

> A person who engages in conduct requiring a license under this Act and fails to obtain a license from the Director or knowingly makes a false statement, misrepresentation, or false certification in an application, financial statement, account record, report, or other document filed or required to be maintained or filed under this Act or who knowingly makes a false entry or omits a material entry in a document is guilty of a Class 3 felony. 205 ILCS 657/§90(h).

## FACTUAL FINDINGS

7.      The Department is statutorily charged *inter alia*, with the responsibility and authority to regulate the Act. 205 ILCS 657/1 *et seq.*

8.      The Department is granted supervisory power and control over any person engaged in the business of transmitting money in Illinois.

9.      Square is incorporated in the State of Delaware, with its principal place of business located at 901 Mission Street, San Francisco, California.

10.     Square offers and provides money transmission services to Illinois consumers.

11.     Square provides mobile credit card reading devices to Illinois consumers for the express purpose of transmitting money. Consumers obtain said devices, free of charge, either through U.S. postal mail or by picking them up at multiple retail locations throughout the State of Illinois.

12.     Square provides digital applications to Illinois consumers for the express purpose of transmitting money through iPhone and Android devices.

13.     Square sells and issues digital gift cards to Illinois consumers for the express purpose of purchasing items from designated vendors on Square's website.

14.     The Act requires that any person engaged in the business of transmitting money in Illinois must be licensed by the Department.

15.     Square has never been licensed by the Department to engage in the business of transmitting money pursuant to the Act.

16. As of the date of this order, Square continues to engage in the business of transmitting money in Illinois without a license.

## LEGAL FINDINGS

17. Square is engaged in the business of transmitting money in Illinois, as defined by the Act, without the required license. 205 ILCS 657/§5.

18. The Department has regulatory authority to issue an order directing Square to cease and desist from engaging in activities regulated by the Act. 205 ILCS 657/§90(b).

19. The Department has regulatory authority to assess penalties of $1,000 against Square for each violation of the Act. 205 ILCS 657/§90(b).

20. The Department has regulatory authority to assess penalties of $1,000 per day against Square for violating the Act. 205 ILCS 657/§90(g).

21. The Department has regulatory authority to assess penalties against Square in the amount equal to four times the amount of money transmitted for the entire period of unlicensed activities. 205 ILCS 657/§90(i).

22. Square's engagement of conduct requiring a licensee under this Act, without having obtained a license from the Director as required by the Act, constitutes a Class 3 felony. 205 ILCS 657/§90(h).

## NOW THEREFORE IT IS HEREBY ORDERED:

I. Pursuant to §90(b) of the Act, Square and its officers, directors, employees, subsidiaries, affiliates and agents shall **CEASE AND DESIST** from offering or providing money transmission services in the State of Illinois.

II. Square is ordered to **PRODUCE DOCUMENTS** to the Department, consisting of any and all account activity statements for Illinois consumers, any and all documents, records, correspondence, or other material containing information relevant to money transmissions made to or from Illinois consumers, and copies of all annual independent reviews of Square's Anti-Money Laundering program.

III. Square is ordered to report to the Department any and all unlicensed money transmission activity to or from Illinois consumers. The documents and reporting shall be produced by **February 19, 2013,** and delivered to the Consumer Credit Supervisor at the Illinois Department of Financial and Professional Regulation, Division of Financial Institutions, 100 W. Randolph Street, 9th Floor, Chicago, IL 60601.

IV. Square shall be **LIABLE** to the Department in the amount equal to $1,000 per violation, as provided by §90(b) of the Act.

V.    Square shall be **LIABLE** to the Department in the amount equal to $1,000 each day that Square is in violation of the Act, as provided by §90(g) of the Act.

VI.    Square shall be **LIABLE** to the Department in the amount equal to four times the amount of unlicensed money transmissions in Illinois, as provided by § 90(i) of the Act.

VII.    Payment shall be made by money order payable to the Illinois Department of Financial and Professional Regulation and delivered to the Consumer Credit Supervisor at the Illinois Department of Financial and Professional Regulation, Division of Financial Institutions, 100 W. Randolph Street, 9th Floor, Chicago, IL 60601 by **February 5, 2013**.

Pursuant to Section 90(b) of the Act, service of this Order shall be made either personally or by certified mail, return receipt requested. Service by mail shall be deemed completed if the Order is deposited in the post office, postage paid. Pursuant to Section 90(c) of the Act, Square may request a hearing, in writing, within 30 days after the date of service.

Dated this _____ day of January 2013.

_____

Roxanne Nava, Director
Division of Financial Institutions

4