ROPES & GRAY LLP
ROCKY C. TSAI (CA Bar No. 221452)
Three Embarcadero Center, Ste. 300
San Francisco, CA  94111-4006
Telephone:    (415) 315 6300
Facsimile:     (415) 315 6350
Email:          rocky.tsai@ropesgray.com

CHRISTOPHER G. GREEN (*pro hac vice* pending)
C. THOMAS BROWN (*pro hac vice* pending)
Prudential Tower, 800 Boylston Street
Boston, MA  02199-3600
Telephone:    (617) 951 7000
Facsimile:     (617) 951 7050
Email:          christopher.green@ropesgray.com
Email:          thomas.brown@ropesgray.com

Attorneys for Defendants Kleiner Perkins Caufield & Byers, LCC; Kleiner Perkins Caufield & Byers XIII, LCC; Kleiner Perkins Caufield & Byers XII Founders Fund, LCC; Kleiner Perkins Caufield & Byers XIV, LCC; Kleiner Perkins Caufield & Byers XV, LCC; Sequoia Capital, LLC; Sequoia Capital New Projects, LLC; Sequoia Capital XII, LP; SC XII Management, LLC; Sequoia Capital XII Principals Fund, LLC; Sequoia Capital Scout Fund I, LLC; Sequoia Capital Scout Fund II, LLC; Sequoia Capital Scout Fund III, LLC; Sequoia Capital U.S. Scout Seed Fund 2013, LP; and Sequoia Technology Partners XII, LP

[Counsel to remaining Defendants joining this motion listed below.]

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| THINK COMPUTER CORPORATION,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>DWOLLA, INC.; ACTBLUE, LLC; AIRBNB, INC.; POUND PAYMENTS ESCROW SERVICES, INC. DBA BALANCED PAYMENTS; CLINKLE CORPORATION; COINBASE, INC.; COINLAB, INC.; FACEBOOK, INC.; FACEBOOK PAYMENTS, INC.; GOPAGO, INC.; GUMROAD, INC.; SQUARE, INC.; STRIPE, INC.; THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; A-GRADE INVESTMENTS, LLC; A-GRADE INVESTMENTS II, LLC; ANDREESSEN | Case No. 5:13-cv-2054-EJD<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF.**<br><br>Hearing Date:　January 10, 2014<br>Time:　　　　9:00 a.m.<br>Place:　　　　Courtroom 4<br>Judge:　　　　The Hon. Edward J. Davila |

HOROWITZ FUND I, LP; ANDREESSEN
HOROWITZ FUND I-A, LP; ANDREESSEN
HOROWITZ FUND I-B, LP; ANDREESSEN
HOROWITZ FUND II, LP; ANDREESSEN
HOROWITZ FUND II-A, LP; ANDREESSEN
HOROWITZ FUND II-B, LP; ANDREESSEN
HOROWITZ FUND III, LP; ANDREESSEN
HOROWITZ FUND III (AIV), LP;
ANDREESSEN HOROWITZ FUND III-A, LP;
ANDREESSEN HOROWITZ FUND III-B, LP;
ANDREESSEN HOROWITZ FUND III-Q, LP;
DIGITAL SKY TECHNOLOGIES, LIMITED;
DST GLOBAL, LIMITED; DSTG-2 2011
ADVISORS, LLC; DSTG-2 2011 INVESTORS
DLP, LLC; DSTG-2 2011 INVESTORS
ONSHORE, LP; KLEINER PERKINS
CAUFIELD & BYERS, LLC; KLEINER
PERKINS CAUFIELD & BYERS XIII, LLC;
KLEINER PERKINS CAUFIELD & BYERS XIII
FOUNDERS FUND, LLC; KLEINER PERKINS
CAUFIELD & BYERS XIV, LLC; KLEINER
PERKINS CAUFIELD & BYERS XV, LLC;
SEQUOIA CAPITAL, LLC; SEQUOIA
CAPITAL NEW PROJECTS, LLC; SEQUOIA
CAPITAL XII, LP; SC XII MANAGEMENT,
LLC; SEQUOIA CAPITAL XII PRINCIPALS
FUND, LLC; SEQUOIA CAPITAL SCOUT
FUND I, LLC; SEQUOIA CAPITAL SCOUT
FUND II, LLC; SEQUOIA CAPITAL U.S.
SCOUT FUND III, LLC; SEQUOIA CAPITAL
U.S. SCOUT SEED FUND 2013, LP; SEQUOIA
TECHNOLOGY PARTNERS XII, LP; UNION
SQUARE VENTURES LLC; UNION SQUARE
VENTURES OPPORTUNITY FUND, LP;
UNION SQUARE VENTURES 2012 FUND, LP;
Y COMBINATOR, LLC; Y COMBINATOR
FUND I, LP; Y COMBINATOR FUND I GP,
LLC; Y COMBINATOR FUND II, LP; Y
COMBINATOR FUND II GP, LLC; Y
COMBINATOR RE, LLC; Y COMBINATOR
S2012, LLC; Y COMBINATOR W2013, LLC;
BRIAN CHESKY; MAX LEVCHIN; YURI
MILNER; YISHAN WONG,

Defendants.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 2

STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 2

STATEMENT OF RELEVANT FACTS ............................................................................... 4

ARGUMENT ........................................................................................................................ 7

I.  THIS COURT DOES NOT HAVE SUBJECT MATTER
    JURISDICTION OVER THE STATE LAW CLAIMS. ................................................. 8

    A.  There is no statutory basis for jurisdiction over the state law claims. .................. 8

    B.  Plaintiff lacks standing under Article III. ........................................................... 10

II. CLAIMS ONE AND TWO STATE NO CLAIM
    FOR RELIEF UNDER CALIFORNIA LAW. ............................................................ 12

    A.  Plaintiff does not have standing under the UCL. ................................................ 12

    B.  Under the UCL, Plaintiff is not entitled to any of the relief it seeks. ................ 13

    C.  There is no valid UCL claim against any Defendant. ......................................... 14

        1.  The Amended Complaint pleads no "unlawful" conduct. ...................... 14

        2.  The Amended Complaint alleges no cognizable "unfairness." .............. 16

        3.  The Plaintiff has not alleged a "fraud" under § 17200. ......................... 17

    D.  Liability against the Investor Defendants
        under the UCL is precluded by California law. .................................................. 17

    E.  There is no Claim for Relief in California for Unjust Enrichment. .................... 21

III. LEAVE TO AMEND SHOULD BE DENIED. ............................................................ 22

CONCLUSION ................................................................................................................... 23

**DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT**

-i-

**Case No. 5:13-cv-2054-EJD**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

**Page(s)**

Cᴀsᴇs

*Almasi v. Equilon Enters., LLC*,
   No. 10-cv-03458, 2012 U.S. Dist. LEXIS 128623 (N.D. Cal. Sept. 10, 2012) ......................13

*Am. Prop. Mgmt. Corp. v. Superior Court*,
   206 Cal. App. 4th 491 (2012) .............................................................................................18

*Ascon Props., Inc. v. Mobil Oil Co.*,
   866 F.2d 1149 (9th Cir. 1989) ............................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................................7, 8, 15, 20

*Baldoza v. Bank of Am., N.A.*,
   No. 12-cv-05966, 2013 U.S. Dist. LEXIS 34323 (N.D. Cal. Mar. 12, 2013) .........................14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................................8, 20

*Bernardi v. JPMorgan Chase Bank, N.A.*,
   No. 11-cv-04212, 2012 U.S. Dist. LEXIS 85666 (N.D. Cal. June 20, 2012).........................22

*Brady v. United of Omaha Life Ins. Co.*,
   902 F. Supp. 2d 1274 (N.D. Cal. 2012) .................................................................................14

*Bronson v. Johnson & Johnson, Inc.*,
   No. 12-cv-04184, 2013 U.S. Dist. LEXIS 24029 (N.D. Cal. Apr. 16, 2013).........................14

*Brosnan v. Tradeline Solutions, Inc.*,
   681 F. Supp. 2d 1094 (N.D. Cal. 2010) .................................................................................14

*Burgess v. Premier Corp.*,
   727 F.2d 826 (9th Cir. 1984) .................................................................................................20

*Campbell v. Stein*,
   314 F. App'x 976 (9th Cir. 2009) ............................................................................................7

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (1999) ..........................................................................................................16

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
   598 F.3d 1115 (9th Cir. 2010) ...............................................................................................11

**DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT**
-ii-

Case No. 5:13-cv-2054-EJD

*Clapper v. Amnesty Intern. USA*,
   133 S. Ct. 1138 (2013) .................................................................................10, 11

*Clerkin v. MyLife.com, Inc.*,
   No. 11-cv-00527, 2011 U.S. Dist. LEXIS 96735 (N.D. Cal. Aug. 29, 2011) ...................14, 19

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir. 1997) ..................................................................................17

