1  ROPES & GRAY LLP
   ROCKY C. TSAI (CA Bar No. 221452)
2  Three Embarcadero Center, Ste. 300
   San Francisco, CA  94111-4006
3  Telephone:    (415) 315-6300
   Facsimile:    (415) 315-6350
4  Email:    rocky.tsai@ropesgray.com

5  CHRISTOPHER G. GREEN (admitted *pro hac vice*)
   C. THOMAS BROWN (admitted *pro hac vice*)
6  Prudential Tower, 800 Boylston Street
   Boston, MA  02199-3600
7  Telephone:    (617) 951-7000
   Facsimile:    (617) 951-7050
8  Email:    christopher.green@ropesgray.com
   Email:    thomas.brown@ropesgray.com

9

10  Attorneys for Defendants Kleiner Perkins Caufield & Byers, LCC; Kleiner Perkins Caufield &
    Byers XIII, LCC; Kleiner Perkins Caufield & Byers XII Founders Fund, LCC; Kleiner Perkins
11  Caufield & Byers XIV, LCC; Kleiner Perkins Caufield & Byers XV, LCC; Sequoia Capital,
    LLC; Sequoia Capital New Projects, LLC; Sequoia Capital XII, LP; SC XII Management, LLC;
12  Sequoia Capital XII Principals Fund, LLC; Sequoia Capital Scout Fund I, LLC; Sequoia Capital
    Scout Fund II, LLC; Sequoia Capital Scout Fund III, LLC; Sequoia Capital U.S. Scout Seed
13  Fund 2013, LP; and Sequoia Technology Partners XII, LP

14  [Counsel to remaining Defendants joining this motion listed below.]

15            **UNITED STATES DISTRICT COURT**
           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
16                   **SAN JOSE DIVISION**

17  |  | Case No. 5:13-cv-2054-EJD |
    |---|---|
18  | THINK COMPUTER CORPORATION, | **DEFENDANTS' REPLY IN FURTHER** |
19  |  | **SUPPORT OF MOTIONS TO DISMISS** |
    |                      Plaintiff, | **ALL CLAIMS FOR LACK OF** |
20  |  | **SUBJECT-MATTER JURISDICTION** |
    |         v. | **AND FOR FAILURE TO STATE A** |
21  |  | **CLAIM UPON WHICH RELIEF CAN** |
22  | DWOLLA, INC.; ACTBLUE, LLC; AIRBNB, | **BE GRANTED** |
    | INC.; POUND PAYMENTS ESCROW |  |
23  | SERVICES, INC. DBA BALANCED |  |
    | PAYMENTS; CLINKLE CORPORATION; | Hearing Date:  January 10, 2014 |
24  | COINBASE, INC.; COINLAB, INC.; | Time:    9:00 a.m. |
    | FACEBOOK, INC.; FACEBOOK PAYMENTS, | Place:    Courtroom 4 |
25  | INC.; GOPAGO, INC.; GUMROAD, INC.; | Judge:    The Hon. Edward J. Davila |
    | SQUARE, INC.; STRIPE, INC.; THE BOARD OF |  |
26  | TRUSTEES OF THE LELAND STANFORD |  |
    | JUNIOR UNIVERSITY; A-GRADE |  |
27  | INVESTMENTS, LLC; A-GRADE |  |
28  | INVESTMENTS II, LLC; ANDREESSEN |  |

1 HOROWITZ FUND I, LP; ANDREESSEN
HOROWITZ FUND I-A, LP; ANDREESSEN
2 HOROWITZ FUND I-B, LP; ANDREESSEN
HOROWITZ FUND II, LP; ANDREESSEN
3 HOROWITZ FUND II-A, LP; ANDREESSEN
HOROWITZ FUND II-B, LP; ANDREESSEN
4 HOROWITZ FUND III, LP; ANDREESSEN
HOROWITZ FUND III (AIV), LP;
5 ANDREESSEN HOROWITZ FUND III-A, LP;
6 ANDREESSEN HOROWITZ FUND III-B, LP;
ANDREESSEN HOROWITZ FUND III-Q, LP;
7 DIGITAL SKY TECHNOLOGIES, LIMITED;
8 DST GLOBAL, LIMITED; DSTG-2 2011
ADVISORS, LLC; DSTG-2 2011 INVESTORS
9 DLP, LLC; DSTG-2 2011 INVESTORS
10 ONSHORE, LP; KLEINER PERKINS
CAUFIELD & BYERS, LLC; KLEINER
11 PERKINS CAUFIELD & BYERS XIII, LLC;
12 KLEINER PERKINS CAUFIELD & BYERS XIII
FOUNDERS FUND, LLC; KLEINER PERKINS
13 CAUFIELD & BYERS XIV, LLC; KLEINER
PERKINS CAUFIELD & BYERS XV, LLC;
14 SEQUOIA CAPITAL, LLC; SEQUOIA
15 CAPITAL NEW PROJECTS, LLC; SEQUOIA
CAPITAL XII, LP; SC XII MANAGEMENT,
16 LLC; SEQUOIA CAPITAL XII PRINCIPALS
17 FUND, LLC; SEQUOIA CAPITAL SCOUT
FUND I, LLC; SEQUOIA CAPITAL SCOUT
18 FUND II, LLC; SEQUOIA CAPITAL U.S.
SCOUT FUND III, LLC; SEQUOIA CAPITAL
19 U.S. SCOUT SEED FUND 2013, LP; SEQUOIA
20 TECHNOLOGY PARTNERS XII, LP; UNION
SQUARE VENTURES LLC; UNION SQUARE
21 VENTURES OPPORTUNITY FUND, LP;
UNION SQUARE VENTURES 2012 FUND, LP;
22 Y COMBINATOR, LLC; Y COMBINATOR
FUND I, LP; Y COMBINATOR FUND I GP,
23 LLC; Y COMBINATOR FUND II, LP; Y
24 COMBINATOR FUND II GP, LLC; Y
COMBINATOR RE, LLC; Y COMBINATOR
25 S2012, LLC; Y COMBINATOR W2013, LLC;
BRIAN CHESKY; MAX LEVCHIN; YURI
26 MILNER; YISHAN WONG,