*Copeland v. Lane*,
   No. 11-cv-01058, 2013 U.S. Dist. LEXIS 65742 (N.D. Cal. May 6, 2013)...........................20

*Daro v. Superior Court*,
   151 Cal. App. 4th 1079 (2007) ................................................................................12

*Doe v. Unocal Corp.*,
   248 F.3d 915 (9th Cir. 2001) ...................................................................................19

*Dunkel v. eBay Inc.*,
   No. 12-cv-01452, 2013 U.S. Dist. LEXIS 13866 (N.D. Cal. Jan. 31, 2013).........................21

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (Cal. App. 3d Dist. 2002) .......................................................21

*Fleet Credit Corp. v. TML Bus Sales*,
   65 F.3d 119 (9th Cir. 1995) ....................................................................................19

*Gabali v. OneWest Bank*,
   No. 12-cv-02901, 2013 U.S. Dist. LEXIS 47193 (N.D. Cal. Mar. 29, 2013) ........................21

*Gandrup v. GMAC Mortgage, LLC*,
   No. 11-cv-00659, 2012 U.S. Dist. LEXIS 128625 (N.D. Cal. Sept. 10, 2012)......................21

*Gentges v. Trend Micro Inc.*,
   No. 11-cv-05574, 2012 U.S. Dist. LEXIS 94714 (N.D. Cal. July 9, 2012) ..........................11

*Great Am. Ins. Co. v. Chang*,
   No. 12-cv-00833, 2013 U.S. Dist. LEXIS 54013 (N.D. Cal. Apr. 15, 2013)...........................9

*Hinojos v. Kohl's Corp.*,
   No. 11-cv-055793, 2013 U.S. App. LEXIS 10185 (9th Cir. May 21, 2013)...........................13

*Howard v. Everex Sys., Inc.*,
   228 F.3d 1057 (9th Cir. 2000) .................................................................................21

*IB Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003) ..................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT**

-iii-

**Case No. 5:13-cv-2054-EJD**

*In re Gupta Corp. Sec. Litig.*,
   900 F. Supp. 1217 (N.D. Cal. 1994) ..................................................................20

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
   810 F. Supp. 2d 1100 (S.D. Cal. 2011)...............................................................18

*In re Tobacco II Cases*,
   46 Cal. 4th 298...................................................................................................17

*Joseph v. Wachovia Mortg. Corp.*,
   No. 11-cv-02395, 2011 U.S. Dist. LEXIS 133558 (N.D. Cal. Nov. 18, 2011) .......................22

*K2 Am. Corp. v. Roland Oil & Gas, LLC*,
   653 F.3d 1024 (9th Cir. 2011) ..............................................................................9

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .............................................................................17

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994).............................................................................................8

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ......................................................................................13

*Kramer Motors, Inc. v. British Leyland, Ltd.*,
   628 F.2d 1175 (9th Cir. 1980) .............................................................................19

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ........................................................................................12

*Leek v. Cooper*,
   194 Cal. App. 4th 399 (2011) .............................................................................19

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ..............................................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)............................................................................................10

*McCabe v. Floyd Rose Guitars*,
   No. 10-cv-00581, 2012 U.S. Dist. LEXIS 56604 (S.D. Cal. Apr. 23, 2012)...........................17

*Muller v. Auto Mission, LTD.*,
   No. 13-cv-00304, 2013 U.S. Dist. LEXIS 67886 (N.D. Cal. May 13, 2013)...........................9

*Peacock v. Thomas*,
   516 U.S. 349 (1996).............................................................................................10

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT
-iv-

Case No. 5:13-cv-2054-EJD

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d 788 (9th Cir. 2007) ................................................................................................19

*Sonora Diamond Corp. v. Superior Court*,
  83 Cal. App. 4th 523 (2000) ................................................................................................18

*Stevedoring Servs. of Am. v. Eggert*,
  953 F.2d 552 (9th Cir. 1992) ................................................................................................9

*Stock W., Inc. v. Confederated Tribes of Colville Reservation*,
  873 F.2d 1221 (9th Cir. 1989) ............................................................................................8

*Thomas v. Costco Wholesale Corp.*,
  12-cv-02908, 2013 U.S. Dist. LEXIS 51189 (N.D. Cal. Apr. 9, 2013)...................................10

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ...............................................................................................13

*Troyk v. Farmers Grp., Inc.*,
  171 Cal. App. 4th 1305 (2009) ............................................................................................12

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966)...............................................................................................................9

*United States v. Emilor, S.A.*,
  No. 07-cr-1, 2008 U.S. Dist. LEXIS 112865 (E.D. Tex. Apr. 30, 2008) ...............................15

*United States v. Talebnejad*,
  460 F.3d 563 (4th Cir. 2006) ...............................................................................................16

*United Union of Roofers, Waterproofers, and Allied Trades No. 40 v. Ins. Co. of Am.*,
  919 F.2d 1398 (9th Cir. 1990) ............................................................................................22

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
  507 F.3d 1222 (9th Cir. 2007) ...............................................................................................7

*Williamson v. Apple, Inc.*,
  No. 11-cv-00377, 2012 U.S. Dist. LEXIS 125368 (N.D. Cal. Sept. 4, 2012)........................21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATUTES**

18 U.S.C. § 1960 ....................................................................................................14, 15, 16

28 U.S.C. § 1331 ....................................................................................................................8

28 U.S.C. § 1332 ....................................................................................................................8

28 U.S.C. § 1367 ....................................................................................................................9

31 U.S.C. §5316 ...................................................................................................................15

31 U.S.C. § 5318 ..................................................................................................................15

Cal. Bus. & Prof. Code §§ 17200, *et seq*. ............................................................... passim

Cal. Corp. Code, § 17101 .....................................................................................................18

Cal. Fin. Code §§ 2000, *et seq.* (California Money Transmission Act) ................................ passim

Cal. Fin. Code § 2030 ......................................................................................................5, 15

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ..............................................................................................................17

Fed. R. Civ. P. 12(b)(1)...............................................................................................1, 7, 22

Fed. R. Civ. P. 12(b)(6).................................................................................................1, 7, 22

Fed. R. Civ. P. 12(h)(3).....................................................................................................7, 12

United States Constitution, Art. III ........................................................................... passim

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO ALL PARTIES HEREIN AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 1, 2013, at 9:00 a.m., or as soon there after as this matter may be heard in Courtroom 4 of the Robert F. Peckham Federal Building, before the Honorable Judge Edward J. Davila, located at 280 South 1st Street, San Jose, CA 95113, the Defendants, as listed below, will and hereby do move this Court pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for an order dismissing plaintiff Think Computer Corporation's first and second claims against the Defendants under California Business & Professions Code § 17200 ("UCL") and for unjust enrichment.

The motion will be made on the grounds that this Court lacks subject matter jurisdiction over these claims, that Plaintiff has no standing under the UCL, and that Plaintiff fails to allege facts sufficient to state a claim under the UCL or for unjust enrichment.

This motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice and exhibits thereto filed concurrently herewith, and on such other materials as the Court may properly consider prior to deciding this motion. A proposed order granting the motion is filed herewith.

The Defendants submitting this motion are Airbnb, Inc.; Balanced, Inc.; Clinkle Corporation; Coinlab, Inc.; Facebook, Inc.; Facebook Payments, Inc.; Gumroad, Inc.; Square, Inc.; The Board of Trustees of the Leland Stanford Junior University; A-Grade Investments, LLC; A-Grade Investments II, LLC; Andreessen Horowitz Fund I, LP; Andreessen Horowitz Fund I-A, LP; Andreessen Horowitz Fund I-B, LP; Andreessen Horowitz Fund II, LP; Andreessen Horowitz Fund II-A, LP; Andreessen Horowitz Fund II-B, LP; Andreessen Horowitz Fund III, LP; Andreessen Horowitz Fund III (AIV), LP; Andreessen Horowitz Fund III-A, LP; Andreessen Horowitz Fund III-B, LP; Andreessen Horowitz Fund III-Q, LP; Digital Sky Technologies, Limited; DSTG-2 2011 Advisors, LLC; DSTG-2 2011 Investors DLP, LLC; DSTG-2 2011 Investors Onshore, LP; Kleiner Perkins Caufield & Byers, LLC; Kleiner Perkins Caufield & Byers XIII, LLC; Kleiner Perkins Caufield & Byers XIII Founders Fund, LLC; Kleiner Perkins Caufield & Byers XIV, LLC; Kleiner Perkins Caufield & Byers XV, LLC;

1  Sequoia Capital, LLC; Sequoia Capital New Projects, LLC; Sequoia Capital XII, LP; SC XII

2  Management, LLC; Sequoia Capital XII Principals Fund, LLC; Sequoia Capital Scout Fund I,

3  LLC; Sequoia Capital Scout Fund II, LLC; Sequoia Capital U.S. Scout Fund III, LLC; Sequoia

4  Capital U.S. Scout Seed Fund 2013, LP; Sequoia Technology Partners XII, LP; Y Combinator,

5  LLC; Union Square Ventures LLC; Union Square Ventures Opportunity Fund, LP; Union

6  Square Ventures 2012 Fund, LP; Y Combinator Fund I, LP; Y Combinator Fund I GP, LLC; Y

7  Combinator Fund II, LP; Y Combinator Fund II GP, LLC; Y Combinator RE, LLC; and Y

8  Combinator S2012, LLC; Y Combinator W2013, LLC. Brian Chesky; Max Levchin; Yuri

9  Milner; and Yishan Wong.[1]

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants, as defined below, respectfully submit this memorandum of points and authorities in support of their motion to dismiss the first and second claims in the Amended Complaint of Plaintiff Think Computer Corporation ("TCC" or "Plaintiff"). In this brief, the first and second claims are collectively referred to as the "state law claims."