27                          Defendants.

28

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**
**Case No. 5:13-cv-2054-EJD**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................... 1

I.    THIS COURT DOES NOT HAVE SUBJECT MATTER
JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS. ....................... 2

II.    PLAINTIFF DOES NOT HAVE STANDING. .................................................... 4

III.   PLAINTIFF DOES NOT STATE A UCL CLAIM ON THE MERITS. .............. 7

IV.   THERE IS NO BASIS FOR AN UNJUST ENRICHMENT CLAIM. ................ 9

V.    PLAINTIFF LACKS STANDING UNDER THE LANHAM ACT. .................. 10

CONCLUSION ...................................................................................................................... 11

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

**CASES**

3

4
*Baldoza v. Bank of Am., N.A.,*
   No. 12-cv-05966, 2013 U.S. Dist. LEXIS 34323 (N.D. Cal. Mar. 12, 2013) ........................3

5

6
*Brosnan v. Tradeline Solutions, Inc.,*
   681 F. Supp. 2d 1094 (N.D. Cal. 2010) ...............................................................................10

7
*Caterpillar Inc. v. Williams,*
   482 U.S. 386 (1987).................................................................................................................3

8

9
*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
   20 Cal. 4th 163 (1999) .............................................................................................................8

10

11
*Chandler v. State Farm Mut. Auto. Ins. Co.,*
   598 F.3d 1115 (9th Cir. 2010) ................................................................................................5

12

13
*Cordon v. Wachovia Mortg.,*
   776 F. Supp. 2d 1029 (N.D. Cal. 2011) ..................................................................................6

14
*Crawford v. Moore,*
   No. 95-cv-04248, 1996 U.S. Dist. LEXIS 2365 (N.D. Cal. Feb. 26, 1996) ...........................2

15

16
*Daro v. Super. Ct.,*
   151 Cal. App. 4th 1079 (2007) ...............................................................................................5

17

18
*Dunkel v. eBay Inc.,*
   No. 12-cv-01452, 2013 U.S. Dist. LEXIS 13866 (N.D. Cal. Jan. 31, 2013)...........................9

19

20
*Ford v. Artiga,*
   No. 12-cv-02370, 2013 U.S. Dist. LEXIS 106805 (E.D. Cal. July 30, 2013)..........................2

21

22
*Gabali v. OneWest Bank,*
   No. 12-cv-02901, 2013 U.S. Dist. LEXIS 47193 (N.D. Cal. Mar. 29, 2013) ..........................9

23
*Gandrup v. GMAC Mortgage, LLC*
   No. 11-cv-00659, 2012 U.S. Dist. LEXIS 128625 (N.D. Cal. Sept. 10, 2012).......................9

24

25
*Gentges v. Trend Micro Inc.,*
   No. 11-cv-05574, 2012 U.S. Dist. LEXIS 94714 (N.D. Cal. July 9, 2012) .............................4

26
*Grupe v. Glick,*
   26 Cal. 2d 680 (1945) ..............................................................................................................6

27

28

*In re Tobacco II Cases,*
   46 Cal. 4th 298 (2009) ...................................................................................8

*Juarez v. Arcadia Fin., Ltd.,*
   152 Cal. App. 4th 889 (2007) ........................................................................5

*Kwikset Corp. v. Super. Ct.,*
   51 Cal. 4th 310 (2011) ................................................................................4, 5

*Law Offices of Matthew Higbee v. Expungement Assistance Servs.,*
   214 Cal. App. 4th 544 (2013) ........................................................................6

*Lippitt v. Raymond James Fin. Servs.,*
   340 F.3d 1033 (9th Cir. 2003) .......................................................................3

*Lozano v. AT&T Wireless Servs., Inc.,*
   504 F.3d 718 (9th Cir. 2007) .........................................................................5

*Malfatti v. Mortg. Elec. Registrations Sys., Inc.,*
   No. 11-cv-03142, 2013 U.S. Dist LEXIS 87060 (N.D. Cal. June 20, 2013)...........................9

*McCabe v. Floyd Rose Guitars,*
   No. 10-cv-00581, 2012 U.S. Dist. LEXIS 56604 (S.D. Cal. Apr. 23, 2012)...........................9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
   494 F.3d 788 (9th Cir. 2007) .........................................................................7

*Quildon v. Intuit, Inc.,*
   No. 12-cv-00859, 2012 U.S. Dist. LEXIS 73353 (N.D. Cal. May 25, 2012)...........................3