## STATEMENT OF ISSUES TO BE DECIDED

This is a frivolous action brought by a failed business against its purported competitors and their investors.

Plaintiff tried, and failed, to launch a "virtual wallet" business called "FaceCash." Unable or unwilling to complete the application process for an operating license under California's Money Transmission Act ("MTA"), and purportedly "threatened with incarceration" by California state officials responsible for administering the MTA, Plaintiff's founder and CEO, Aaron Greenspan, chose to shutter FaceCash on June 30, 2011. Soon after

---

[1] The Defendants submitting this motion include all Defendants named in this action except (1) Defendants Coinbase, Inc., Dwolla, Inc., and Stripe, Inc. (the "Lanham Defendants"), which are the only Defendants named in Plaintiff's Third Cause of Action; and (2) Defendants GoPago, Inc. and DST Global, Limited. The Lanham Defendants are submitting a joinder to this motion as well as a separate motion to dismiss all causes of action as against them.

ceasing operations, Mr. Greenspan filed suit in this Court against a suite of California officials—including the Governor and the Attorney General—seeking the abrogation of the MTA on the grounds that the law is "onerous" and "unconstitutional," and claiming that Mr. Greenspan was personally threatened by the deputy commissioner of the California agency then known as the Department of Financial Institutions ("DFI").

Eighteen months later, having had little success in his action against government officials, Mr. Greenspan now seeks to spread the blame for TCC's failure to a group of technology companies and a university that supposedly competed with FaceCash (the "Operator Defendants").  He has also sued a group of venture capital funds and individual investors (the "Investor Defendants;" together with the Operator Defendants, the "Defendants").  Plaintiff claims that the Operator Defendants, with funding from the Investor Defendants, flout the MTA's licensing requirements.  In Plaintiff's estimation, this activity entitles TCC to relief under § 17200 of California's Unfair Competition Law ("UCL") and to recover the "unjust enrichment" Defendants have supposedly reaped.

These claims fail at every level.

First, this Court does not have subject matter jurisdiction over the state law claims (UCL and unjust enrichment).  Plaintiff has brought exclusively state-law claims against non-diverse parties.  No substantial question of federal law must be resolved to adjudicate these claims.  And there is no basis for supplemental jurisdiction, since the one federal claim in the complaint—a Lanham Act claim asserted against only three of the Operator Defendants—relies on an entirely distinct set of factual allegations, making it a separate "case or controversy."  And in any case, having alleged no legally cognizable harm, Plaintiff lacks standing under Article III.

Second, even if there were jurisdiction, TCC has no standing to sue in any court, federal or state.  The UCL only provides redress to a plaintiff who has been deprived of a vested pecuniary interest by a defendant's action.  But TCC identifies no such vested pecuniary interest, only speculative harms such as "diminished future earnings" allegedly caused by the Operator Defendants' operations.  The Amended Complaint, however, makes clear that TCC

1    chose to shut down its business because of the actions of California officials, not because of any

2    "unfair competition" by any of the Defendants.

3           Third, even if it could overcome the jurisdictional and standing deficiencies in the

4    Amended Complaint, which it cannot, TCC has failed to allege any facts that would support a

5    legally cognizable claim for relief.  The Operator Defendants' licensure status under the MTA is

6    not grounds for a UCL violation.  And the Investor Defendants are particularly misplaced in this

7    lawsuit:  California law makes plain that there is no secondary liability under the UCL statute,

8    and there are no allegations whatsoever supporting any plausible theory of piercing the

9    corporate veil.

10          California's UCL does not create a generalized insurance scheme whereby failed

11   businesses (and their frustrated owners) can claim imagined "losses" from successful businesses

12   that are purported competitors.  Even more so, the UCL does not permit suits against legitimate

13   investors who make reasoned decisions not to invest in a business that later fails.  For these

14   reasons and the others explained below, this Court should dismiss Plaintiff's first and second

15   claims, without leave to amend.

16                          **STATEMENT OF RELEVANT FACTS**

17
18          Plaintiff describes itself as a "money service business" ("MSB") that was founded in

19   April 2010.  *See* Amended Complaint ("AC") ¶¶ 2, 47.  Plaintiff developed a virtual wallet

20   platform called "FaceCash," which purportedly enabled its users to pay for goods and services

21   through their smartphones.  AC ¶¶ 6, 46.

22          Also in 2010, California enacted the Money Transmission Act of 2010 ("MTA"), Cal.

23   Fin. Code §§ 2000, *et seq*., which took effect on January 1, 2011.  AC ¶¶ 33–34, 36.  The MTA

24   applies to "money transmitters wishing to hold and transmit funds domestically or

25   internationally," and imposes certain licensing, capitalization, and insurance requirements on

26   those businesses.  AC ¶ 37.  Prior to the 2010 Act, California did not impose licensing

27   requirements on domestic money transmitters.  AC ¶ 35.  Under the 2010 Act, some money

28   transmitters are exempt from the law altogether.  AC ¶ 106; Cal. Fin. Code §§ 2010–2011.

**DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT**

-4-

**Case No. 5:13-cv-2054-EJD**

Other entities that might otherwise be viewed as money transmitters are not required to be licensed because they act as agents of licensees or of entities who are exempt from the MTA. AC ¶ 106; Cal. Fin. Code § 2030.   Additionally, the MTA permits unlicensed money transmitters otherwise covered by the law to operate after July 1, 2011 so long as such entities have filed license applications with the DFI.  *See* AC ¶ 36.

After deciding not to complete the required application process to obtain a license, TCC chose to shut down its payment platform on June 30, 2011—the day before the MTA became enforceable against existing domestic money transmitters—allegedly after "the California DFI threatened [TCC's] officers with incarceration for continuing to operate as an MSB."  AC ¶ 48. Plaintiff promptly began a campaign of litigation.  On November 14, 2011, TCC filed suit in this Court against Robert Venchiarutti, Deputy Commissioner of the DFI, and a host of other California state officials, alleging that their enforcement of the MTA against TCC caused "damage to Plaintiff's reputation, business operations, competitive edge, and earnings." Request for Judicial Notice ("RJN"), Ex. 2, *TCC v. Venchiarutti ("Venchiarutti")*, No. 11-cv-05496 (N.D. Cal.), Complaint (Doc. 23) ¶ 6.[2]  Advocating the abrogation of the MTA as "unconstitutional" and "onerous," and arguing that the MTA should <u>not</u> be enforced, *id.* ¶¶ 82-83, TCC's *Venchiarutti* complaint blamed California's regulatory regime itself, as well as the California regulators who are responsible for its enforcement, for the purported "forced shutdown of its operations related to FaceCash," Ex. 3, *Venchiarutti* AC ¶ 72; s*ee also id*. ¶ 57 (alleging that state regulators "forbade Think from conducting business in the State of California").  The *Venchiarutti* complaints make no mention of the Defendants that TCC has sued in this action as having any role in TCC's cessation of operations.

Nearly a year and a half after suing state officials over the demise of TCC, Plaintiff's chief executive, Aaron Greenspan, decided that TCC should also sue its supposed competitors, the Operator Defendants.  TCC also named numerous entities and individuals, the Investor Defendants, who had invested in the Operator Defendants.  Although cast as a complaint for

---

[2] All exhibits to the Request for Judicial Notice are cited hereinafter as "Ex. ___."

1   violation of the UCL, Plaintiff's original pro se pleading revealed the real cause of Mr.

2   Greenspan's pique to be the Operator Defendants' decision to continue their businesses while

3   accommodating themselves to the MTA, rather than joining TCC's crusade against the state of

4   California. *See* Ex. 1, Compl. ¶ 44.  The original complaint also clarified that Mr. Greenspan's

5   real dispute with the Investor Defendants was their (reasonable) exercise of business judgment

6   not to invest in his now-failed business. *See* Ex. 1, Compl. ¶¶ 49–50 (alleging that the plaintiff

7   had not "been able to convince [Investor Defendants] to contribute capital" to its business, but

8   "these same investors proceeded to invest hundreds of millions of dollars in other companies").