*Rains v. Criterion Sys., Inc.,*
   80 F.3d 339 (9th Cir. 1996)) .........................................................................3

*Salmon Spawning & Recovery Alliance v. Gutierrez,*
   545 F.3d 1220 (9th Cir. 2008) .......................................................................4

*Sargon Enters., Inc. v. Univ. of S. Calif.,*
   55 Cal. 4th 747 (2012) ................................................................................5

*Saunders v. Super. Ct.,*
   27 Cal. App. 4th 832 (1994) ..........................................................................6

*Stock W., Inc. v. Confederated Tribes of the Colville Reservation,*
   873 F.2d 1221 (9th Cir. 1989) .......................................................................3

*Thomas v. Costco Wholesale Corp.,*
   No. 12-cv-02908, 2013 U.S. Dist. LEXIS 51189 (N.D. Cal. Apr. 9, 2013)...........................5

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**
-iii-

**Case No. 5:13-cv-2054-EJD**

*TrafficSchool.com, Inc. v. Edriver Inc.*,
  653 F.3d 820 (9th Cir. 2011) ..................................................................................10

*United States v. Talebnejad*,
  460 F.3d 563 (4th Cir. 2006) ....................................................................................7

*Utley v. Varian Associates, Inc.*,
  811 F.2d 1279 (9th Cir. 1987) ..................................................................................2

*VP Racing Fuels, Inc. v. General Petroleum Corp.*,
  673 F. Supp. 2d 1073 (E.D. Cal. 2009).................................................................6, 8

*Webb v. Smart Document Solutions, LLC*,
  499 F.3d 1078 (9th Cir. 2007) ..................................................................................2

*Williamson v. Apple, Inc.*,
  No. 11-cv-00377, 2012 U.S. Dist. LEXIS 125368 (N.D. Cal. Sept. 4, 2012) ..........9

STATUTES

18 U.S.C. § 1960.................................................................................................2, 7, 8

28 U.S.C. § 1331...........................................................................................................2

31 U.S.C. § 5316......................................................................................................2, 7

31 U.S.C. § 5318......................................................................................................2, 7

Cal. Fin. Code § 2030(a).............................................................................................7

OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ......................................................................................................9

Fed. R. Civ. P. 12(b)(1)..........................................................................................3, 11

Fed. R. Civ. P. 12(b)(6).............................................................................................11

1  Plaintiff's complaint seeks to impose liability on the Operator Defendants for competing

2  lawfully with one another in an industry from which Plaintiff has voluntarily withdrawn, and on

3  the Investor Defendants for reasonably deciding to invest in active companies rather than in

4  Plaintiff's business. Plaintiff's opposition brief (Doc. 144) ("Opposition" or "Opp'n") only

5  serves to highlight the fundamental failures of its case, each dispositive.

6  *First*, this Court lacks jurisdiction over the state-law claims in this case. Plaintiff claims

7  to have adequately alleged jurisdiction against the Investor Defendants by citing a federal

8  criminal statute as one component in its state-law claim under California's Unfair Competition

9  Law ("UCL"), and against the Operator Defendants by citing several federal statutes for which

10  the complaint provides no factual support. But it does not address, much less distinguish,

11  binding precedent specifically holding that UCL claims like Plaintiff's do not raise a

12  "substantial" federal question.

13  *Second*, Plaintiff has no standing under either Article III or the UCL because there is no

14  injury-in-fact alleged here, let alone any injury caused by Defendants. The Opposition and

15  Plaintiff's own pleadings admit as much by acknowledging that Plaintiff shuttered its money

16  transmission business *before* California's Money Transmission Act ("MTA") took effect, due to

17  the alleged actions of certain California officials whom Plaintiff has also sued. Defendants'

18  alleged noncompliance with the MTA cannot, as a matter of law or logic, have harmed any

19  vested pecuniary interest of Plaintiff's already-ceased business, as the UCL requires.

20  *Third*, Plaintiff has not stated a UCL claim or an unjust enrichment claim. The

21  Opposition provides no answer to the fact that Defendants' alleged conduct is not unlawful,

22  unfair, or fraudulent within the meaning of the UCL. And it ignores the fact that this very Court

23  has stated that unjust enrichment is not a viable cause of action in California.

24  *Fourth*, Plaintiff's Lanham Act claim fails because, as Plaintiff concedes, it does not

25  compete against any of the Lanham Act Defendants, and so has no standing under the act.

26  For these dispositive reasons, the Court should dismiss this case without leave to amend.

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

-1-

**Case No. 5:13-cv-2054-EJD**

## I.   THIS COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S STATE-LAW CLAIMS.

Plaintiff asserts that its state-law UCL claim raises a substantial question of federal law because it incorporates alleged violations of a federal criminal anti-terrorism statute, 18 U.S.C. § 1960 ("Section 1960") as against Investor Defendants; and because it incorporates alleged violations of Section 1960 and a federal currency record-keeping statute, 31 U.S.C. §§ 5316, 5318 (respectively, "Section 5316" and "Section 5318") as against Operator Defendants.  Opp'n at 6–7.  But Plaintiff fails to mention that none of those federal statutes creates a private right of action.  Opp'n at 8–9.[1]  The Ninth Circuit has made clear that, "where there is no federal private right of action, federal courts may not entertain a claim that depends on the presence of federal question jurisdiction under 28 U.S.C. § 1331."  *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1083 (9th Cir. 2007) (emphasis added); *see also Utley v. Varian Associates, Inc.*, 811 F.2d 1279, 1283 (9th Cir. 1987) (holding, in UCL case, that "if a federal law does not provide a private right of action, then a state law action based on its violation perforce does not raise a 'substantial' federal question").