9       On June 21, 2013, Plaintiff—now represented by counsel per an Order to Show Cause

10  issued by this Court—filed the present Amended Complaint.  It largely mimics the original

11  pleading, alleging that the Operator Defendants somehow competed with TCC's virtual wallet

12  platform because they acted in some way as businesses that transmitted money.  The Amended

13  Complaint's underlying claim against the Operator Defendants is that, "[b]y failing to comply

14  with applicable laws [i.e., the MTA] ... [the Operator Defendants] have enjoyed and continue to

15  enjoy an unfair advantage over Plaintiff in competition for customers and market share."

16  AC ¶ 3; *compare* Ex. 3, *Venchiarutti* AC ¶ 49.  The Amended Complaint does not, however,

17  allege a single fact that would support a conclusion that any of the Operator Defendants did

18  anything to cause TCC to lose even a single customer, let alone shut down its business.  Indeed,

19  both the Amended Complaint here and the *Venchiarutti* complaint blame TCC's shutdown on

20  the actions of California regulators.

21      The Amended Complaint also targets the Investor Defendants for supposed unfair

22  competition, although it affirmatively acknowledges that the Investor Defendants are not

23  providers of virtual wallets or otherwise money transmission businesses.  *See* AC ¶ 82.  Nor

24  does Plaintiff allege that the Investor Defendants are subject to the licensing requirements or

25  any other provision of the MTA.  Plaintiff instead premises the Investor Defendants' alleged

26  liability on their choosing not to invest in TCC, and their supposed "unbridled control" over the

27  Operator Defendants, AC ¶ 95, "directing the [Operator]-Defendants ... to compete unfairly and

28  illegally with Plaintiff," AC ¶ 4.  Yet, nowhere does the Amended Complaint specify *how* any

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT
-6-

Case No. 5:13-cv-2054-EJD

particular Investor Defendant actually exercised "unbridled control" over any particular Operator Defendant, either with regard to their money transmission businesses in general, or licensing under the MTA in particular. Indeed, the pleading is devoid of *any* factual allegations whatsoever regarding actions taken by any Investor Defendant. Plaintiff only alleges that certain individuals associated with some of the Investor Defendants hold seats on the boards of certain Operator Defendants. AC ¶ 97.

In claim one of the Amended Complaint, Plaintiff alleges that the Defendants are liable under California's Unfair Competition Law (the "UCL" or "§ 17200"), Bus. & Prof. Code §§ 17200, *et seq*. *See* AC ¶¶ 105–113 (First Cause of Action). In claim two, Plaintiff alleges that the Defendants are liable under a common-law theory of unjust enrichment—the Operator Defendants for having "received profits" and the Investor Defendants for having "received ... money in the form of returns on investments made in [Operator] Defendants." AC ¶¶ 116, 117; *see id*. ¶¶ 114–117 (Second Cause of Action).[3] Plaintiff seeks compensatory "damages," "punitive damages," and injunctive relief in its prayer for relief. AC at 32 (Prayer for Relief ¶¶ A, B, C).

## ARGUMENT

The state law claims must be dismissed under Federal Rule of Civil Procedure 12(b)(1), because there is no basis for federal subject matter jurisdiction over those claims against the Defendants under either Article III or any jurisdictional statute. *See Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225 (9th Cir. 2007); *see also Campbell v. Stein*, 314 F. App'x 976, 977 (9th Cir. 2009). "If the court determines at any time that it lacks subject-matter jurisdiction, the court *must* dismiss the action." Fed. R. Civ. P. 12(h)(3) (emphasis added).

The state law claims must also be dismissed under Rule 12(b)(6), with prejudice. To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must proffer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[3] Claim three is a Lanham Act claim asserted against Defendants Dwolla, Inc.; Stripe, Inc.; and Coinbase, Inc. (the "Lanham Defendants")—based on separate allegations. *See, e.g.*, AC ¶ 118-133. The Lanham Defendants are moving to dismiss separately.

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT

-7-

Case No. 5:13-cv-2054-EJD

678 (2009).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *See id.* at 677–81; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[T]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," are "not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 663–64.  The Amended Complaint fails to state a claim against the Defendants on the facts alleged because (1) Plaintiff has no standing under the UCL; (2) the UCL does not permit the relief Plaintiff seeks; (3) the Amended Complaint has not alleged a violation of the MTA against the Operator Defendants or the Investor Defendants; (4) the Investor Defendants cannot be held secondarily liable for any claim against the Operator Defendants; and (5) there is no viable claim for "unjust enrichment."

## I.    THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER THE STATE LAW CLAIMS.

Demonstrating jurisdiction is the Plaintiff's affirmative burden.  *See Stock W., Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (explaining that federal court's power to adjudicate is presumed missing "in a particular case unless the contrary affirmatively appears"); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (reciting presumption that "cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction").  On its face, Plaintiff's pleading falls short of establishing standing under any jurisdictional statute, much less under Article III of the United States Constitution.

### A.    There is no statutory basis for jurisdiction over the state law claims.

The Amended Complaint's only asserted statutory basis for federal jurisdiction is 28 U.S.C. § 1331, the federal question statute.[4]  *See* AC ¶ 31.  For a claim to arise under federal law, "a plaintiff's well-pleaded complaint must establish either (1) that federal law creates the

---

[4] Plaintiff has not, nor could it, alleged diversity jurisdiction under 28 U.S.C. § 1332 with regard to its claims against the Defendants.  *See* AC ¶¶ 6–30 (alleging that the Plaintiff and all but four Defendants are citizens of California).

cause of action or (2) that the plaintiff's asserted right to relief depends on the resolution of a substantial question of federal law." *K2 Am. Corp. v. Roland Oil & Gas, LLC*, 653 F.3d 1024, 1029 (9th Cir. 2011); *see Muller v. Auto Mission, LTD.*, No. 13-cv-00304, 2013 U.S. Dist. LEXIS 67886, at *9 (N.D. Cal. May 13, 2013) ("Federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."). Here, though, the UCL and unjust enrichment claims against the Defendants plainly arise under California law, not federal law. Nor does the Amended Complaint identify any substantial federal question that must be resolved to pass judgment on the UCL or unjust enrichment claims.

Plaintiff also has not alleged supplemental jurisdiction under 28 U.S.C. § 1367 over the state law claims. Even if it had done so, Plaintiff's Lanham Act claim against three defendants, *see* AC ¶¶ 118–133, is insufficient to establish supplemental jurisdiction against any of the remaining Defendants. "[A] district court may only assert supplemental jurisdiction over claims between non-diverse parties when those claims arise out of the 'same transaction or occurrence' as the claim over which the court has unquestioned federal jurisdiction." *Great Am. Ins. Co. v. Chang*, No. 12-cv-00833, 2013 U.S. Dist. LEXIS 54013, at *8 (N.D. Cal. Apr. 15, 2013). Therefore, for the Court to exercise supplemental jurisdiction over a Defendant based on the Lanham Act claims, they must comprise the same "case or controversy" as the state-law claim against that Defendant. 28 U.S.C. § 1367; *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *Stevedoring Servs. of Am. v. Eggert*, 953 F.2d 552, 558 (9th Cir. 1992) (requiring the same "nucleus of operative fact" between claims).

The state law claims do not constitute a single case or controversy with the Lanham Act claim. The Lanham Act claim, which is tacked on to the end of the Amended Complaint, is based on allegations that the Lanham Defendants made specific representations about their particular businesses that "deceived" both the public *and the Investor Defendants*—causing certain Investor Defendants to "infus[e]" the three Lanham Defendants with "venture capital." *See* AC ¶¶ 126, 131, 133. In contrast, the state law claims allege the Operator Defendants' allegedly unlicensed activity under the MTA (allegedly funded by the Investor Defendants) undercut Plaintiff's business. AC ¶ 113. These are different alleged harms with different

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT
-9-

Case No. 5:13-cv-2054-EJD

1    alleged victims. Moreover, asserting that certain Investor Defendants were victims for purposes

2    of the Lanham Act claim, but perpetrators for purposes of Plaintiff's state-law claims,

3    necessarily means that the resolution of the matters turns on different and conflicting operative

4    facts. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996) ("The claims in these cases have little

5    or no factual or logical interdependence, and, under these circumstances, no greater efficiencies

6    would be created by the exercise of federal jurisdiction over them.").