This rule alone defeats Plaintiff's jurisdictional argument.  Remarkably, the Opposition does not even mention, much less distinguish, this binding precedent.[2]

Even if Section 1960, Section 5316, or Section 5318 provided for a private right of action or otherwise required this Court to resolve a "substantial" federal question in this case,

---

[1] *See also Ford v. Artiga*, No. 12-cv-02370, 2013 U.S. Dist. LEXIS 106805, at *24 (E.D. Cal. July 30, 2013) ("The Supreme Court has explained that criminal statutes, which are created for the benefit of the general public, are unlikely to give rise to a private right of action ...."); *Crawford v. Moore*, No. 95-cv-04248, 1996 U.S. Dist. LEXIS 2365, at *4 (N.D. Cal. Feb. 26, 1996) ("Moreover, criminal statutes generally do not provide for a private cause of action ....").

[2] Indeed, in prior submissions to the courts in this District, Plaintiff has ridiculed the idea of applying Section 1960 in this context.  *See* Defs.' Request for Judicial Notice ("RJN"), Ex. 4 (Doc. 92-4) at 18 (explaining that in passing Section 1960 "Congress was primarily interested in outlawing the use of traditional Islamic *hawala* financial networks as vehicles to fund terrorism"); *id.* at 20 ("To baldly state, as the State Defendants boldly contend here, that Congress intended to halt the creation of new payment technologies in the United States by passing the USA PATRIOT Act is therefore a gross mischaracterization of the legislative record." (emphasis in original)).  In other words, Plaintiff's counsel's sole argument for federal jurisdiction is one that Plaintiff has derided as a "gross mischaracterization" of Section 1960.  Plaintiff's arguments here are not supported by a good-faith basis and are therefore sanctionable.  *See* Defs.' Mot. for Sanctions (Docs. 132, 147).

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

-2-

Case No. 5:13-cv-2054-EJD

which they do not, jurisdiction would still be lacking.  A UCL violation may be established under any one of three disjunctive prongs—by proving that a defendant acted in a manner that was (1) unlawful, (2) unfair, or (3) fraudulent.  *Baldoza v. Bank of Am., N.A.*, No. 12-cv-05966, 2013 U.S. Dist. LEXIS 34323, at \*46–47 (N.D. Cal. Mar. 12, 2013).  Both Plaintiff's complaint and its Opposition make clear that Plaintiff's claim under the "unlawful" prong rests in part upon alleged violations of California's state-law MTA, and also that Plaintiff bases its UCL claim on *each of the three UCL prongs* separately.[3]  *See* AC ¶¶ 58–81 (Operator Defendants), 99–104 (Investor Defendants); Opp'n at 17 ("Plaintiff satisfactorily alleges UCL violations under all three prongs.").

Here, again, the Ninth Circuit has provided a straight-forward rule: "'When a claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim.'"  *Quildon v. Intuit, Inc.*, No. 12-cv-00859, 2012 U.S. Dist. LEXIS 73353, at \*12–13 (N.D. Cal. May 25, 2012) (Davila, J.) (quoting *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996)); *see Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (UCL case).  Plaintiff's invocation of a federal statute as only one of several independent bases for its California UCL claim is plainly insufficient to allege federal question jurisdiction.  Once again, the Opposition never addresses the authority undercutting Plaintiff's position.

It is Plaintiff's affirmative burden to plead federal jurisdiction.  *See Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).  Because Plaintiff has failed to do so, this case must be dismissed.  *See* Fed. R. Civ. P. 12(b)(1).

---

[3] To the extent that Plaintiff's Opposition is in any way inconsistent with its complaint, the complaint would govern:  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule.'"  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

## II.     PLAINTIFF DOES NOT HAVE STANDING.

Plaintiff does not have standing under either Article III or the UCL because its own allegations eliminate the possibility of any requisite causation or loss.

*As for causation*, standing under both Article III and the UCL requires Plaintiff to allege that it suffered a loss that a defendant *caused*.  *See Gentges v. Trend Micro Inc.*, No. 11-cv-05574, 2012 U.S. Dist. LEXIS 94714, at *13–14 (N.D. Cal. July 9, 2012) ("'To show causation [for Article III standing], the plaintiff must demonstrate a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" (quoting *Salmon Spawning & Recovery Alliance v. Gutierrez*, 545 F.3d 1220, 1227 (9th Cir. 2008))); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320–21, 326–27 (2011) (explaining that standing under the UCL "requires that a plaintiff's economic injury come 'as a result of' the unfair competition" (citing UCL § 17204)).