7                    **B.      Plaintiff lacks standing under Article III.**

8          "An Article III federal court must ask whether a plaintiff has suffered sufficient injury to

9    satisfy the 'case or controversy' requirement of Article III of the U.S. Constitution. To satisfy

10   Article III standing, plaintiff must allege: (1) an injury in fact that is concrete and particularized,

11   as well as actual and imminent; (2) that the injury is fairly traceable to the challenged action of

12   the defendant; and (3) that it is likely (not merely speculative) that injury will be redressed by a

13   favorable decision." *Thomas v. Costco Wholesale Corp.*, 12-cv-02908, 2013 U.S. Dist. LEXIS

14   51189, at *5 (N.D. Cal. Apr. 9, 2013) (Davila, J.) (citing *Friends of the Earth, Inc. v. Laidlaw*

15   *Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Lujan v. Defenders of Wildlife,* 504

16   U.S. 555, 561–62 (1992). Plaintiff alleges none of these things.

17         As for injury, Plaintiff alleges that Defendants' conduct resulted in TCC's having fewer

18   customers and market share, AC ¶ 113, and diminished future earnings, AC ¶ 113. There is

19   nothing "concrete and particularized" about these claimed losses. Plaintiff also alleges that it

20   was "harmed" by increased business and lobbying expenses, AC ¶¶ 53, 113, incurred on efforts

21   to abolish "the California MTA and other money transmission laws." AC ¶ 53. These are

22   voluntary political activities Plaintiff itself chose to undertake—not some "harm" imposed by

23   any Defendant. *See Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1155 (2013) (a plaintiff

24   "cannot manufacture standing by incurring costs in anticipation of non-imminent harm").

25         Moreover, Plaintiff's alleged injuries are not fairly traceable to Defendants' conduct

26   because Plaintiff itself admits that it "pulled its payment services from all of its customers"

27   because the "*California DFI* threatened Plaintiff's officers with incarceration for continuing to

28

**DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT**
**Case No. 5:13-cv-2054-EJD**

operate as an MSB."  AC ¶ 48 (emphasis added).[5]  In other words, Plaintiff admits that it had, and continues to have, no prospect of operating in California, regardless of the licensure status of the Operator Defendants under the MTA, and regardless of whether the Investor Defendants invested in the Operator Defendants.

Causation is impossible in any event because of the *timing* of the alleged wrongdoing and harm.  Plaintiff decided to shut down its payment platform as of June 30, 2011.  AC ¶ 48; *see also* AC ¶ 50.  But the Amended Complaint contends that the MTA's licensing deadline was July 1, 2011, the day *after* Plaintiff voluntarily withdrew from the money transmission market.  AC ¶ 81.  Hence, based on Plaintiff's own timeline, it cannot be that any alleged "unlawful" operation by any of the Defendants subsequent to the licensing deadline caused harm to Plaintiff's already-ceased business operations.  *Gentges v. Trend Micro Inc.*, No. 11-cv-05574, 2012 U.S. Dist. LEXIS 94714, at *13–14 (N.D. Cal. July 9, 2012) (dismissing on "traceability" grounds where plaintiff's complaint demonstrated defendant's "complete lack of involvement" in the transactions that purportedly caused plaintiff's injuries); *cf.* RJN, Ex. 3, *Venchiarutti* AC ¶ 42 ("Up until the deadline, Plaintiff's average daily money transmission volume was close to zero as Plaintiff had only successfully finished the merchant side of the product two days prior.").

As Plaintiff's alleged injury is not traceable to any conduct by Defendants, necessarily there is nothing that a decision of this Court could do to remedy the alleged harms here.  *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (for Article III standing, "plaintiff must show that her injury will likely be redressed by a favorable decision").

---

[5] *See also Venchiarutti*, AC ¶ 8 ("[W]ithout the ability to file an application for licensure with a reasonable chance of approval by the DFI, Plaintiff ceased operations in California and nationwide.  This caused damage to Plaintiff's reputation, business operations, competitive edge, and earnings."); *id.* ¶ 72 (alleging that the plaintiff "has been prevented from filing an application for licensure" by California regulators because it "would fail to meet the DFI's unwritten criteria for licensure if it attempted to continue the application process"); RJN, Ex. 4, *Venchiarutti*, Pl.'s Opp. MTD, at 3 (Doc. 25) (Feb. 28, 2012) ("Plaintiff has alleged ... not only that the MTA is facially unconstitutional, but also that the MTA and the State Defendants' actions in applying such regulatory scheme to Plaintiff have already caused Plaintiff present and continuing harm and forced him out of the business of money transmission.").

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT

-11-

Case No. 5:13-cv-2054-EJD

1    Because this Court lacks subject matter jurisdiction over the state law claims, claims one

2    and two must be dismissed.  *See* Fed. R. Civ. P. 12(h)(3).

3    **II.    CLAIMS ONE AND TWO STATE NO CLAIM**
     **FOR RELIEF UNDER CALIFORNIA LAW.**

4

5    Even if Plaintiff could overcome the threshold jurisdictional question, the state law

6    claims still fail.  First, Plaintiff has no standing to sue under the UCL because it can identify no

7    non-speculative harm cognizable under § 17200 that was caused by the Defendants.  Second,

8    the UCL does not allow for the relief Plaintiff seeks.  Third, Plaintiff does not have any

9    plausible UCL claim on the merits against any Defendant.  Fourth, the law is clear that the

10   Investor Defendants cannot be held vicariously liable for the alleged wrongs of the Operator

11   Defendants.  Fifth, Plaintiff has no viable claim for "unjust enrichment."

12   **A.    Plaintiff does not have standing under the UCL.**

13

14   Flowing from its failure to allege Article III standing, Plaintiff's allegations also do not

15   establish standing under the UCL.  *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 320–

16   21 (2011); *cf.* UCL § 17204 (standing to pursue private action under UCL limited to "a person

17   who has suffered injury in fact and has lost money or property as a result of the unfair

18   competition").  As explained in Section I.B, *supra*, the Amended Complaint does not allege

19   sufficient facts that, if proven, would establish that TCC suffered any particularized, non-

20   conjectural injury caused by any Defendant.  *See Kwikset*, 51 Cal 4th at 322 (citing *Lujan v.*

21   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  Specifically, Plaintiff admits that it

22   voluntarily shut down its payments business in June, 2011 (prior to Defendants' alleged

23   wrongdoing), and has no real prospect of operating a licensed money transmission business in

24   California, regardless of any Defendant's actions.  This alone defeats standing under the UCL:

25   any causal connection is broken when a complaining party would suffer the same harm

26   regardless of a defendant's actions.  *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1349

27   (2009); *Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1099 (2007).

28

1    Moreover, the UCL's standing requirements are even more stringent than the Article III

2    standard; only economic harm can establish injury-in-fact under the UCL. *Hinojos v. Kohl's*

3    *Corp.*, No. 11-cv-055793, 2013 U.S. App. LEXIS 10185, at *9–10 n.3 (9th Cir. May 21, 2013)

4    (standing under UCL requires "some form of economic injury"). Non-pecuniary harm does not

5    suffice. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 n.1 (9th Cir. 2011). Plaintiff

6    here alleges that Defendants' conduct resulted in TCC's having fewer customers and market

7    share, AC ¶ 113, and diminished future earnings, AC ¶ 113. Such conjectural losses cannot be

8    recovered under the UCL. *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134,

9    1143–53 (2003) (requiring UCL plaintiff to demonstrate a particularized, vested economic

10   benefit of which it was deprived by alleged wrongful conduct of defendant).

11              **B.        Under the UCL, Plaintiff is not entitled to any of the relief it seeks.**

12   Related to the standing issue, Plaintiff's Prayer for Relief is flawed in that California law

13   does not permit Plaintiff the remedies it seeks. *See* AC at 32 (Prayer for Relief). Plaintiff asks

14   for an award of "damages," *id.*, but restitution is the only monetary relief available under UCL

15   § 17200. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). In order

16   to obtain *restitution* under § 17200, a plaintiff must plausibly allege that it is seeking the

17   recovery of "money or property in which [it] has a vested interest." *Lozano v. AT&T Wireless*

18   *Servs., Inc.*, 504 F.3d 718, 733 (9th Cir. 2007). To the extent that TCC seeks the award of the

19   Operator Defendants' alleged "profits," AC ¶ 116, or Investor Defendants' alleged "returns on

20   investments," AC ¶ 117, nowhere in the Amended Complaint does Plaintiff allege that it has a

21   vested interest in money that any of the Defendants may have earned.

22   Plaintiff's request for "punitive damages" is also patently unavailable under § 17200.

23   *Almasi v. Equilon Enters., LLC*, No. 10-cv-03458, 2012 U.S. Dist. LEXIS 128623, at *30 (N.D.