Plaintiff argues that, but for "Defendants' brazen law-breaking, [Plaintiff] would not have lost customers, market share, and brand recognition to the [Operator] Defendants."  Opp'n at 11–12.  This assertion defies logic and Plaintiff's own judicial admissions.  Plaintiff alleges unequivocally that it chose to shut down its money transmission business—giving up any market share—on June 30, 2011, the day *before* the MTA became enforceable and Defendants allegedly began disregarding it.  Moreover, the stated reason why Plaintiff chose to shut itself down was that "the California DFI threatened Plaintiff's officers with incarceration," not because of anything a Defendant did.  AC ¶¶ 48, 50.[4]

While Plaintiff contends that "it is still actively operating and competing with Defendants," Opp'n at 12, Plaintiff concedes that it has shut down its money transmitting

---

[4] *See also* AC ¶¶ 36, 81, 104; RJN, Ex. 4 (Doc. 92-4) at 3 ("Plaintiff has alleged in the Complaint not only that the MTA is facially unconstitutional (FAC, ¶ 75), but also that the MTA and the State Defendants' actions in applying such regulatory scheme to Plaintiff have already caused Plaintiff present and continuing harm and forced him out of the business of money transmission."), 7–8 ("Plaintiff's efforts were ultimately frustrated due to DFI's hostile and uncooperative interactions with Plaintiff."), 9 (admitting that Plaintiff "completely shut[] down [its] enterprise based upon Defendant Venchiarutti's ultimatum").

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**Case No. 5:13-cv-2054-EJD**

services and has no paying customers, AC ¶¶ 8, 50.  And Plaintiff also admits that, were it to win the relief it seeks—namely, that all of the Operator Defendants be shut down—then "neither Plaintiff nor the unlicensed [Operator] Defendants would have <u>any</u> customers."  Opp'n at 13 (emphasis added).[5]  In other words, Plaintiff's perceived loss cannot and would not be remedied by the relief sought from this Court.  This is fatal to Plaintiff's claim.  *See Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007) ("In short, there must be a causal connection between the harm suffered and the unlawful business activity.  That causal connection is broken when a complaining party would suffer the same harm whether or not a defendant complied with the law.");  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010) (explaining that for Article III standing "plaintiff must show that her injury will likely be redressed by a favorable decision").

*As for loss*, standing under Article III and the UCL requires Plaintiff to plead injury-in-fact, that is, *a legally cognizable loss*.  *Thomas v. Costco Wholesale Corp.*, No. 12-cv-02908, 2013 U.S. Dist. LEXIS 51189, at *5 (N.D. Cal. Apr. 9, 2013) (Davila, J.) (Article III); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 321–22 (2011) (UCL).  Under the UCL, that would require a showing of lost "money or property in which [Plaintiff] has a <u>vested</u> interest."  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 733 (9th Cir. 2007) (quoting *Juarez v. Arcadia Fin., Ltd.,* 152 Cal. App. 4th 889, 915 (2007)) (emphasis added).

Though the Opposition speculates about Plaintiff's lost "future property interests in revenue from then-clients and future clients," Opp'n at 14 (citing AC ¶ 113), a claim for restitution or disgorgement under the UCL is only available where the Plaintiff can demonstrate that it is seeking the recovery of money or property in which it has a vested pecuniary interest.  The types of perceived losses listed in the complaint and Opposition are not recoverable. *Sargon Enters., Inc. v. Univ. of S. Calif.*, 55 Cal. 4th 747, 774 (2012) ("'[W]here the operation of an unestablished business is prevented or interrupted, damages for prospective profits that

---

[5] *See also* RJN, Ex. 3 (Doc. 92-3) at ¶ 42 ("Up until the deadline, Plaintiff's average daily money transmission volume was close to zero as Plaintiff had only successfully finished the merchant side of the product two days prior.")

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

-5-

**Case No. 5:13-cv-2054-EJD**

might otherwise have been made from its operation are not recoverable for the reason that their occurrence is uncertain, contingent and speculative.'" (quoting *Grupe v. Glick*, 26 Cal. 2d 680, 693 (1945))). In particular, and as noted in Defendants' motion, the complaint does not provide any factual basis showing that Plaintiff is entitled to recover any of the Defendants' earnings or profits. *See* Defs.' MTD Br. (Doc. 91) at 13–14.

Nor do the cases cited by Plaintiff support its contention that standing exists to recover alleged losses such as diminished market share or money spent "in business, lobbying, and legal efforts." Opp'n at 14 (citing AC ¶ 113). Unlike Plaintiff here, the plaintiffs in those cases were *currently competing participants* in the same market as the defendants.[6] *Law Offices of Matthew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544 (2013) (plaintiff was licensed attorney suing an online service for engaging in unauthorized practice of law); *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d 1073 (E.D. Cal. 2009) (plaintiff was vendor authorized to do business in California suing competitor for undercutting its prices with inferior product); *see also Saunders v. Super. Ct.*, 27 Cal. App. 4th 832 (1994) (plaintiffs were certified shorthand reporters suing other certified shorthand reporters for undercutting prices through direct contracts with insurance companies). Indeed, Plaintiff's circular logic would lead to the absurd consequence that any plaintiff who brought a UCL claim would have standing simply by virtue of the fact that the lawsuit has been brought and thus "legal efforts" and costs have been expended. *Cf. Cordon v. Wachovia Mortg.*, 776 F. Supp. 2d 1029, 1039 (N.D. Cal. 2011) ("Under Plaintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit.").[7]

---

[6] Plaintiff argues that Defendants are taking the position that "one must break the law" to be in the money transmission market. Opp'n at 14. That characterization is disingenuous. Per the allegations in the operative pleading, the (lawful) market would consist of any money transmission business that had (1) filed an application for licensure under the MTA, (2) associated its operations with a licensed operator, <u>or</u> (3) determined, independently or via discussion with the DFI, that its products are or were exempt from the MTA's licensing requirements. *See* AC ¶¶ 36, 106.