24   Cal. Sept. 10, 2012) (Davila, J.) (citing *Korea Supply*, 29 Cal. 4th at 1144–45).

25   Finally, even if Plaintiff had standing and a plausible claim (which it does not), an

26   injunction against any Defendant, AC at 32 (Prayer for Relief ¶ A), would be overbroad and

27   impractical. Plaintiff cannot show that the balance of equities favors granting an injunction or

28

**DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT**

-13-

**Case No. 5:13-cv-2054-EJD**

1    that it would be in the public interest to do so. *See Brady v. United of Omaha Life Ins. Co.*, 902

2    F. Supp. 2d 1274, 1281 (N.D. Cal. 2012) (stating standard for injunctive relief).  Plaintiff's

3    prayer that the Court enjoin the Investor Defendants from "investing in money transmission

4    activity," AC at 32 (Prayer for Relief ¶ A), is especially groundless—in effect, this is a demand

5    that the Court inhibit lawful investment activity with no demonstrated causal connection to any

6    ongoing harm suffered by Plaintiff.  *See*, *e.g.*, *Clerkin v. MyLife.com, Inc. ("Clerkin II")*, No.

7    11-cv-00527, 2011 U.S. Dist. LEXIS 96735, at *5–7 (N.D. Cal. Aug. 29, 2011) (dismissing

8    claim seeking injunction against investors in allegedly law-breaking company).[6]

9                 **C.**      **There is no valid UCL claim against any Defendant.**

10

11          Even if Plaintiff could establish standing, the Amended Complaint sets out no legally

12    cognizable substantive claim under the UCL.  "To establish a violation of Section 17200, a

     plaintiff may establish a violation under any one of three prongs," namely, by showing the

13    defendant's business practices to be "unlawful, unfair or fraudulent."  *Baldoza v. Bank of Am.,*

14    *N.A.*, No. 12-cv-05966, 2013 U.S. Dist. LEXIS 34323, at *46–47 (N.D. Cal. Mar. 12, 2013).

15    The Amended Complaint establishes no such practice on the part of either the Operator

16    Defendants or the Investor Defendants.

17                **1.**      **The Amended Complaint pleads no "unlawful" conduct.**

18

19          "To state a cause of action based on an 'unlawful' business act or practice under the

20    UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law."

21    *Baldoza*, 2013 U.S. Dist. LEXIS 34323, at *46.  Plaintiff alleges that the Operator Defendants

22    violated "the California MTA and ... [18 U.S.C. §] 1960, as well as the federal Bank Secrecy

23

24 [6] Furthermore, as to defendants Square, Inc. and Facebook Payments Inc., TCC admits that both companies are currently licensed to engage in money transmission activity.  *See* AC ¶¶ 69, 72, 104.  Thus, the injunctive relief TCC seeks—enjoining Operator Defendants "from engaging in

25 money transmission activity without proper licensure"—does not and cannot apply to either Square or Facebook Payments.  *See, e.g., Brosnan v. Tradeline Solutions, Inc.*, 681 F. Supp. 2d 1094, 1103 (N.D. Cal. 2010) ("[T]here is no basis for injunctive relief [under Section 17200]

26 because … Defendant is no longer in the business of selling tradelines."); *Bronson v. Johnson & Johnson, Inc.*, No. 12-cv-04184, 2013 U.S. Dist. LEXIS 24029, at *5 n.2 (N.D. Cal. Apr. 16,

27 2013). (finding defendants' discontinuation of products "renders moot Plaintiffs' request for injunctive relief related to those products" in context of Section 17200 claim).

28

**DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT**

-14-

**Case No. 5:13-cv-2054-EJD**

1  Act and the laws of other states and territories that require licenses for money transmission."

2  AC ¶ 75.

3      Plaintiff's naked assertion of "unlawfulness" is insufficient as a pleading matter. There

4  is no factual foundation to Plaintiff's allegations: Plaintiff has "alleged," but not "shown" that it

5  is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Plaintiff has named thirteen

6  Operator Defendants without pleading facts showing how any one (much less all) of them is

7  operating in violation of the MTA. In particular, Plaintiff has not alleged that any of the

8  Operator Defendants failed to do one of the following, any of which would satisfy the MTA's

9  licensing requirements: (1) file an application for licensure, (2) associate its operations with a

10  licensed operator, or (3) determine, independently or via discussion with the DFI, that its

11  products are or were exempt from the MTA's licensing requirements altogether. *See* AC ¶ 106.

12      Plaintiff also fails to ground an unlawfulness claim on other statutes it cites.[7] Without an

13  underlying violation of the MTA by the Operator Defendants, Plaintiff's claim of UCL liability

14  based on a criminal provision of the Patriot Act, 18 U.S.C. § 1960, necessarily fails.[8] AC ¶ 40.

15      As for the Investor Defendants, Plaintiff alleges that they too violated "the California

16  MTA and [18 U.S.C.] Section 1960." AC ¶ 99. But the Investor Defendants cannot have

17  violated the MTA because they are not subject to that law, which governs money transmission

18  businesses, not investors in such businesses. MTA § 2030 ("A person shall not engage in the

19  business of money transmission in this state [*i.e.*, California], or advertise, solicit, or hold itself

20

21  _____

22  [7] The Amended Complaint also makes passing references to two federal anti-money laundering
   statutes, 31 U.S.C. §5316 and 31 U.S.C. § 5318. *See* AC ¶¶ 109–10. But there are no factual
23  allegations pertaining to those statutes. To the extent TCC bases its UCL claims on alleged
   violations of these anti-money laundering statutes, those claims should be dismissed because the
24  Amended Complaint lacks any facts to support them.

25  [8] 18 U.S.C. § 1960 provides, "Whoever knowingly conducts, controls, manages, supervises,
   directs, or owns all or part of an unlicensed money transmitting business, shall be fined ... or
26  imprisoned." The elements of the crime are "(1) knowingly operating a money transmitting
   business, (2) which affects interstate or foreign commerce, (3) is unlicensed under state law, (4)
27  when state law requires a license, and (5) state law punishes lack of a license as a misdemeanor
   or a felony." *United States v. Emilor, S.A.*, No. 07-cr-1, 2008 U.S. Dist. LEXIS 112865, at *21
28  (E.D. Tex. Apr. 30, 2008).

1    out as providing money transmission in this state, unless the person is licensed or exempt from

2    licensure ....").  Plaintiff nowhere alleges otherwise.

3          Nor could the Investor Defendants be liable under the UCL based on 18 U.S.C. § 1960.

4    In Plaintiff's estimation, that provision makes a crime of the Investor Defendants' equity

5    holdings in allegedly "unlicensed" Operator Defendants.  That is, Plaintiff asserts the Investor

6    Defendants, themselves not subject to the MTA, are nonetheless criminally liable under an anti-

7    terrorism statute because the Operator Defendants have supposedly violated the MTA.  This is a

8    failed theory of liability because, as the only Circuit Court to construe this portion of § 1960 has

9    made clear, that law does not criminalize simple investment, but instead focuses on "*those who*

10   *are, in some substantial degree, in charge of the operation*."  *United States v. Talebnejad*, 460

11   F.3d 563, 572 (4th Cir. 2006) (emphasis added).  The Amended Complaint lacks any allegation

12   plausibly establishing the required "substantial degree" of control necessary to plead a prima

13   facie violation of 18 U.S.C. § 1960.

14
                    **2.        The Amended Complaint alleges no cognizable "unfairness."**
15

16         In cases that, like this one, are brought by alleged competitors rather than by consumers,

17   the "unfairness" prong of § 17200 requires an incipient violation of the antitrust laws.  *See Cel-*

18   *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 187 (1999).  Plaintiff

19   here never alleges that any Operator Defendant (much less any Investor Defendant) violated an

20   express antitrust law, much less how they did so.  Plaintiff's inability to succeed in the money

21   transmission business is not, in itself, an "unfairness" under § 17200.  *See Cel-Tech*, 20 Cal. 4th

22   at 186 ("Injury to a competitor is not equivalent to injury to competition; only the latter is the

23   proper focus of antitrust laws.").

24         The Amended Complaint alleges that the Investor Defendants also engaged in "unfair"

25   conduct because, through their investments in the Operator Defendants, they "effectively

26   eliminating from competition would-be lawful competitors."  AC ¶ 102; *see also* AC ¶¶ 2, 100.

27   This allegation is flatly contradicted by Plaintiff's own assertion that it was the actions of

28   California's state government officials, and not the Investor Defendants' investment decisions,

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT

-16-

Case No. 5:13-cv-2054-EJD

that purportedly forced it to decide to cease operations. *See* AC ¶ 48. The real "unfairness," in Plaintiff's estimation, is Investor Defendants' reasonable exercise of business judgment in deciding not to invest in Mr. Greenspan's business—which, of course, they had every right to do. *See Ex. 3, Venchiarutti*, AC ¶ 64 ("Plaintiff was subsequently rejected as an investment opportunity by several prominent venture capital firms, eliminating virtually the only source of funding large enough to realistically allow Plaintiff to comply with the MTA.").