[7] Plaintiff also disingenuously contends it has standing because "[i]f not for Defendants' illegal conduct, [it] would not have spent money" on lobbying efforts. Opp'n at 11. This argument ignores Plaintiff's own allegations demonstrating the goal of these lobbying efforts was to obtain "changes to the California MTA and other money transmission laws." AC ¶ 53. Plaintiff does not allege the Investor Defendants had any role in enacting these laws which purportedly

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

-6-

Case No. 5:13-cv-2054-EJD

### III.   PLAINTIFF DOES NOT STATE A UCL CLAIM ON THE MERITS.

Plaintiff's allegations also cannot establish the right to substantive relief under any of the three prongs of the UCL.  The Opposition provides no reason to conclude otherwise.

*Unlawful*.  Plaintiff urges that its allegations that the Operator Defendants violated the MTA "are non-conclusory," Opp'n at 18, but even if that were so (and it is not), Plaintiff has failed to allege anything about whether each Defendant had associated its operations with a licensed operator or engaged in any other conduct that would preclude a finding of an MTA violation or a violation of Section 1960.  *See* AC ¶¶ 36, 106; Cal. Fin. Code § 2030(a). Plaintiff's Opposition also does not address the complaint's failure to allege any facts whatsoever to support the alleged violation of Sections 5316 and 5318.  There are no factual allegations to support the conclusory allegations that any of the Operator Defendants (a) knowingly transported more than $10,000 into or out of the United States in violation of Section 5316 or (b) failed to maintain anti-money-laundering programs as required by Section 5318.  The absence of such allegations defeats Plaintiff's substantive claim.  *See* 18 U.S.C. § 1960; 31 U.S.C. §§ 5316, 5318.

As for the Investor Defendants in particular, Plaintiff concedes that, in order to show that they are directly liable under Section 1960, it must allege that they were "in charge" of a business that violated the MTA.  Opp'n at 19; *see also United States v. Talebnejad*, 460 F.3d 563, 572 (4th Cir. 2006).  Plaintiff does not and cannot allege that Investor Defendants, which provided capital in return for (statutorily and judicially protected) equity stakes in Operator Defendants, were "in charge" of the Operator Defendants.  MTD Br. at 20–21.[8]  And the sheer absurdity of this claim merits mention:  Plaintiff, which admits that it does not even compete with the Operator Defendants, much less the Investor Defendants, seeks a state-law civil remedy

---

put it out of business and led to the alleged lobbying campaign.  As such, Plaintiff's lobbying expenditures were in no way caused by the Investor Defendants.

[8] It is remarkable that Plaintiff has apparently abandoned paragraph after paragraph of allegations in its complaint alleging indirect liability against the Investor Defendants.  *See* Opp'n at 21; AC ¶¶ 94–97, 99–104, 108, 117; *see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007) (no secondary liability under the UCL).  This suggests that Plaintiff's counsel did not conduct reasonable research before bringing the claims.

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

**Case No. 5:13-cv-2054-EJD**

against the Investor Defendants based on a federal anti-terrorism statute that Plaintiff itself has argued should not apply to the conduct challenged in the complaint. *See* RJN, Ex. 4 (Doc. 92-4) at 20 (Plaintiff stating in prior submission to the Court that "it is impossible that the criminal penalties stipulated by 18 U.S.C. § 1960 even come close to expressly endorsing state-by-state licensing requirements determined by California in 2010").

*Unfair*. To bring a claim for "unfairness," Plaintiff must plead that the Defendants have violated the letter or spirit of an antitrust law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-187 (1999). The Opposition parrots the complaint's conclusory allegations that Defendants harm competition by bringing products "to market early and engag[ing] in predatory practices." Opp'n at 19 (citing AC ¶¶ 77-79, 100-102). Tellingly, there are no allegations in the complaint explaining what any such practices actually were. (Indeed, the sheer number of defendants named in this proceeding suggests that the market for money transmission in California is lively and competitive.) Plaintiff merely alleges that it withdrew its money transmission services from the market without regard to the Defendants, *see* AC ¶ 48; MTD Br. at 16–17, which is not remotely supportive of an antitrust violation.

*Fraudulent*. Plaintiff attempts to muddy the waters of its fraud claim by citing in its Opposition false advertising cases in which members of the public were deceived by a defendant's conduct. *See* Opp'n at 20 (citing *VP Racing Fuels, Inc. v. General Petroleum Corp.*, 673 F. Supp. 2d 1073, 1087 (E.D. Cal. 2009) (citing California state cases about false advertising)). This argument skirts over the fact that Plaintiff never once alleges that it was misled or otherwise defrauded by any of the Defendants. It is well settled in California after Proposition 64 that there is no private attorneys general provision under the UCL, and therefore Plaintiff lacks standing to bring claims for any supposed misleading of the consuming public.