### 3.  The Plaintiff has not alleged a "fraud" under § 17200.

Plaintiff's theory of fraud is that the Defendants "deceive the public." AC ¶¶ 80, 103. As an initial matter, fraud claims under § 17200 trigger the heightened pleading standard of Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Yet Plaintiff here fails to specify the "who, what, when, where, and how" of the alleged fraud. Simply asserting a fraud is insufficient to satisfy Plaintiff's pleading obligations. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Moreover, the alleged "victim" of the supposed "fraud" as alleged in Plaintiff's UCL claim is "the public," AC ¶¶ 80, 103, not Plaintiff. The Amended Complaint never suggests that Plaintiff was under any misapprehension about the MTA or any Operator Defendant's compliance with that law. *See McCabe v. Floyd Rose Guitars*, No. 10-cv-00581, 2012 U.S. Dist. LEXIS 56604, at *25–26 (S.D. Cal. Apr. 23, 2012) (dismissing Plaintiff's second amended complaint for failure to demonstrate that he personally suffered injury as a result of fraudulent agreements). In other words, Plaintiff cannot show that it actually relied on any misleading statements (not one of which is ever specified), as is required. *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 ("Therefore, we conclude that this language imposes an actual reliance requirement on plaintiffs … under the UCL's fraud prong.").

### D.  Liability against the Investor Defendants under the UCL is precluded by California law.

Plaintiff fails to overcome an additional hurdle to stating a UCL claim against the Investor Defendants:  The Investor Defendants, like all equity holders, are presumed to be

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT

-17-

Case No. 5:13-cv-2054-EJD

immune from liability for the supposed wrongs of the Operator Defendants. The gravamen of the Amended Complaint is that the Operator Defendants allegedly operated without a license in purported violation of the MTA, thereby allegedly harming Plaintiff's efforts to operate its business (which Plaintiff chose to shut down due to alleged impediments presented by California's regulatory officials). As explained above, that claim is meritless. Regardless, the Amended Complaint largely focuses on the allegedly wrongful conduct of the Operator Defendants and does not (and could not) allege that the Investor Defendants are themselves money transmitters, or that they are otherwise subject to the MTA. *Compare* AC ¶¶ 7–19 (asserting that Operator Defendants are each "money transmitter[s]") *with* AC ¶¶ 20–30 (describing Investor Defendants as parties that allegedly "invested in a number of unlicensed money transmitters"). Nor does (or could) Plaintiff allege that a mere investment in a money transmittal business falls within the MTA's ambit.

As a general matter, there is no basis here for applying any theory of "piercing the corporate veil" to impose liability against the Investor Defendants for any wrongdoing by the Operator Defendants. Under California law, the distinction between an entity and an investor will be ignored only where there is "such a unity of interest and ownership" between them that "separate personalities of the corporation and the shareholder do not in reality exist." *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 538 (2000).[9] Here, Plaintiff alleges that Investor Defendants (1) "set day-to-day direction and agendas" for Operator Defendants; (2) make hiring and firing decisions and set business strategy; and (3) have employees who serve on the boards of Operator Defendants. AC ¶¶ 94–95, 97. Putting aside the facially conclusory nature of these allegations, they are insufficient to establish the unity of interest

---

[9] In fact, to the extent that certain Investor Defendants are alleged to have invested through an LLC, such investors are directly protected from liability by statute. Cal. Corp. Code, § 17101; *Am. Prop. Mgmt. Corp. v. Superior Court*, 206 Cal. App. 4th 491, 506 (2012) ("A member of a California limited liability company—like a corporate shareholder—is not personally liable for the debts, legal liability or obligations of the company unless liability attaches under an alter ego theory. (Cal. Corp. Code, § 17101.)"). Delaware and California law examine similar factors and apply the same principles; both states' laws protect investors in LLCs by statute, absent sufficient allegations of veil piercing. *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1121 n.10 (S.D. Cal. 2011).

required for alter-ego liability. *See Doe v. Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001) (finding no alter ego liability despite allegations of parent's (1) involvement in its subsidiaries' acquisitions, divestments, and capital expenditures; (2) formulation of general business strategies applicable to its subsidiaries; (3) provision of loans to subsidiaries; (4) maintenance of overlapping directors and officers; and (5) alleged undercapitalization of subsidiaries) (collecting cases); *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980) (finding no alter ego relationship where the parent company guaranteed loans for the subsidiary, approved major decisions, placed its directors on the subsidiary's board, and was closely involved in the subsidiary's pricing decisions).[10]   Additionally, to pierce the corporate veil in California, there must be an inequitable result if the acts in question are treated as those of the corporation alone. *Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011), reh'g denied (May 12, 2011).   Here, TCC has not alleged that any remedy, otherwise available, could not be adequately recovered from the Operator Defendants, without reaching through the corporate veil to equity holders like the Investor Defendants.

As for the UCL specifically, it is a settled rule that there is no claim for secondary liability under § 17200. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007).   Plaintiff therefore cannot state a claim against the Investor Defendants for the supposed wrongful conduct of the Operator Defendants.   An analogous UCL claim in this District was recently dismissed for the same reasons. *See Clerkin v. MyLife.com, Inc.*, No. 11-cv-00527, (N.D. Cal.).   In *Clerkin*, the plaintiffs alleged, in sequential complaints, that MyLife.com, Inc. ("MyLife") ran a website that was unfair, unlawful, and fraudulent under UCL §17200. *Clerkin*, 2011 U.S. Dist. LEXIS 90552, at *4 (N.D. Cal. Aug. 15, 2011) ("*Clerkin I*"); *Clerkin*, 2011 U.S. Dist. LEXIS 96735, at *5 (N.D. Cal. Aug. 29, 2011) ("*Clerkin II*").   In addition to

---

[10] Furthermore, for those persons who are alleged to have invested in venture capital funds that then invested in the Operator Defendants, AC ¶¶ 84 (AH Funds), 87 (Sequoia Funds), 93 (Yuri Milner), the Amended Complaint fails to justify double-veil piercing to warrant liability against them.   *See Fleet Credit Corp. v. TML Bus Sales*, 65 F.3d 119, 120–21 (9th Cir. 1995) ("[Defendant's] alter ego corporation loaned the money to another corporation in a fraudulent conveyance ....   [F]or [Defendant's] creditors to get it, they had to penetrate ... the alter ego corporation.").

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT

-19-

Case No. 5:13-cv-2054-EJD

suing MyLife, the plaintiffs also alleged that "a venture capital firm, provided $25 million to MyLife," and, along with MyLife's officers and directors, "performed acts that facilitated MyLife's alleged misconduct, conspired with each other to advance the challenged scheme and 'furnished the means' to accomplish any alleged wrongdoing." *Clerkin I* at *3–4, 12. The Court dismissed the claims against the venture capital firm and individual defendants, reasoning that the plaintiffs had "not identif[ied] any particular conduct" to show that these defendants "*personally* performed [unlawful] acts." *Id.* at *13 (emphasis added). The claims against the Investor Defendants here fail for the same reason.

While Plaintiff alleges that the Investor Defendants exercised "unbridled control" over the Operator Defendants, it does so only in conclusory fashion. These allegations—which purport to describe how a venture capital firm might act "as a rule-of-thumb," without any specific allegations regarding any defendant's actions, AC ¶ 95—are "'naked assertion[s]' devoid of 'further factual enhancement,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Such "[t]hreadbare recitals of the elements of a cause of action" must not be "accept[ed] as true" by the Court. *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *Copeland v. Lane*, No. 11-cv-01058, 2013 U.S. Dist. LEXIS 65742, at *22 (N.D. Cal. May 6, 2013) (Davila, J.) ("[T]he court is not required to accept as true legal conclusions cast in the form of factual allegations.").

Plaintiff's allegation that eleven people associated in some way with an Investor Defendant sit on boards of certain Operator Defendants also does not plausibly qualify as "unbridled control." AC ¶ 97. Plaintiff nowhere alleges how any of these directors "controls" any of the Operator Defendants—much less in an "unbridled" fashion—as opposed to merely holding one vote among many on a board. In fact, there are no allegations at all regarding any action taken any director. Such conclusory pleading is insufficient. And in any case, as with "control person" claims under the securities laws, naked allegations of board membership are not sufficient to state a claim for liability. *Burgess v. Premier Corp.*, 727 F.2d 826, 832 (9th Cir. 1984) (citations omitted) ("A Director is not automatically liable as a controlling person."); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1243 (N.D. Cal. 1994). The analogy is

DEFENDANTS' NOTICE OF MOTION & MOTION TO DISMISS CLAIMS ONE AND TWO FOR LACK OF SUBJECT MATTER
JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED; MPA IN SUPPORT
-20-

Case No. 5:13-cv-2054-EJD

1    instructive because stating a claim of "control" in the securities context requires a lower

2    showing than the stringent "unbridled control" standard necessary to impose any secondary

3    liability under § 17200. Under Ninth Circuit law, control for securities purposes generally

4    requires having the power to direct an action, while "unbridled control" in the § 17200 context

5    requires affirmatively and effectively *exercising* control. *Compare Howard v. Everex Sys., Inc.*,

6    228 F.3d 1057, 1065 (9th Cir. 2000) ("Plaintiff need not show that the defendant was a culpable

7    participant [to state a control person claim] .... [I]t is not necessary to show actual participation

8    or the exercise of actual power ....") *with Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952,

9    960 (Cal. App. 3d Dist. 2002) ("A defendant's liability must be based on his personal

10   'participation in the unlawful practices' and 'unbridled control' over the practices that are found

11   to violate section 17200.").