Whether Plaintiff seeks to prove that it was defrauded (as implied by the complaint) or that consumers were defrauded (as argued in the Opposition), it still must show actual reliance—that "the defendant's misrepresentations were an immediate cause of the injury-causing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009). Nothing about how the Operator Defendants may have held themselves out to the public caused Plaintiff to lose any

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

-8-

**Case No. 5:13-cv-2054-EJD**

business, because Plaintiff is not and was not *in* the relevant business.  *See* AC ¶ 48.  Plaintiff cannot identify—let alone plead with particularity under Rule 9(b)—a single transaction in which either it or a member of the public was defrauded into using an Operator Defendant's money transmission service over Plaintiff's non-existent service.  *See McCabe v. Floyd Rose Guitars*, No. 10-cv-00581, 2012 U.S. Dist. LEXIS 56604, at *25–26 (S.D. Cal. Apr. 23, 2012) ("As explained, [the plaintiff] has not established that but for Defendants' defrauding of these licensees, the licensees would have obtained licenses from [the plaintiff].").

Plaintiff's UCL claim must therefore be dismissed for failure to state a claim.

## IV.     THERE IS NO BASIS FOR AN UNJUST ENRICHMENT CLAIM.

As this Court has repeatedly held, unjust enrichment "is not a recognized claim in California."  *Gabali v. OneWest Bank*, No. 12-cv-02901, 2013 U.S. Dist. LEXIS 47193, at *21 (N.D. Cal. Mar. 29, 2013) (Davila, J.); *Dunkel v. eBay Inc.*, No. 12-cv-01452, 2013 U.S. Dist. LEXIS 13866, at *31 (N.D. Cal. Jan. 31, 2013) (Davila, J.); *Gandrup v. GMAC Mortgage*, LLC, No. 11-cv-00659, 2012 U.S. Dist. LEXIS 128625, at *14 (N.D. Cal. Sept. 10, 2012) (Davila, J.); *Williamson v. Apple, Inc.*, No. 11-cv-00377, 2012 U.S. Dist. LEXIS 125368, at *28 (N.D. Cal. Sept. 4, 2012) (Davila, J.)).  Furthermore, the cases cited by Plaintiff that *have* allowed unjust enrichment claims have done so only under a quasi-contract theory or as an alternative theory of recovery in a breach of contract action.  *See, e.g., Malfatti v. Mortg. Elec. Registrations Sys., Inc.*, No. 11-cv-03142, 2013 U.S. Dist. LEXIS 87060, at *22 (N.D. Cal. June 20, 2013) (limiting availability of unjust enrichment claims to situations in which "restitution may be awarded either (1) in lieu of breach of contract damages …, or (2) where the defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort").  The complaint does not allege that Plaintiff gave the Defendants money, property, or any other benefit, and thus even if unjust enrichment were a valid cause of action in California, it would be unavailable here.

The unjust enrichment claim must therefore be dismissed.

# V.   PLAINTIFF LACKS STANDING UNDER THE LANHAM ACT.

Plaintiff concedes that all of the statements it seeks to challenge under the Lanham Act were made well after it stopped providing payment services.  Plaintiff also concedes that, to have standing under the Lanham Act, it must establish that it is a "direct competitor[]" of the Lanham Act Defendants.  Opp'n at 23 (citing *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011)).  Because Plaintiff is not a direct competitor of the Lanham Act Defendants, it has no standing to bring its false advertising claim.[9]

Plaintiff insists that it has standing because it "continues to compete—legally—in the alternative payments space," *admitting in the same sentence* that "it was forced to pull FaceCash out of the marketplace after June 30, 2011."  Opp'n at 23.  As discussed in Sections II and III above, the latter admission defeats Plaintiff's conclusory claim that it currently competes in the same market with any Defendant.[10]  Plaintiff has identified no authority for the proposition that an entity with zero paying customers with zero revenue in a particular market can be considered a "competitor" in that market for purposes of Lanham Act standing.

Indeed, it cannot.  As another court in this District has held, "[c]ompetitors are persons endeavoring to do the same thing and each offering to perform the act, furnish the merchandise, or render the service better or cheaper than his rival."  *Brosnan v. Tradeline Solutions, Inc.*, 681 F. Supp. 2d 1094, 1101 (N.D. Cal. 2010) (internal quotations omitted).  Thus, the court in *Brosnan* held that the plaintiff was not a competitor and therefore could not have suffered any damages as a result of the alleged Lanham Act violation where (1) the plaintiff offered different services to potential customers than the defendants during the relevant period, (2) the plaintiff had no income from his business during the relevant time period, and (3) the services the plaintiff *did* offer were provided "free of charge."  *Id.*  So too here.  Plaintiff does not offer the

---

[9] Initially, the Operator Defendants and the Investor Defendants filed a motion to dismiss Claims One and Two.  The Lanham Act Defendants joined that motion and filed a separate motion to dismiss Claim Three.  This combined reply addresses all claims.

[10] It bears repeating here that Plaintiff's claim that "the only way to compete in the mobile payments space as of July 2011 was to break the law" has no logical basis and does not accurately reflect either the law or Defendants' position.  *See* FN 7, *supra*.

DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

-10-

Case No. 5:13-cv-2054-EJD

1  same services as the Lanham Act Defendants and has had no income from payment services
2  since June 2011.  AC ¶¶ 48, 50–51.

3  These defects are fatal and cannot be cured by any good-faith amendment.  Therefore,
4  Plaintiff's Lanham Act claim must be dismissed without leave to amend.