12          **E.      There is no Claim for Relief in California for Unjust Enrichment.**

13          Plaintiff's unjust enrichment claim must also be dismissed for failure to state a claim.

14   Under California law, "[u]njust enrichment is a general principle, underlying various legal

15   doctrines and remedies, rather than a remedy itself." *IB Melchior v. New Line Prods., Inc.*, 106

16   Cal. App. 4th 779, 793 (2003). Indeed, this Court has routinely dismissed unjust enrichment

17   claims without leave to amend because "there is no cause of action in California for unjust

18   enrichment.'" *Gabali v. OneWest Bank*, No. 12-cv-02901, 2013 U.S. Dist. LEXIS 47193, at

19   *22 (N.D. Cal. Mar. 29, 2013) (Davila, J.) (quoting *In re Toyota Motor Corp. Unintended

20   Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1194 (C.D.

21   Cal. 2010)); *Dunkel v. eBay Inc.*, No. 12-cv-01452, 213 U.S. Dist. LEXIS 13866, at *31 (N.D.

22   Cal. Jan. 31, 2013) (Davila, J.) (same); *Gandrup v. GMAC Mortgage, LLC*, No. 11-cv-00659,

23   2012 U.S. Dist. LEXIS 128625, at *14 (N.D. Cal. Sept. 10, 2012) (Davila, J.) (same);

24   *Williamson v. Apple, Inc.*, No. 11-cv-00377, 2012 U.S. Dist. LEXIS 125368, at *28 (N.D. Cal.

25   Sept. 4, 2012) (Davila, J.) (same). Thus, Plaintiff's "claim" for unjust enrichment should be

26   dismissed.

27

28

### III.    LEAVE TO AMEND SHOULD BE DENIED.

1

2          The Amended Complaint should be dismissed with prejudice.  Plaintiff has already

3  amended once, and there is nothing to suggest that further amendment would be anything but

4  additionally—and wastefully—frivolous.  *See United Union of Roofers, Waterproofers, and*

5  *Allied Trades No. 40 v. Ins. Co. of Am.*, 919 F.2d 1398, 1402 (9th Cir. 1990); *see also Ascon*

6  *Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).  It is inconceivable that

7  Plaintiff could overcome the basic jurisdictional and fundamental substantive deficiencies in the

8  Amended Complaint.  *Bernardi v. JPMorgan Chase Bank, N.A.*, No. 11-cv-04212, 2012 U.S.

9  Dist. LEXIS 85666, at *6–8 (N.D. Cal. June 20, 2012) (Davila, J.) (denying leave to amend

10  where standing problem was manifestly insurmountable).

11          It is also clear from both the Plaintiff's *Venchiarutti* action against California's

12  regulators and its frivolous claims in this matter that the Plaintiff is trying to use litigation not to

13  remedy any actual legal harm, but instead as a thinly disguised soapbox to harass businesses that

14  did not experience the regulatory problems that Plaintiff claims it experienced, and to further

15  harass venture capital firms and other investors that reasonably exercised their business

16  judgment not to invest in Plaintiff's business.  This impropriety alone warrants dismissal of the

17  Amended Complaint with prejudice.  *Joseph v. Wachovia Mortg. Corp.*, No. 11-cv-02395, 2011

18  U.S. Dist. LEXIS 133558, at *22 (N.D. Cal. Nov. 18, 2011) (Davila, J.) (granting motion to

19  dismiss without leave to amend where plaintiff was using claims as a "bargaining chip" rather

20  than for vindication of credible claims).

21

22

23

24

25

26

27

28

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that the Court dismiss the UCL and unjust enrichment claims against them for lack of subject-matter jurisdiction under Rule 12(b)(1).  Alternatively, the Defendants request that the Court dismiss—without leave to amend—the UCL and unjust enrichment claims against them for failure to state a claim for which relief might be granted under Rule 12(b)(6).

Respectfully submitted,

Dated:   San Francisco, California      ROPES & GRAY LLP
         August 8, 2013

                                       By     /s/Rocky C. Tsai
                                       _____
                                              Rocky C. Tsai

                                       Attorneys for Defendants Kleiner Perkins
                                       Caufield & Byers, LCC; Kleiner Perkins
                                       Caufield & Byers XIII, LCC; Kleiner Perkins
                                       Caufield & Byers XII Founders Fund, LCC;
                                       Kleiner Perkins Caufield & Byers XIV, LCC;
                                       Kleiner Perkins Caufield & Byers XV, LCC;
                                       Sequoia Capital, LLC; Sequoia Capital New
                                       Projects, LLC; Sequoia Capital XII, LP; SC XII
                                       Management, LLC; Sequoia Capital XII
                                       Principals Fund, LLC; Sequoia Capital Scout
                                       Fund I, LLC; Sequoia Capital Scout Fund II,
                                       LLC; Sequoia Capital Scout Fund III, LLC;
                                       Sequoia Capital U.S. Scout Seed Fund 2013, LP;
                                       and Sequoia Technology Partners XII, LP.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL HASTINGS LLP

By    /s/ Thomas P. Brown
        Thomas P. Brown

Attorneys for Defendants Airbnb, Inc.; Balanced, Inc.; Facebook, Inc.; Facebook Payments, Inc.; Gumroad, Inc.; Square, Inc.; A-Grade Investments, LLC; A-Grade Investments II, LLC; Union Square Ventures LLC; Union Square Ventures Opportunity Fund, LP; Union Square Ventures 2012 Fund LP; Brian Chesky; Max Levchin; and Yishan Wong.

ARNOLD & PORTER LLP

By    /s/ Kenneth G. Hausman
        Kenneth G. Hausman

Attorneys for Defendants Andreessen Horowitz Fund I, LP; Andreessen Horowitz Fund I-A, LP; Andreessen Horowitz Fund I-B, LP; Andreessen Horowitz Fund II, LP; Andreessen Horowitz Fund II-A, LP; Andreessen Horowitz Fund II-B, LP; Andreessen Horowitz Fund III, LP; Andreessen Horowitz Fund III (AIV), LP; Andreessen Horowitz Fund III-A, LP; Andreessen Horowitz Fund III-B, LP; Andreessen Horowitz Fund III-Q, LP; Y Combinator, LLC; Y Combinator Fund I, LP; Y Combinator Fund I GP, LLC; Y Combinator Fund II, LP; Y Combinator Fund II GP, LLC; Y Combinator RE, LLC; Y Combinator S2012, LLC; Y Combinator W2013, LLC.

GOODWIN PROCTER LLP

By    /s/ Gus P. Coldabella
        Gus P. Coldabella (admitted *pro hac vice*)

Attorneys for Defendants Digital Sky Technologies, Limited, DSTG-2 2011 Advisors, LLC, DSTG-2 2011 Investors DLP, LLC, DSTG-2 2011 Investors Onshore, LP and Yuri Milner.

PERKINS COIE LLP

By      /s/ Judith B. Jenson
              Judith B. Jenson

Attorneys for Defendant CoinLab, Inc.

PILLSBURY WINTHROP SHAW PITTMAN LLP

By      /s/ Sarah G. Flanagan
              Sarah G. Flanagan

Attorneys for Defendant The Board of Trustees of the Leland Stanford Junior University.

## CERTIFICATION OF CONCURRENCE IN FILING PER CIVIL L.R. 5-1(i)(3)

I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories herein.

Dated:    San Francisco, California
              August 8, 2013

ROPES & GRAY LLP

By      /s/ Rocky C. Tsai
              Rocky C. Tsai

Attorneys for Defendants Kleiner Perkins Caufield & Byers, LCC; Kleiner Perkins Caufield & Byers XIII, LCC; Kleiner Perkins Caufield & Byers XII Founders Fund, LCC; Kleiner Perkins Caufield & Byers XIV, LCC; Kleiner Perkins Caufield & Byers XV, LCC; Sequoia Capital, LLC; Sequoia Capital New Projects, LLC; Sequoia Capital XII, LP; SC XII Management, LLC; Sequoia Capital XII Principals Fund, LLC; Sequoia Capital Scout Fund I, LLC; Sequoia Capital Scout Fund II, LLC; Sequoia Capital Scout Fund III, LLC; Sequoia Capital U.S. Scout Seed Fund 2013, LP; and Sequoia Technology Partners XII, LP.