5  **CONCLUSION**

6  For the foregoing reasons, and for the reasons set forth in Defendants' prior filings, the
7  Defendants respectfully request that the Court dismiss all claims against them for lack of
8  subject-matter jurisdiction under Rule 12(b)(1), and alternatively for failure to state a claim for
9  which relief might be granted under Rule 12(b)(6).  Dismissal should be *with prejudice*, because
10  the deficiencies detailed above would necessarily remain in any further amended complaint.

11  Respectfully submitted,

12  Dated:   San Francisco, California       ROPES & GRAY LLP
13  October 14, 2013

By      /s/ Rocky C. Tsai
14  Rocky C. Tsai

15  Attorneys for Defendants Kleiner Perkins
16  Caufield & Byers, LCC; Kleiner Perkins
Caufield & Byers XIII, LCC; Kleiner Perkins
17  Caufield & Byers XIII Founders Fund, LCC;
Kleiner Perkins Caufield & Byers XIV, LCC;
18  Kleiner Perkins Caufield & Byers XV, LCC;
19  Sequoia Capital, LLC; Sequoia Capital New
Projects, LLC; Sequoia Capital XII, LP; SC XII
20  Management, LLC; Sequoia Capital XII
Principals Fund, LLC; Sequoia Capital Scout
21  Fund I, LLC; Sequoia Capital Scout Fund II,
22  LLC; Sequoia Capital U.S. Scout Fund III, LLC;
Sequoia Capital U.S. Scout Seed Fund 2013, LP;
23  and Sequoia Technology Partners XII, LP.

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL HASTINGS LLP

By      /s/ Thomas P. Brown
           Thomas P. Brown

Attorneys for Defendants Airbnb, Inc.; Balanced, Inc.; Coinbase, Inc.; Dwolla, Inc.; Facebook, Inc.; Facebook Payments, Inc.; Gumroad, Inc.; Square, Inc.; Stripe, Inc.; A-Grade Investments, LLC; A-Grade Investments II, LLC; Union Square Ventures LLC; Union Square Ventures Opportunity Fund, LP; Union Square Ventures 2012 Fund LP; Brian Chesky; Max Levchin; and Yishan Wong.

ARNOLD & PORTER LLP

By      /s/ Kenneth G. Hausman
           Kenneth G. Hausman

Attorneys for Defendants Andreessen Horowitz Fund I, LP; Andreessen Horowitz Fund I-A, LP; Andreessen Horowitz Fund I-B, LP; Andreessen Horowitz Fund II, LP; Andreessen Horowitz Fund II-A, LP; Andreessen Horowitz Fund II-B, LP; Andreessen Horowitz Fund III, LP; Andreessen Horowitz Fund III (AIV), LP; Andreessen Horowitz Fund III-A, LP; Andreessen Horowitz Fund III-B, LP; Andreessen Horowitz Fund III-Q, LP; Y Combinator, LLC; Y Combinator Fund I, LP; Y Combinator Fund I GP, LLC; Y Combinator Fund II, LP; Y Combinator Fund II GP, LLC; Y Combinator RE, LLC; Y Combinator S2012, LLC; Y Combinator W2013, LLC.

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTIONS TO DISMISS ALL CLAIMS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

-12-

**Case No. 5:13-cv-2054-EJD**

GOODWIN PROCTER LLP

By ___ /s/ Gus P. Coldabella ___
          Gus P. Coldabella (admitted *pro hac vice*)

Attorneys for Defendants Digital Sky
Technologies, Limited, DSTG-2 2011 Advisors,
LLC, DSTG-2 2011 Investors DLP, LLC,
DSTG-2 2011 Investors Onshore, LP and Yuri
Milner.


PERKINS COIE LLP

By ___ /s/ Judith B. Jenson ___
          Judith B. Jenson

Attorneys for Defendant CoinLab, Inc.


PILLSBURY WINTHROP SHAW PITTMAN
LLP

By ___ /s/ Sarah G. Flanagan ___
          Sarah G. Flanagan

Attorneys for Defendant The Board of Trustees
of the Leland Stanford Junior University.


WILSON SONSINI GOODRICH & ROSATI, P.C.

By ___ /s/ Maura L. Rees ___
          Maura L. Rees

Attorneys for Defendant GoPago, Inc.

**CERTIFICATION OF CONCURRENCE IN FILING PER CIVIL L.R. 5-1(i)(3)**

I hereby attest that concurrence in the filing of this document has been obtained from each of the other signatories herein.

Dated:    San Francisco, California        ROPES & GRAY LLP
          October 14, 2013

                                           By      /s/ Rocky C. Tsai
                                           _____
                                                   Rocky C. Tsai

                                           Attorneys for Defendants Kleiner Perkins Caufield & Byers, LCC; Kleiner Perkins Caufield & Byers XIII, LCC; Kleiner Perkins Caufield & Byers XIII Founders Fund, LCC; Kleiner Perkins Caufield & Byers XIV, LCC; Kleiner Perkins Caufield & Byers XV, LCC; Sequoia Capital, LLC; Sequoia Capital New Projects, LLC; Sequoia Capital XII, LP; SC XII Management, LLC; Sequoia Capital XII Principals Fund, LLC; Sequoia Capital Scout Fund I, LLC; Sequoia Capital Scout Fund II, LLC; Sequoia Capital U.S. Scout Fund III, LLC; Sequoia Capital U.S. Scout Seed Fund 2013, LP; and Sequoia Technology Partners XII, LP.